TINA LINDQUIST V. HEIM, L.P.
CASE NO. 04-249-E

EXHIBIT "A"

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST                          : NO. 04-249E
                    Plaintiff,          :
                                        :
                                        :
     v.                                 :
                                        :
HEIM, L.P.                              :
                    DEFENDANT.          :

**PLAINTIFF'S INTERROGATORIES – SECOND SET AND REQUEST FOR PRODUCTION OF DOCUMENTS – SECOND REQUEST ADDRESSED TO DEFENDANT HEIM, L.P.**

I. <u>INSTRUCTIONS</u>:

These Interrogatories and Request for Production of Documents are to be answered pursuant to the provisions of Federal Rules of Civil Procedure.

You must serve Answers to these Interrogatories and Response to Request for Production of Documents on the Plaintiffs by returning to his attorney at his office address, one copy within thirty (30) days after the service of the Interrogatories and Request for Production of Documents upon you or your counsel.

II. <u>DEFINITIONS</u>:

1. "DOCUMENT" or "DOCUMENTS" includes, without limitation, writings and printed matter of every kind and description, audio or video tapes, statements, memoranda, logbooks, reports, e-mails, blueprints, research statistics and findings, journals, schematics, laboratory records, photographs and drawings, notes and records of oral communication, and recordings (tapes, discs or other) of oral communication. In all cases where originals are not available, "DOCUMENTS" also means copies of original documents and copies of non-identical copies.

2. The term "PRODUCT" is defined as the machine that Plaintiff was working with and was injured by. The machine is referred to as press in the above captioned Complaint.

3. The term "SIMILAR PRODUCTS" as used in regard to said Accident shall include any predecessor or successor models to the above referenced product, and other press machines that contain pinch points at the point of operation that were

1

designed, manufactured, assembled, marketed, distributed and/or sold by DEFENDANT.

4. The terms "HAZARD" refers to an occurrence at or in the immediate vicinity of where the pressing action occurs, or at the point of operation, whereby any pressing mechanism may cause an injury. The term also refers to a potential source of "HARM".

5. The terms "HARM" and "INJURY" refer to physical injury or damage to the health of people. This may be as a result of direct or indirect interaction with the "PRODUCT" or "SIMILAR PRODUCTS".

6. The term "POINT OF OPERATION" refers to the area on the machine where the work is actually performed upon the material being processed.

7. The terms "DEFECT" and or "DEFECTIVE CONDITION" refers to a "HAZARD". The defect being that the Product was designed with the potential for "HARM" resulting from a "HAZARD". The Plaintiff contends that the "PRODUCT" was not designed or constructed safely so as to eliminate or reduce the risk of "HARM" at the "POINT OF OPERATION".

It is the Plaintiff's position that the press machine (referred to in the Complaint) was defective in design, manufacture, and assembly, and that it was marketed in a defective condition. Furthermore, the DEFENDANT failed to warn of the hazards and provide instruction and/or training related to the safe use of the "PRODUCT".

The defect includes the failure to include safety mechanisms that prevent injury from the operational point. These mechanisms include, but are not limited to, guards, power interlocking, dual control systems, dual control systems with cross-monitoring, two-hand controls, electronic safety devices including light curtains and PSDI's, safety laser scanners, safety contact strips, safety bumpers, safety mats, and safety interlock switches.

8. The term "ACCIDENT" refers to an accident which occurred on September 25, 2002 at the Corry Manufacturing Company located on 519 West Main Street, Corry, Erie County, Pennsylvania and is the subject of the Plaintiff's Complaint as captioned above

9.    "IDENTIFY" as applied to an oral statement, conversation or conference means to:    identify the person making each statement; the person to whom each statement was made; and all other persons present at the time of each statement; to state the date of such statement, conversation or conference; to state the place where such statement, conversation or conference was held; if by telephone, identify the person receiving the call, the person making the call and the places where the persons participating in the call were located; and to state in detail the substance of each statement, conversation or conference.

10. "PERSON" means any individual, firm, association, partnership, corporation, or trustee and also, where relevant, the person representing or acting for such "PERSON".

11. "EXPLAIN" or "STATE" means to set forth every fact relevant to the answer to the interrogatory and to set forth each such fact fully and unambiguously.

