1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF PENNSYLVANIA (ERIE)

3          CIVIL DOCKET FOR CASE#:  1:04-cv-00249-SJM-SPB

4

5   TINA LINDQUIST,                 :   FILED 8/31/2004
         Plaintiff
6
         v.
7
    HEIM, L.P.,
8        Defendant

9

10           Conference hearing held in the above-captioned

11       matter on Monday, June 27, 2005, commencing at 1:30

12       p.m., before the Honorable Susan Paradise Baxter,

13       United States Courthouse, 17 South Park Row, Room A280,

14       Erie, Pennsylvania.

15

16  For the Plaintiff:

17       Dallas W. Hartman, Esquire
         2625 Wilmington Road
18       New Castle, PA  16105

19

20  For the Defendant:

21       Paul R. Robinson, Esquire
         Meyer, Darragh, Buckler, Bebenek & Eck
22       600 Grant Street
         U.S. Steel Tower, Suite 4850
23       Pittsburgh, PA  15219

24

25              Reported by Janet A. York
              Ferguson & Holdnack Reporting, Inc.

1          JUDGE BAXTER:  Good afternoon.  This is Tina

2    Lindquist versus Heim, L.P., Civil Action No. Erie 04249.

3    We are here on a motion to compel by the Plaintiff.

4              I've read the papers on both, and perhaps let

5    me start with some questions, unless you all want to give me

6    an overview that I may not know.

7          MR. HARTMAN:  Judge, this is Dallas Hartman, I

8    represent Tina Lindquist.  I know that there are a lot of

9    documents for you to read, a lot of paper here.  I think

10   what it boils down to from the Plaintiff's perspective is

11   quite simply, it's our burden to establish an alternative

12   feasible design.  We're entitled to Discovery on different

13   types of designs and different types of safety devices used

14   for point-of-operation protection.  So, if you take all

15   those Interrogatories and all those Requests for Production

16   of Documents, if you take all the questions, what we are

17   seeking from the Defendant in this case is merely we want to

18   know the types of point-of-operation protection devices that

19   they've utilized on press brakes from 1960 to the present.

20   Then, it is our hope that we will be able to establish or

21   investigate and evaluate through engineering principles and

22   Notice of Deposition of the Corporate Designee as to whether

23   or not these designs could have been incorporated on this

24   particular machine at the particular time, whether it was

25   technically feasible, and what they have provided

1    safety-wise to Ms. Lindquist in this case.

2            The other subject area that we are seeking

3    Discovery information is other lawsuits or other accidents

4    to operators of the press brakes at the point of operation

5    where someone has been caught at the tinch point, because we

6    would be entitled to find out, you know, what they've said

7    in the past about point-of-operation protection.  We would

8    be entitled to know what the depositions are and what they

9    have been telling other people in other cases.  In addition,

10   we would be able to gain --

11        JUDGE BAXTER:   In that you have a right to the

12   terms of the negligence count.

13        MR. HARTMAN:  Well, the negligence count, most

14   certainly, but in the product liability count as well,

15   because, for example, let's say that there was an allegation

16   someone was hurt because of negligent design, or there is a

17   feasible safety -- alternative feasible design that could

18   have been implied, they might have elicited that information

19   from the corporate designee of Heim that indicates that,

20   yes, you could safely -- this machine could have been made

21   to provide protection to Tina Lindquist in this case.

22            Now, I realize Mr. Robinson is going to say

23   that the machine was safe and all that, but that's the

24   factual dispute that we have, and we have not gone far

25   enough into discovery merit that.  But, we allege that the

1    product is unsafe in its design.  It is mostly a design

2    defect or a negligence case.  It's not a malfunction case

3    nor is it a warranty case.  And when you have a design

4    defect, any evidence that would point to an alternative

5    feasible design whether or not they just learned about it

6    today, as long as it was -- it could have feasibly been

7    incorporated back in '78 when this machine was made, and the

8    technology was available back then.  That is evidence that

9    relates to the primary issue in this case.  Yeah, if you

10   just boil down all the questions -- and I've explained this

11   to Mr. Robinson -- we're looking at, we want to know the

12   types of safety devices that they have made available for

13   press brakes.

14            Press brake is a term which is known in the

15   industry through the ANSI standard.  It's known to have,

16   because it is a press brake, it's a danger to the operator's

17   point of operation, and there are particular safety

18   mechanisms that ANSI recognizes that they could have used or

19   someone could have used, ANSI says its employer, and we are

20   seeking to find out what they've made available.

21            Now, Mr. Robinson has indicated to me that at

22   the time this machine was made, there were different types

23   of safety devices that they didn't manufacture, but they

24   knew about or made available as an option with this

25   equipment, and subsequent to the manufacturer of this

1    machine, they found the same type of thing.  So, we just

2    want to know what types were made available for these types

3    of press brakes.  And we want to know other lawsuits that's

4    been involved where someone has been injured at the point of

5    operation.  And that's different from a pinch point, Your

6    Honor, because a pinch point is a danger not affiliated with

7    the point of operation as we've learned.  And we are looking

8    at the danger to being conned in the machine at the

9    particular point of operation.