12. The singular of a noun includes the plural of that noun.

13. The "INCIDENT", "ACCIDENT", or "OCCURRENCE" referred to in the interrogatories means the happening described in the pleadings in the captioned matter.

14.    "DEFENDANT" and "YOU", or "YOUR" shall mean HEIM, L.P. and any subsidiaries, related corporations or entities.

III. INTERROGATORIES/REQUEST FOR PRODUCTION OF DOCUMENTS:

1. Describe the relationship between HB Machinery Company and Heim, L.P. and outline the criteria of the method of selection of HB Machinery Company as a distributor including, but not limited to the following:

        a.    date relationship began;

        b.    date relationship ended;

        c.    number of press brakes sold;

3

       d.    contact  person  at  HB  Machinery  Company  that communicated  with  Heim,  L.P.  with  regard  to  sales  of machinery;

       e.    the  person  at  Heim,  L.P.  that  was  responsible  for maintaining HP Machinery Company as a distributor.

ANSWER:

    2.    Produce  any  and  all  documents  evidencing  the relationship between HB Machinery Company and Heim, L.P.

ANSWER:

3.    Produce any and all documents outlining the agreements between Heim, L.P. and/or distributors and/or franchisees utilized during the period from 1970 through 1980.

ANSWER:

4.    Describe the specifications for the foot pedal that was supplied with the subject machine and the specifications for subsequent foot pedals made available by Heim, L.P. with the sale of press brakes.

ANSWER:

5.    Produce any and all specifications, drawings, sketches and/or diagrams of foot pedals made available by Heim, L.P. with its press brakes for the period from 1970 through 2000.

ANSWER:

6.    Produce Any and all specifications, drawings, sketches and/or diagrams relating to said foot pedals.

ANSWER:

7.    In the event Defendant, Heim, L.P., did not manufacture said foot pedals, identify all vendors from whom Heim, L.P. purchased said foot pedals for brake presses for the period from 1970 through 2000.

ANSWER:

8.    Identify any and all modifications to the foot pedal from 1978 through the present.

ANSWER:

9. In the event any modification of the foot pedal that was supplied with press brakes in the period of 1970 through 2000 has taken place, please state in detail, the reasons for such change, alteration or modification.

ANSWER:

10. Please identify all distributors of Heim, L.P. products for the period from 1970 through 1980.

ANSWER:

11. Identify and provide all sales brochures, manuals and advertising materials relating to press brakes for the period from 1970 through the present.

ANSWER:

12. Identify the person or entity responsible for the content of the operator's manual for brake presses.

ANSWER:

13. Identify where the operator's manuals were printed.

ANSWER:

14. Identify the person at Heim, L.P. responsible for review of the manual for changes and updates.

ANSWER:

15.  Provide an original of the operator's manual that is applicable to the Heim 70-6 brake press.

ANSWER:

16.  Please identify if any subsequent modification that has taken place to the manual included with press brakes.  To the extent such alteration or change has taken place with regard to said manual, please provide a copy of the manual and identify the changes or modifications.

ANSWER:

17.  Identify the person(s) responsible for the design of the POINT OF OPERATION protection such as the foot pedal and/or the two palm button switch utilized by Heim, L.P. or made available in conjunction with the sale of Heim, L.P. press brakes for the period of 1970 through 2000.

ANSWER:

18. Provide any design engineering criteria utilized by the design engineers relating to the design and manufacture of press brakes as it relates to POINT OF OPERATION protection such as foot pedals or two palm button activation mechanism.

ANSWER:

19. Produce for inspection a representative sample of each model of foot pedal made available by Heim, L.P. in conjunction with the sale of its press brakes for the period of 1970 through the present.

ANSWER:

DALLAS W. HARTMAN, P.C.

_____
Dallas W. Hartman, Esq.
Attorney for Plaintiff
Attorney I.D. No. 41649

2815 Wilmington Road
New Castle, PA  16105
(724) 652-4081

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the within document was served on the party below in the following manner:

VIA FIRST CLASS MAIL:

Paul R. Robinson, Esquire
MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
U.S. Steel Tower, Suite 4850
Pittsburgh, PA  15219

Attorney for DEFENDANT

DATE:  8/15/05

DALLAS W. HARTMAN, P.C.

Dallas W. Hartman, Esq.
Attorney for Plaintiff
Attorney I.D. No. 41649

2815 Wilmington Road
New Castle, PA  16105
(724) 652-4081

**TINA LINDQUIST V. HEIM, L.P.**
**CASE NO. 04-249-E**

**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST,

Plaintiff,

vs.