10          JUDGE BAXTER:  So when they were concerned about

11    the definition of a similar product --

12          MR. HARTMAN:  And, we've narrowed that down to

13    where we are looking for press brakes as governed by the

14    ANSI standards that they recognize was applicable to them.

15    Because press brakes come in all different sizes and shapes,

16    but protective mechanisms and what one safety device on a

17    different size press brake may be feasible to be put on this

18    as well.  And we need to know what types of safety devices

19    they've used for point-of-operation protection on their

20    press brakes, not their punch presses, because Mr. Robinson

21    has told me those were not considered a punch press and not

22    a press brake as he has told me that that's something that

23    we are looking at this power press.  We are looking at the

24    machines that they contend are governed by this ANSI

25    standard that Mr. Robinson says is applicable.  We are going

1    to limit it to that.

2              JUDGE BAXTER:  All right.  So, we've narrowed it

3    down now to point of operation of press brakes.

4              MR. HARTMAN:  Correct.

5              JUDGE BAXTER:  Why are we going back to 1960?

6              MR. HARTMAN:  Well, actually I'd like to -- I can

7    modify that now, because it is my understanding that the '72

8    ANSI standard applied.  So, we would look at from '72 to the

9    present, Your Honor.

10             JUDGE BAXTER:  Mr. Robinson, that's a little

11   different than the description I have from you in your

12   Response.  So, why don't you respond to his comments.

13             MR. ROBINSON:  Thank you, Your Honor.  We have

14   come a long way from the initial Discovery requests that ask

15   for everything for every machine which would include all

16   50,000, and that is what our responses were based upon.

17   Since then, Mr. Hartman and I have talked about his present

18   demand being for all mechanical press brakes of any size,

19   shape or use from 19 -- now, it's 19 -- before it was 1960,

20   today is the first I've heard of 1972 -- I think it is

21   actually 1973 -- but regardless, from 1972 until 2005.  So,

22   now we are over a 30-year time frame.  He is certainly

23   entitled to records relating to the particular model precite

24   issue, and we've cited the law on that, and there has been

25   no legal citation at all from the Plaintiff.  But he would

1    be entitled to design information for the Model 70-6, and

2    that's a very specific small press brake that those numbers

3    mean something.

4            It's a 70-ton press with a 6' table.  It's a

5    maneuverable mobile press brake unlike a 100- or 200-ton

6    press brake that may be the size of a small building which

7    has completely different uses and completely different

8    applications.  But, what he's asking for is all mechanical

9    press brakes.  That is entirely too broad and not what is

10   required.  He's limited to the identical model machine,

11   which we've offered to give him.  And, again, we've cited

12   that law.

13           And then he has demanded -- or really she has

14   demanded -- the Plaintiff has demanded post-1978 information

15   up until 2005.  And case law is very clear that a plaintiff

16   has no right to force a manufacturer to give up all

17   information and to search all of its records post

18   manufacturer and post delivery of the products, because a

19   defendant can only be liable if its product was defective or

20   if it was negligently designed.  It still has to contain a

21   defect as of the time it left our control.

22           When the Plaintiff talks about its burden of

23   proof, that burden is always met in these product cases with

24   an expert saying here's what was available and here's what I

25   think could have been made a part of this machine.  Now in

1    actuality occurs, we did not design, we did not manufacture

2    the point-of-operation safety devices to any extent.  Those

3    are done by outside companies, but they were made available

4    on the specification sheets that we've provided and that we

5    have attached with our Response.  And those devices that

6    were available back at the time of sale, back in 1978, that

7    were made available through us were positional guarding with

8    a foot switch and a two-palm button switch which the

9    employer ultimately purchased.

10            Now, the Plaintiffs, of course, since this

11    machine was sold to a completely different entity for

12    apparently a completely different use when it was first sold

13    by us.  So the Plaintiffs' request for post-1978 information

14    has no relevance and cannot possibly lead to the discovery

15    of relevant evidence in accordance with the Case Law and our

16    rules, so I am asking Mr. Hartman and the Plaintiffs to

17    limit it to the Model 70-6 in pre-1978, and we will begin

18    that task which is somewhat of a task because of the age of

19    the records.

20            But I at least think there's a colorable

21    claim that they would be entitled to it even though this

22    machine was specifically designed and constructed for a

23    particular advercation, or to use the words of Pennsylvania

24    law, an intended use.  At least, we think that we could give

25    him that information or her that information and at least is

1    a colorable claim to its relevance.

2            MR. HARTMAN:  But post-1978, all models of press

3    brakes?

4            JUDGE BAXTER:  Mr. Hartman, he's talking about one

5    case in Pennsylvania, the Eastern District, which cites a

6    circuit case from 1958 on identical models.  And, he is

7    talking about an Eastern District of Wisconsin case from

8    1973 about post-dating the manufacturer of the product not

9    being relevant for Discovery purposes.  Do you have a

10   response?