HEIM, L.P.,

Defendant.

Civil Action No: 04-249E

**JUDGE SEAN J. MCLAUGHLIN / MAGISTRATE JUDGE SUSAN PARADISE BAXTER**

PAUL R. ROBINSON, ESQUIRE
PA I.D. No. 65581

Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.
U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA 15219
(412) 261-6600

**ANSWERS TO PLAINTIFF'S INTERROGATORIES - SECOND SET AND REQUEST FOR PRODUCTION OF DOCUMENTS - SECOND REQUEST**

AND NOW, comes the defendant, HEIM, L.P., through its attorneys, MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C., serving their answers to plaintiff's interrogatories - second set and request for production of documents - second request, as follows:

1. Describe the relationship between HB Machinery Company and Heim, L.P. and outline the criteria of the method of selection of HB Machinery Company as a distributor including, but not limited to the following:

(a) date relationship began;

P0748453 1

(b)    date relationship ended,

(c)    number of press brakes sold;

(d)    contact person at HB Machinery Company that communicated with Heim, L.P. with regard to sales of machinery;

(e)    the person at Heim, L.P. that was responsible for maintaining HP Machinery Company as a distributor.

**ANSWER:**    *Objection. This interrogatory is vague and ambiguous. Heim did not select HB Machinery as a distributor. The sales file for the Model 70-6 press brake reveals that HB Machinery Co. was a company with whom Avco Lycoming contracted a particular machine, and that HB Machinery contracted with Heim to purchase the Model 70-6 press brake at issue which HB Machinery requested Heim to ship to Avco Lycoming.*

2.    Produce any and all documents evidencing the relationship between HB Machinery Company and Heim, L.P.

**ANSWER:**    *Heim is unaware of any agreements or documents concerning the relationship between Heim and HB Machinery Company at the time of the 1978 sale at issue other than the sales file for the Model 70-6 press brake at issue which has been produced, which file contains documents evidencing the purchase and sale relationship which existed between HB Machinery Company and Heim for this particular press brake.*

3.    Produce any and all documents outlining the agreements between Heim, L.P. and/or distributors and/or franchises utilized during the period from 1970 through 1980.

**ANSWER:**    *Objection. This request is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. This request would require yet another search of all sales files between 1970 and 1980 and the production of documents relating to the sale of our presses and press brakes. Without waiving these objections, Heim is not a franchisor and therefore has no franchisees. Heim has, throughout the time period requested, sold press brakes to distributors who have purchased press brakes for ultimate shipment to third parties, similar to the sale of the Model 70-6 press brake at issue which was sold to HB Machinery Co., L.P. and shipped to Avco Lycoming pursuant to the*

*request of HB Machinery Co. Please see the deposition transcript of Tony Mase wherein this matter was inquired into at length by the plaintiff.*

4.    Describe the specifications for the foot pedal that was supplied with the subject machine and the specifications for subsequent foot pedals made available by Heim, L.P. with the sale of press brakes.

**ANSWER:**    *Objection.  This request is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Heim has searched its records to determine if any drawings or specifications exist with regard to the foot pedal that was supplied with the Model 70-6 press brake at issue The attached drawing may be a drawing for the foot switch supplied with the press brake at issue, considering the date of the drawing, but Heim has no ability of verifying this.*

5.    Produce any and all specifications, drawings, sketches and/or diagrams of foot pedals made available by Heim, L.P. with its press brakes for the period from 1970 through 2000.

**ANSWER:**    *Objection.  This request is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Please see answer to interrogatory number 6.*

6.    Produce any and all specifications, drawings, sketches and/or diagrams relating to said foot pedals.

**ANSWER:**    *Objection.  This request is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Please see answer to interrogatory number 6.*

7.    In the event defendant, Heim, L.P., did not manufacture said foot pedals, identify all vendors from whom Heim, L.P. purchased said foot pedals for brake presses for he period from 1970 through 2000.