11           MR. HARTMAN:  Well, Your Honor, the status of the

12   law is now that I am entitled to the discovery of any

13   evidence that is likely to lead to the discovery of relevant

14   evidence.  In the case cited, it was a Judge Hewitt case in

15   the Eastern District, he allowed them to have discovery

16   conducted on different models of vehicles that had a similar

17   design issue.  And he did not allow them to have discovery

18   on multiple vehicles where there were -- in that case, it

19   was an engine mount case.  He says you can have the

20   discovery on cases where there -- on all of the vehicles

21   where there's a two-engine mount situation.  But, we will

22   not give you the Discovery.  I'm not allowing you to have

23   the recall notices on the -- excuse me, the recall was on

24   the two-engine mount cars.  The car in question had more

25   than two-engine mounts.  They said, we'll let you have all

1    the discovery on vehicles that have similar engine mount

2    situations, but we will not let you, since it's acknowledged

3    in this case that this car -- that the recall was on a

4    two-engine mount system, and this was not a two-engine mount

5    system, we will not allow you to have that.  But earlier in

6    that very same case, as the Court indicates, they allowed

7    them to have discovery and provided discovery on all the

8    different types of vehicles that had similar propensities as

9    this vehicle.  And the fact is that I have to show an

10   alternate vehicle design.

11         JUDGE BAXTER:  Let me interrupt there for a

12   second.  The point by Mr. Robinson is somewhat sound.  I

13   mean it is the way of trial that that's your expert

14   testimony.

15         MR. HARTMAN:  Well, Your Honor, but certainly that

16   one of the things that I'm able to determine from my expert

17   is whether or not the issue is going to be feasible.  Let's

18   say my expert comes up with an alternate feasible design.  I

19   can utilize all of my Discovery materials for him to

20   formulate that.  I don't have to re-invent the wheel if

21   they've already made it available on other products.

22              Now, let's say that my expert, Your Honor,

23   would come in and say -- and I'm just going to use this

24   because Mr. Robinson is familiar with the term of a light

25   curtain -- and he says that light curtains were feasible in

1    1978 would have made this machine safe.  And let's say that

2    in '84 that Heim made my curtains available for their

3    machines, but all the technology, that same type of light

4    curtain was available years before.  It might have been

5    available in '75.  And they come in and say, well, geez,

6    this light curtain doesn't work, it is not feasible.

7    Meanwhile, they could have been selling it themselves and

8    making it available for its customers at a later date.

9         The law is, Your Honor, that I have to show

10   the technology was feasible at that time, and the machine

11   lacked the technology.  I don't have to show that they

12   offered it for sale or that they utilized it.  And if they

13   are utilizing safety devices for the point of operation and

14   making it available at a later date, I can go get all those

15   devices, look at them, research them, find out if they were

16   available back in '78 with research and have my expert look

17   at it and see if the technology was available, and maybe

18   that is the alternative feasible design.  Mr. Robinson is

19   trying to limit me to 1978 as what they knew.  Well, you

20   know, maybe they did or they didn't, and I don't want to

21   presuppose that everything that his client says is true at

22   this point because I don't know.  I haven't had the

23   opportunity to, you know, do discovery on that.

24        And ANSI recognizes particular types of

25   safety mechanisms for all press brakes regardless of size.

1    So, a present sensing device which is one of the types as a

2    light curtain has the same parameter as on a 100-ton machine

3    as it does on a 70-ton machine as it does on a machine as

4    big as a building, and ANSI sets up the parameter.  So, the

5    light curtain on a 100-ton machine would have the same

6    parameters as far as safety under ANSI as it would under on

7    a 70-ton machine.  So Mr. Robinson's client's attempt to

8    say, well geez, all these different sizes of machines, they

9    all apply to a 70-ton, well that's not so.  ANSI states

10   that.  ANSI has the parameters that these safety devices

11   have to meet regardless of the size of the machine, meaning,

12   if you are going to be within 4 feet of the machine, that 4

13   feet has to be protected.  If you are going to be within 2

14   inches of the machine, it has to be protected.  If you are

15   going to have -- you know, there are all different types of

16   parameters that ANSI sets.  It doesn't say that on a 200-ton

17   machine you do this, and on a 100-ton machine you do that,

18   and on a 70-ton machine you do something different.  And

19   I've asked, like I've said, tell me what types of devices

20   that you've made available for sale with all of the machines

21   and give me a prototypical model of that, the specifications

22   of a prototypical model that you made available, and then

23   I'll be your corporate designee and determine the rest of

24   the facts that I need.

25          Generally speaking, from my understanding,

1    Your Honor, there is maybe six to eight types of safety

2    devices for point-of-operation protection.  If he gives me

3    one prototype that they've made available for each and tells

4    me when they made them available with the specs, then I'll

5    go from there.  But I can't get that for him.