**ANSWER:**    *Objection. The plaintiff is aware through the deposition of Heim's corporate designee, Tony Mase, that Heim did not manufacture the foot pedal which accompanied the Model 70-6 press brake at issue. The plaintiff's request for all vendors who have supplied foot pedals for press brakes from 1970 through 2000 is overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence.*

P0748453 1

*Without waiving these objections, the present supplier of foot pedals is LineMaster. Prior to purchasing foot pedals from LineMaster Switch Corp., Heim believes that foot pedals were purchased from Electro-Kenetics which was believed to be a dealer for LineMaster.*

8.    Identify any and all modifications to the foot pedal from 1978 through the present.

**ANSWER:**    *Objection. This request is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Heim does not have information available to detail any and all modifications to the foot pedal on the Model 70-6 press brake subsequent to its sale to HB Machinery Co. in 1978. As the plaintiff is aware, it is unknown if the foot pedal which accompanied the Model 70-6 press brake at the time of Tina Lindquist's injury was the foot pedal which accompanied the Model 70-6 press brake at the time of its sale. As plaintiff also is aware, the foot pedal which accompanied the Model 70-6 press brake at the time of Tina Lindquist's injury has been discarded without notice to Heim.*

*Heim is aware from the depositions of Corry Manufacturing employees that the foot pedal which accompanied the Model 70-6 press brake at the time of Tina Lindquist's injury had been designed and fabricated by Corry Manufacturing employees to permit the operation of the Model 70-6 press brake through use of either the foot pedal or the two-palm button switch which also accompanied the Model 70-6 press brake at the time of Tina Lindquist's injury.*

9.    In the event any modification of the foot pedal that was supplied with press brakes in the period of 1970 through 2000 has taken place, please state in detail, the reasons for such change, alteration or modification.

**ANSWER:**    *Please see objections and answer to interrogatory number 8, which are incorporated by reference.*

10.    Please identify all distributors of Heim, L.P. products for the period from 1970 through 1980.

**ANSWER:**    *Objection. This request is overly broad, vague, and misleading through this use of the term "distributors of Heim, L.P." It furthermore is unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, as the*

P0748453 1

*plaintiff is aware through the corporate designee deposition of Tony Mase, Heim's business involves the sale of press brakes through distributors which are in the business of selling such press brakes and other components, including point of operation safety devices. As plaintiff is aware through the discovery taken to date, a company such as Avco Lycoming oftentimes will request a distributor of manufacturing equipment to provide it with the manufacturing equipment which that company desires to use in its operation. The distributor, in this case HB Machinery Co., then will supply its customer, in this case Avco Lycoming, with the equipment, and one means of obtaining that equipment is through purchasing it from manufacturers. The sales file for the Model 70-6 press brake at issue reveals that this typical sales scenario occurred with regard to the sale of the Model 70-6 press brake and that a distributor of manufacturing equipment, HB Machinery Co., appears to have contracted with Avco Lycoming to supply a press brake, and HB Machinery Co. then contracted with Heim to provide the press brake requested and which was shipped to Avco Lycoming.*

11.    Identify and provide all sales brochures, manuals and advertising materials relating to press brakes for the period from 1970 through the present.

**ANSWER:**    *Objection. This request is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, please see the instructions and parts manual which plaintiff obtained from Hildebrand Machinery which accompanied the Model 70-6 press brake at the time of Tina Lindquist's injury, and please see the attached brochures.*

12.    Identify the person or entity responsible for the content of the operator's manual for brake presses.

**ANSWER:**    *Objection. This request is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, and with regard to the instructions and parts manual supplied with the Model 70-6 press brake, Heim does not have information available to it to identify the persons responsible for the content of the Instructions and Parts Book for the Model 70-6 press brake sold in 1978 to HB Machinery Co. The Instructions and Parts Book for the particular press brake at issue indicates that it was compiled and written by Technical Graphics.*

13.    Identify where the operator's manuals were printed.

**ANSWER:**   *Please see objections and answers to interrogatory no. 12 which are incorporated.*

14.   Identify the person at Heim, L.P. responsible for review of the manual for changes and updates.

**ANSWER:**   *Please see objections and answers to interrogatory no. 12 which are incorporated.*

15.   Provide an original of the operator's manual that is applicable to the Heim 70-6 brake press.

**ANSWER:**   *The original of the operator's manual that was supplied with the Model 70-6 press brake is not in the possession of Heim and, instead, left the possession and control of Heim at the time of the sale of the Model 70-6 press brake at issue. Plaintiff's counsel previously advised Heim's counsel that plaintiff's counsel obtained a copy of the operator's manual from Corry Manufacturing and, following the request of Heim's counsel, plaintiff's counsel provided Heim's counsel with a copy of that operator's manual. The operator's manual produced by plaintiff's counsel is a copy of the owner's manual for the Model 70-6 press brake.*

16.   Please identify if any subsequent modification that has taken place to the manual included with press brakes. To the extent such alteration or change has taken place with regard to said manual, please provide a copy of the manual and identify the changes or modifications.