6            MR. ROBINSON:  If I may respond, if all of that

7    information  is available to every expert out there in power

8    press, press brakes, punch press cases, the argument that he

9    says the Plaintiff is making is the same as if we have a --

10   we'll just use the same years -- a 1978 Chevy Cadillac and

11   someone is ejected from the car.  Now, he says, cars are the

12   same.  They all have ejection methods.  Give me every single

13   model of car that you have made from 1960 or 1972 through

14   2005 and tell me every single device you have, whether it be

15   seatbelts, whether it be air bags, whether it be side air

16   bags, front air bags, give me all that information, because

17   I want to claim that even though you came about with that

18   information or knew about that information in 2005, I

19   somehow want to give my expert that information and suggest

20   that it might be relevant in establishing that it was a

21   reasonable feasible alternative design in 1978.  I have

22   never seen until several requests, respectfully, of that

23   breadth, and I have certainly never seen an order requiring

24   a defendant to go through that exercise.

25           JUDGE BAXTER:  Let me interrupt a second.  You say

1  that you have sold in excess of 50,000 products, that those

2  go under a heading of press brakes, power press, and every

3  other machine.  How many press brakes as defined by ANSI in

4  that period have you sold, approximately?

5       MR. ROBINSON:  I do not know the answer, Your

6  Honor, because it would take us a manual file-by-file

7  search, and we didn't want to do that now ahead of time

8  until we saw what the Court wanted to deem was relevant or

9  discoverable.  So, we literally may have to hire someone to

10 go through each of the paper files.

11       I've been out to the office to prepare for my

12 conference with Mr. Hartman to try to make sure I could be

13 as accurate as I could.  I wanted to see the actual

14 record-keeping process.  And it is file cabinet after file

15 cabinet of over 50,000 files -- and that's probably too many

16 cases -- maybe 40,000 files of manual materials, and we did

17 not go through and make that count.  I cannot answer that

18 question, Your Honor.

19       MR. HARTMAN:  Your Honor, I just want the

20 prototypical types of point-of-operation protection, one

21 sample of each type they've made available.  So, if they

22 have present sensing devices, and one is a light curtain,

23 and one is a radio frequency, I just want to know one type

24 of light curtain that they've utilized and one type of radio

25 frequency, the earliest ones they utilized.  And if one is a

1  two-tom press, I want to know one prototype of that and the
2  specs on that.  If one is a two-hand pullout device, I want
3  the specs of that and the prototype of that, because then I
4  can go to the corporate designee and, you know, talk to him
5  about those types of things.
6         MR. ROBINSON:  We don't design those.  The answers
7  to that question, Mr. Hartman, would be we don't design any
8  of them ourselves.
9         MR. HARTMAN:  But, I'm asking for the types that
10  you've made available for sale with your machines, because
11  you do make -- your records do indicate that you allow
12  customers to pick different types.  And we don't know what
13  types you allow them to pick, how the sales process is, and
14  --
15         MR. ROBINSON:  Mr. Hartman, that is not accurate.
16  We've given you the actual sales documents for this
17  particular machine that very clearly showed that we have
18  offered a two-pull button switch and the clip switch for
19  sale back in 1978.  And, again, we have offered to give you,
20  pre this sale of this product, that information.  So that is
21  not accurate that we haven't told you what was available by
22  us at this time.
23         MR. HARTMAN:  Well, with regard to this machine,
24  you have said that.  I'm explaining it with regard to other
25  press brakes.  Your client might have made present sensing

1    devices available in '78.

2            MR. ROBINSON:  That poses two questions then.  Did

3    you get post-1978?

4            MR. HARTMAN:  Yes.

5            MR. ROBINSON:  And we do not believe that you had

6    any right to that information forcing us to go through that,

7    and then what you're saying now is you get pre-'78 but all

8    press brakes.  That's, at least, somewhat narrowing it.

9            MR. HARTMAN:  Your Honor, I am entitled to post

10    '78 because of the feasibility issue.

11            MR. ROBINSON:  Mr. Hartman, I haven't cited any

12    law that would suggest that you are entitled to that.  The

13    law that I found says that there is no way in the world the

14    Plaintiff could expect that information.

15            MR. HARTMAN:  Your Honor, the law he cites is on a

16    different factual basis.  If a close analysis of the Court's

17    decision indicates that's it's a different factual scenario,

18    the issue here is feasibility, you know.  It would be for me

19    to sit there and say -- you know, use Mr. Robinson's example

20    of a car where there is an ejection.  I would have a right

21    to know -- let's say the car didn't have seatbelts, and

22    seatbelts were incorporated in the next model year or three

23    model-years later.  I would have a right to know were

24    seatbelts available at another time, what is the design of

25    the seatbelt.  I could look at the car in question, know

 1    whether or not that seatbelt could have been incorporated

 2    safely in that vehicle for an alternative feasible design.

 3    Whether, ultimately, it will be the alternative feasible

 4    design is an issue for the jury.  Mr. Robinson is asking you

 5    for he would like it to be -- limit what evidence I can

 6    produce on the alternative feasible design or how I get my

 7    evidence.

 8            JUDGE BAXTER:  Well, you know that you have to get

 9    the evidence where you can.  And if you are not able to and

10    your expert is able to find evidence on safety devices that

11    could have been employed on this power brake elsewhere, then

12    they don't have to dig through for you to give that evidence

13    to your experts.