**ANSWER:**   *Objection. This interrogatory is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, please see a copy of the Instructions and Parts Book which is attached.*

17.   Identify the person(s) responsible for the design of the POINT OF OPERATION protection such as the foot pedal and/or the two palm button switch utilized by Heim, L.P. or made available in conjunction with the sale of Heim, L.P. press brakes for the period of 1970 through 2000.

**ANSWER:**   *Objection. This interrogatory is overly broad, vague, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Heim did not design or manufacture the foot pedals which accompanied its press brakes, and a*

P0748453 1

*two-palm button switch was not requested, and therefore not supplied, for the Model 70-6 press brake sold to HB Machinery Co.*

18.    Provide any design engineering criteria utilized by the design engineers relating to the design and manufacture of press brakes as it relates to POINT OF OPERATION protection such as foot pedals or two palm button activation mechanism.

**ANSWER:**    *Please see objection and answer to interrogatory number 17 which are incorporated by reference.*

19.    Produce for inspection a representative sample of each model of foot pedal made available by Heim, L.P. in conjunction with the sale of its press brakes for the period of 1970 through the present.

**ANSWER:**    *This request is overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Heim does not possess representative samples of each foot pedal which accompanied the sale of its press brakes, including the foot pedal which accompanied the sale of the Model 70-6 press brake at issue.*

Respectfully submitted,

MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.

By: _____
PAUL R. ROBINSON, ESQUIRE
Attorney for Heim, L.P.
PA I.D. No. 65581

U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA 15219
(412) 261-6600

P0748453 1

## VERIFICATION

I, _Tony MASE_ , am the _NATIONAL Sales Manager_

of *HEIM, L.P.*, and state that the averments of fact set forth in the foregoing *ANSWERS*

*TO PLAINTIFF'S INTERROGATORIES - SECOND SET AND REQUEST FOR*

*PRODUCTION OF DOCUMENTS - SECOND REQUEST* are true and correct to the best

of my knowledge, information, and belief.

I understand that the statements herein are made subject to the penalties of 18

Pa.C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if I

make knowingly false averments I may be subject to criminal penalties.

Date: _10/5/05._                          _____

File No: ALFA-107530/PRR

P0748453 1

**PROOF OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been

served upon all parties on the date and in the manner listed below:

|  |  |
|---|---|
| ___ X ___ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail - Return Receipt Requested |
| _____ | Hand Delivery |
| _____ | Facsimile Transmission |

at the following address:

Dallas W. Hartman, Esquire
Dallas W. Hartman P.C.
2815 Wilmington Road
New Castle, PA 16105
*(Counsel for Plaintiff)*

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

Date: __10 - 6__ , 2005

PAUL R. ROBINSON, ESQUIRE

P0748453 1

# TINA LINDQUIST V. HEIM, L.P.
## CASE NO. 04-249-E

**EXHIBIT "C"**

1          UNITED STATES DISTRICT COURT

2        WESTERN DISTRICT OF PENNSYLVANIA

3

4   TINA LINDQUIST,              )        ORIGINAL

5          Plaintiff,            )

6     vs.                        ) NO. 04-249E

7   HEIM L.P.,                   )

8          Defendant.            )

9

10      The discovery deposition of ANTHONY ROBERT

11   MASE, JR., taken in the above-entitled cause,

12   before Kyla Elliott, a notary public of Cook

13   County, Illinois, on the 27th day of July, 2005, at

14   33 North LaSalle Street, Chicago, Illinois,

15   pursuant to Notice.

16

17

18

19

20

21   Reported by:  Kyla Elliott, CSR, RPR

22   License No.:  084-004264

23

24

1

1  today which is the current technology that's out

2  there today.

3      Q.   So the new brake presses have upgraded

4  electronics?