14            I am more concerned right now, I'm thinking

15    through the power brake issue, and I don't see limiting it

16    to this one model number, Mr. Robinson.  I don't understand

17    the rationale behind that.  I don't believe the case you

18    cite says that.  I believe that narrowing it down to power

19    brakes is about as narrow as we can go on that.  So, let's

20    discuss that first because I am closer to making a decision

21    on that one.

22            Is there anything else you would like me to

23    -- I mean, the rule is that it's materials that will lead to

24    admissible evidence, and he has made a case for that on

25    power brake machines as defined by ANSI.

1          MR. HARTMAN:  I think the terminology, Your Honor,

2    is what we are referring to is press brakes.

3          JUDGE BAXTER:  I'm sorry, press brakes.

4          MR. HARTMAN:  This is a power press, and there is

5    a press brake.

6          JUDGE BAXTER:  I know, I'm sorry.

7          MR. ROBINSON:  It is my understanding that if the

8    Plaintiff is going to come in and ask for other products

9    besides the identical product at issue or the identical

10   component at issue, then they need to meet some type of

11   burden in proving that it is the same issue.  They haven't

12   done that.  All they are saying is that they think it may

13   be.

14         JUDGE BAXTER:  But ANSI makes it the same issue,

15   ANSI makes it the same issue.

16         MR. ROBINSON:  The indication is that the

17   Plaintiff has not come forward with any indication or some

18   type of basis to show that there is a similarity sufficient

19   for purposes of their burden.  They haven't given us

20   anything on that.  They are just saying, well, just give it

21   to me so that we can explore that.  To me, that is more of a

22   fishing expedition than coming into Court with some type of

23   affidavit which we often see in these cases by an expert

24   saying that someone needs -- which someone who will be

25   expert see that information on all press brakes so that they

1    can make a determination of whether or not this particular

2    small mobile product of press brake, the 70-6, is defective.

3              JUDGE BAXTER:  But ANSI doesn't define this so

4    narrowly.  ANSI gives standards for the entire generic term,

5    press brakes.

6              MR. ROBINSON:  It does.

7              JUDGE BAXTER:  And so I think ANSI is the decision

8    on that.  I am having a harder time with the time period.  I

9    think that --

10             MR. HARTMAN:  Your Honor, if I may interrupt.

11             JUDGE BAXTER:  Go ahead.

12             MR. HARTMAN:  I believe that the ANSI standard was

13   changed some time in the '90s.

14             MR. ROBINSON:  It's been changed four different

15   times.

16             MR. HARTMAN:  I'm just saying, excuse me.

17             JUDGE BAXTER:  Does it ever break down different

18   types of press brakes?

19             MR. HARTMAN:  No.  It breaks down different types

20   of safety, point-of-operation protection mechanisms.  And,

21   Your Honor, if the Court would order the Defendant in this

22   case to turn over a representative sample made available for

23   sale by them in conjunction with their press brakes of one

24   of each type that's recognized by ANSI and let us know when

25   it was first incorporated, that would allow me to understand

 1  more of what the defense is going to be from their

 2  perspective.

 3          JUDGE BAXTER:  But, see, that doesn't solve the

 4  problem.  The problem for them is going through

 5  tens-of-thousands of files manually.  That doesn't solve the

 6  problem.

 7          MR. HARTMAN:  Your Honor, I have a difficult time

 8  thinking with regard -- and not being there, I certainly --

 9  you know, I've been on a lot of cases where -- and I do a

10  lot of product liability work, Your Honor, and I've tried

11  cases in Federal Court in front of Judge Sindridge and Judge

12  Ambrose.  So Mr. Robinson's experience in defending these

13  cases as he has represented to you is significantly

14  different than when I tried cases in Federal Court with the

15  defense attorneys and other judges.

16          MR. ROBINSON:  I don't know what that means, Mr.

17  Hartman.

18          MR. HARTMAN:  Well, it's things that are assumed

19  to be --

20          JUDGE BAXTER:  You find it hard to believe that he

21  is representing correctly that there are tens-of-thousands

22  of files?

23          MR. HARTMAN:  I think there are tens-of-thousands

24  of documents.  I think there would probably be less than one

25  document that would be utilized with regard to the safety

1  mechanisms available for each generation of types of

2  machines.  There are tens-of-thousands of documents in that

3  there will be drawings, there will be communications, there

4  will be correspondence and that.  But, you know, in 1990, I

5  would assume -- or 1978, I would assume that there was a

6  list of recognized vendors that they utilized for

7  point-of-operation protection mechanisms.  They sell their

8  product in conjunction with their machine.  And that list

9  would probably be -- and I'm looking at this and, again,

10  without the benefit of deposing Mr. Robinson's client at

11  this point in time because I was trying to get the documents

12  first, I would sit there and say that to look at just the

13  documents provided to me that there would be a list of

14  preferred vendors that have point-of-operation protection

15  mechanisms, and that these are the ones we are going to

16  allow someone to check off on machines or make available.

17       JUDGE BAXTER:  Well, that was not required their

18  going through and giving you every single safety -- going

19  through each sale folder.  I think that's what his comment

20  was.