5      A.   Correct.

6      Q.   That would be the only change as it

7  relates to brake presses from the beginning when

8  Heim first started making brake presses to now, am

9  I correct?

10     A.   Correct.

11     Q.   If a customer called and wanted a manual

12 that relates to the 70-6 brake press, am I correct

13 that Heim would have that available for the

14 customer?

15     A.   Yes.

16     MR. HARTMAN:  I would like an original one of

17 those, please.

18     THE WITNESS:  Let me explain a little further.

19 I'm not quite sure when we say original because

20 this is what you would probably receive.

21 BY MR. HARTMAN:

22     Q.   Is there one with the actual pictures?

23     A.   Not that I'm aware of.  You're looking --

24 if you're looking for --

1  question.  Similar in what way, that it's activated

2  by pushing down on a level with your foot or

3  another in other features?

4  BY MR. HARTMAN:

5      Q.   Is there any additional safety feature in

6  the foot pedals manufactured today that was not in

7  place in 1978?

8      A.   I believe so.

9      Q.   And what would that be?

10     A.   And I believe there's a kick plate today.

11     Q.   What's a kick plate?

12     A.   It's a device so you can't accidentally

13  just step on the pedal that, you have to lift a

14  plate to get your foot in.

15     Q.   And when did Heim start making the kick

16  plate?

17     A.   We don't manufacture the kick plate.

18     Q.   Who manufactures them?

19     A.   I don't know specifically who the -- it's

20  a commercial available item.

21     MR. ROBINSON:  Are we talking about presently

22  or back in '78?

23     MR. HARTMAN:  I'm going to work my way back.

24     MR. ROBINSON:  What were you asking about?

1    BY MR. HARTMAN:

2        Q.    Well, now who manufactures the foot pedal?

3        A.    We do not manufacture the foot pedal, it's

4    a purchasing.

5        Q.    I think you said earlier that it was a

6    commodity?

7        A.    Commercially available item.

8        Q.    Has your vendor changed since 1978 as to

9    who provides your foot pedals?

10       A.    I don't know the answer to that question.

11       Q.    Would that information be available?

12       A.    I believe it would be.

13       Q.    Would there be foot pedals available of

14   the style that were made in -- that were

15   accompanied in 1978, brake press?

16       MR. ROBINSON:    I'll object to the form.    I

17   don't understand the question.

18       THE WITNESS:    They would be similar.

19   BY MR. HARTMAN:

20       Q.    Yes?

21       A.    Yes.

22       Q.    Meaning it doesn't have a kick plate?

23       A.    It would be similar for that version, yes.

24       Q.    Right.    The foot pedals that were

McCORKLE COURT REPORTERS, INC.
CHICAGO, ILLINOIS - (312) 263-0052

TINA LINDQUIST V. HEIM, L.P.
CASE NO. 04-249-E

EXHIBIT "D"



# MEYER ♦ DARRAGH
## BUCKLER BEBENEK & ECK, P.L.L.C.
Attorneys-at-Law

U S Steel Tower, Suite 4850 ♦ 600 Grant Street ♦ Pittsburgh, PA 15219
Phone: (412) 261-6600 ♦ Fax: (412) 471-2754

www.mdbbe.com

PAUL R. ROBINSON
ATTORNEY-AT-LAW

DIRECT DIAL: (412) 553-7146
E-MAIL: probinson@mdbbe.com

September 22, 2005

Dallas W  Hartman, Esquire
Dallas W  Hartman P.C
2815 Wilmington Road
New Castle, PA 16105

  Re. Tina Lindquist v  Heim, L P
    Case No. 04-249E
    D/A: 9/25/02
    Our File: ALFA-107530

Dear Mr  Hartman.

  This letter confirms our telephone conversation of September 19, 2005 wherein you kindly provided Heim with a fourteen (14) day extension of time to file a response to plaintiff's second set of interrogatories and request for production of documents.  I appreciate your courtesy.

  Please also allow this letter to confirm that the September 29, 2005 deposition that you scheduled has been cancelled  As we discussed, the age of the press brake at issue in this litigation has rendered Heim unable to produce an additional representative to discuss the design of the press brake  As you know, Anthony Mase provided a significant amount of testimony concerning the press brake, Heim, and the press brake industry  Having now received Tony Mase's deposition transcript, I will review it in finalizing our responses to the plaintiff's second set of discovery

  Thank you again

      Very truly yours,

      PAUL R  ROBINSON

PRR/pla

BN761673.1