21       MR. HARTMAN:  I don't want that.  What I am

22  looking for is the list of representative safety mechanisms,

23  for example, two-hand pump switches.

24       JUDGE BAXTER:  And if he doesn't have such a list,

25  how is he going to compile that information?

1          MR. HARTMAN:  Well, no one has told me that they

2    don't, Your Honor.  If there isn't, maybe not.  I'd like to

3    know, for example, when present sensing devices were first

4    made available by them and a copy of the vendors that they

5    allowed.

6          MR. ROBINSON:  Well, that would require us to go

7    through those files through '78.  If the Plaintiffs would

8    have asked for even mechanical press brakes for up until '78

9    or even if the example that was given to us just a moment

10   ago by Mr. Hartman was within a year after the next model

11   year or the second-year model, at least we probably would

12   not be here, because we probably would have gone through the

13   exercise just to avoid a motion and taking up the Court's

14   time.  But they want it through 2005.

15         MR. HARTMAN:  Your Honor, we'll limit it to 1995.

16         JUDGE BAXTER:  No, no.

17         MR. ROBINSON:  Well, the law is that it is limited

18   to '78.

19         MR. HARTMAN:  No, I don't believe that that's the

20   law.

21         MR. ROBINSON:  I would agree to produce through

22   1980 if we limit it to press brakes just so we could remove

23   that argument that if it was provided into one year

24   following or the second year following.  But I think you

25   haven't shown any type of foundation -- the Plaintiff hasn't

1    shown any type of foundation post '78.  But if there were a

2    compromise, I would offer to go through that exercise

3    through 1980 to give you that, but.

4            MR. HARTMAN:  Your Honor, ultimately, in

5    Discovery, we are going to want to know -- and one of the

6    questions that will be coming as we provided Mr. Robinson

7    with a Notice of corporate designee Deposition -- one of the

8    things that we are going to want to know is when were

9    present sensing devices first made available.

10           JUDGE BAXTER:  Well, you know what, you know what,

11   you can do your own research to find out when those things

12   are available, and when he tells you --

13           MR. HARTMAN:  I know when --

14           JUDGE BAXTER:  Well, let me finish.  When he tells

15   you what they offered up to 1980, then you make your case.

16   But to me, this goes to when they knew it in a negligent

17   sense.  And we all know it is not going to go to a

18   negligence claim to trial.

19           MR. HARTMAN:  That's correct, in all due candor of

20   the Court, in all likelihood.

21           JUDGE BAXTER:  Exactly.

22           MR. HARTMAN:  But that's even more so in the

23   feasibility issue.  Because the feasibility issue is

24   everything in this case.

25           JUDGE BAXTER:  I know that the feasibility issue

1    is your expert.  And if your expert gets on the stand and

2    says this technology was available, they didn't offer it,

3    then you can make that claim.  But if you say they offered

4    it in 1995, that doesn't help your expert at all.  The

5    expert is going to know these things.

6          MR. HARTMAN:  You're correct, Your Honor.  My

7    expert would not come in and say that the product was

8    defective because it was offered in 1995 and they didn't

9    incorporate it.  But what my expert -- there are several

10   things.  What my expert could do is utilize the vendors that

11   they've used in determining what was technologically

12   feasible in 1978, whether his design and their design, and

13   it was available in '78.

14         JUDGE BAXTER:  Well, he can do that by the vendors

15   that they use in that time period.  I am ready to rule.

16            What we are going to do is we are going to

17   limit the time period to 1980 on the outside end, and we are

18   going to allow that information from all press brakes sold

19   during that time period by the Defendant.

20         MR. ROBINSON:  We are starting in 1972, Your

21   Honor?

22         JUDGE BAXTER:  Yes, 1972 I believe is what we

23   agreed on.

24         MR. ROBINSON:  All right.

25         JUDGE BAXTER:  Is there any other issue then on

1    these things?

2            MR. HARTMAN:  Prior accidents, accidents involving

3    -- yeah, I'd like to know of other claims and other

4    litigation that's been involved with press brakes and

5    point-of-operation protection.

6            MR. ROBINSON:  I think it is the same time frame

7    for both issues, from '72 to '80.  Just so I know, what

8    information is it that I am supposed to be giving him?

9            MR. HARTMAN:  Right now, I just asked for the --

10           JUDGE BAXTER:  Yes, let's give that -- you mean

11   about the press brakes?  He wants the identity of the

12   manufacturer, the type of safety device offered, and a

13   prototype.

14           MR. HARTMAN:  Correct.

15           JUDGE BAXTER:  Specs.

16           MR. HARTMAN:  Yeah.

17           MR. ROBINSON:  What do we mean, prototypes?

18           JUDGE BAXTER:  If you have a picture of the

19   prototype, will you have specs on it.

20           MR. ROBINSON:  Okay.  I see what you are saying.

21           MR. HARTMAN:  But not from the first issue.

22           JUDGE BAXTER:  That's what I just ruled on.  Now,

23   we will jump ahead, but I want to make sure that Mr.

24   Robinson understands that before we go on.

25           MR. ROBINSON:  Your Honor, I think the arguments

1    in the law are the same, post sale accidents particularly

2    through 2005.  But it's the same issue.  They have no

3    relevance to knowledge when, again, to the negligence case

4    for defect if we want to get into the product liability case

5    when the product leaves my control in 1978.  There is no

6    duty to retrofit or recall these particular machines.  That

7    can't be the argument.  So, if we only look to the date of

8    distribution, 1978, how can post '78 accidents have any

9    relevance or lead to any relevant information?  And the law

10   that we cited there says it doesn't discover it either.  It

11   is too much of a burden.

12         MR. HARTMAN:  Your Honor, I don't know how much of

13   a burden it is.  There has been no representation to me

14   which I believe is his obligation to provide as far as how

15   burdensome it will actually be.  But I'm looking in those

16   cases to find out with regard to the tests made and the

17   Corporate officials with regard to this issue.  I mean if he

18   just wants to just provide me transcripts of testimony on

19   the post-AD cases, I'd be willing to accept that, if he

20   provides me transcripts of their corporate designee testing

21   in all the cases that have been involved or your expert

22   testimony.

23         MR. ROBINSON:  You want testimony on cases of a

24   press brake that was sold since 1990.  If you want all that

25   testimony on a completely different press brake with

1  completely different ANSI standards governing it, with

2  completely different laws applicable, for what reason?

3          MR. HARTMAN:  Well, completely different answers

4  --

5          MR. ROBINSON:  You know that answer has been

6  changed.  I think it was started in '73, into the 80s', and

7  then actually it has been changed multiple times, I think

8  four times.

9          MR. HARTMAN:  May I please finish my statement,

10  Your Honor.

11          JUDGE BAXTER:  Go ahead.  Why do you need all of

12  this?

13          MR. HARTMAN:  Your Honor, I am entitled to both

14  substance of evidence -- discovery of substance of evidence

15  as well as evidence as well as evidence that would likely

16  impeach their experts or their corporate designee.  In those

17  cases, there very well could be -- and it would take a lot

18  of reading on our part to go through these transcripts --

19  that I expect that they'll be talking about feasibility of

20  different types of safety devices.  That's what we are

21  seeking to find in this case.  The whole issue is

22  feasibility.

23          JUDGE BAXTER:  The testimony you can find yourself

24  elsewhere; is that not correct?

25          MR. HARTMAN:  Your Honor, there are certain

1    resources that are available, but I don't know -- you know,

2    I have no way of knowing how complete it is compared to what

3    has actually occurred.  As you are aware that any type of

4    outlet exchange or anything like that, it is only based on a

5    voluntary basis.

6            JUDGE BAXTER:  I know.  But the point though is

7    they don't have to do your research for you to cross-examine

8    their people.

9            MR. HARTMAN:  I'm not asking them to do my

10    research, but they do have to provide me documents on a case

11    that is as catastrophic as this case.

12            MR. ROBINSON:  Not post '78.  The catastrophic

13    nature of the injuries, Mr. Hartman, doesn't give you any

14    entitlement to additional discovery.  That is not relevant.

15            JUDGE BAXTER:  Now, we could limit his time period

16    here on these -- I mean, he is correct.  You can't get it up

17    until 2005.  That will lead to admissible evidence.

18            MR. HARTMAN:  Your Honor, how about from 1990?

19            MR. ROBINSON:  How about -- wouldn't it make the

20    most sense to offer it according to the same time frame?

21            JUDGE BAXTER:  Well, are we talking about the case

22    being up until 1990?

23            MR. ROBINSON:  No, the sale of the product.

24            JUDGE BAXTER:  The sale of the product?

25            MR. ROBINSON:  The sale of the product.  Yes,

1   because 1990 -- it could be referencing to 1989, '88, '87

2   press brakes that is governed by completely different

3   standards.

4         MR. HARTMAN:  Your Honor, in all due candor with

5   regard to these particular issues, there is no significant

6   change in the standards.  I don't want to get into

7   representation and colorable claims and, you know,

8   misstating things, but the fact of the matter is is that

9   with regard to safety mechanisms that are utilized and

10  recognized by ANSI, and the burden imposed by ANSI though,

11  that they are contending -- and I'm using their contention

12  that discovers everything.  For the purpose of Discovery, I

13  am agreeing with them for the purpose of this and ANSI

14  govern cite, and only for the purpose of Discovery.  There

15  is not a significant change with regard to the types of

16  safety mechanisms that were recognized.

17        MR. ROBINSON:  How can there be any relevance to a

18  lawsuit filed in 1985 for a product that postdates the sale

19  of this product?  How can there be any relevance that lead

20  to any relevancy?  The only thing you've mentioned is to

21  attack the credibility of a witness you haven't even

22  deposed, so you can't even come into the Court to suggest

23  that there's a credibility issue.

24        MR. HARTMAN:  Well, credibility is always an

25  issue.

1          MR. ROBINSON:  But you would be entitled to the

2     discovery of every single product and every single lawsuit

3     through 2005, and that's not the law.

4          MR. HARTMAN:  Your Honor, that's not -- again,

5     it's a serious mistate of what my contention is.  My

6     contention is that as it relates to press brakes and as it

7     relates to point-of-operation protection, credibility and

8     feasibility are legitimate issues that the Corporate

9     Defendant is going to be contesting, and I'm going to be

10    contesting.  And any evidence that they have in their

11    possession that could lead to the discovery of admissible

12    evidence is fair game for Discovery.

13         MR. ROBINSON:  We are not talking about

14    feasibility now because you are asking for accident data.

15         MR. HARTMAN:  I'm trying to ask for a list of the

16    manufacturers.

17         MR. ROBINSON:  Your Honor, it goes with

18    feasibility as well, whether or not a lawsuit was filed goes

19    to feasibility.

20         MR. HARTMAN:  What might be in the testimony as

21    far as the testimony of your corporate designee or your

22    experts as to feasibility of safety devices.

23         JUDGE BAXTER:  Well, that's his doing your work

24    for you.  I think I am going to make a preliminary ruling to

25    1980, and let's see what kind of -- if you feel that there

1    is something out there that you need desperately, then I'll

2    talk to you about it again.  It won't be a final ruling.

3           MR. HARTMAN:  Your Honor, one more matter I'd like

4    to approach with the Court.  Since I am going to Chicago, I

5    believe, at the end of July, and Mr. Robinson has indicated

6    that he is going to hopefully produce a corporate designee

7    pursuant to my Court Notice of corporate designee

8    Deposition, the burdensome argument is not quite the same

9    when you are producing an individual or individuals to

10   testify.  I would like to be able to depose their corporate

11   designees relating to, you know, alternative safety devices.

12   And that's clear that I am entitled to ask their corporate

13   designee about alternative feasible designs of safety

14   devices without a limitation of time.

15          MR. ROBINSON:  What do you mean that's clear?  You

16   haven't cited a case, and the Court has just made a ruling

17   on whether it is not it is reasonable.

18          MR. HARTMAN:  Now, the court made a ruling, Paul,

19   that limited my time based on your representation that there

20   is going to be tens-and-tens-of-thousands of documents.

21          MR. ROBINSON:  That's based on a document request.

22          JUDGE BAXTER:  That's correct.  My ruling was

23   based on a document request.  Now, what is it that you are

24   asking?

25          MR. HARTMAN:  Your Honor, I want to be able to

1    inquire from the corporate designee if you go beyond 1980.

2    For example, I am going to want to know when present sensing

3    devices were first utilized, what types of present sensing

4    devices that Heim is aware of that, you know, who were the

5    vendors.  I'm going to be asking --

6          JUDGE BAXTER:  You want me to make a ruling on

7    that beforehand?

8          MR. HARTMAN:  Your Honor, I am going to be in

9    Chicago.  This ruling, am I correct, doesn't limit me at

10   this point in time with regard to that.  That will be

11   something that will be considered later.

12         JUDGE BAXTER:  That's my understanding.

13         MR. HARTMAN:   Okay.

14         JUDGE BAXTER:  I ruled on the basis of burdensome.

15         MR. ROBINSON:  Your Honor, did you not indicate

16   that we would also be, by his request, doing his research

17   for him.  It's the same basis for him asking.

18         JUDGE BAXTER:  On this last one, yes.

19         MR. HARTMAN:   I'm entitled to --

20         MR. ROBINSON:  Just a second.  He wants me to

21   bring in Corporate representatives that would have knowledge

22   from 1972 --

23         JUDGE BAXTER:  No, no.  That's not the issue.  You

24   bring in the people he wants to depose at his expense, and

25   he will ask them questions.  If it is beyond their time

1    period, then there is nothing we can do.

2            MR. ROBINSON:  Yeah, but when he sent in his

3    Corporate rep notices, he's identified those same time

4    frames, so that this is exactly what he is asking me to do

5    and produce those people from '72 to 2005.  He is getting

6    the same point that we talked about with the

7    Interrogatories.

8            MR. HARTMAN:  I'm trying to find what the

9    Corporate knowledge is.

10           JUDGE BAXTER:  He has a right to that.  He has a

11   right to that under the negligence count.  It's still in

12   there.

13           MR. ROBINSON:  For 2005?

14           JUDGE BAXTER:  He has a right to find out when

15   they know what they know.  We don't limit depositions, Mr.

16   Robinson.  Mr. Robinson, we don't limit depositions on that

17   sort of thing.  They can ask those questions.

18           MR. HARTMAN:  Thank you, Your Honor.

19           MR. ROBINSON:  Your Honor, are you ordering that I

20   have to produce --

21           JUDGE BAXTER:  I am making no orders.  In fact, if

22   you tell your client not to answer, then you guys call me,

23   and I'll make a ruling.

24           MR. ROBINSON:  Okay.

25           MR. HARTMAN:  Thank you, Your Honor.

1          JUDGE BAXTER:  Thank you.  Dismissed.

2

3          (Hearing adjourned at 2:12 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25