IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA LINDQUIST,<br><br>        Plaintiff,<br><br>vs.<br><br>HEIM, L.P.,<br><br>        Defendant. | Civil Action No: 04-249E<br><br>**JUDGE SEAN J. MCLAUGHLIN /<br>MAGISTRATE JUDGE SUSAN<br>PARADISE BAXTER**<br><br><br>PAUL R. ROBINSON, ESQUIRE<br>PA I.D. No. 65581<br>Meyer, Darragh, Buckler, Bebenek &<br>Eck, P.L.L.C.<br>U.S. Steel Tower, Suite 4850<br>600 Grant Street<br>Pittsburgh, PA 15219<br>(412) 261-6600<br>FAX: (412) 471-2754 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I. STATEMENT OF FACTS**

The statement of undisputed material facts filed contemporaneously with this memorandum of law is incorporated herein by reference as if set forth at length.

**II. ISSUES PRESENTED**

    A.    WHETHER HEIM, L.P. CAN BE LIABLE UNDER ANY PRODUCT LIABILITY THEORY WHERE THE PRODUCT AT ISSUE WAS NOT SOLD BY HEIM AND WHERE THE PLAINTIFF CANNOT ESTABLISH THAT IT WAS?

            **ANSWER:**    NO.

B. **WHETHER HEIM, L.P. CAN BE LIABLE FOR ALLEGEDLY SELLING AN UNGATED FOOT CONTROL WHERE NO EVIDENCE EXISTS THAT A GATE WOULD HAVE PREVENTED THE ACCIDENT.**

      **ANSWER:   NO.**

C. **WHETHER HEIM L.P. CAN BE LIABLE FOR ALLEGEDLY SELLING AN UNGATED FOOT CONTROL WHERE AN UNGATED FOOT CONTROL WAS SAFE FOR ITS INTENDED USE?**

      **ANSWER:   NO.**

## III.  ARGUMENT

### A.  HEIM CANNOT BE HELD LIABLE WHERE THE PRODUCT AT ISSUE WAS NOT SOLD BY HEIM AND THE PLAINTIFF CANNOT ESTABLISH THAT IT WAS.

It is a fundamental rule of Pennsylvania product liability law that a plaintiff has the burden of establishing "with sufficient specificity [the defendant] distributed and manufactured the [product] at issue." Payton v. Pennsylvania Sling Co., 710 A.2d 1221, 1225 (Pa. Super. 1998). As recognized in DeWeese v. Anchor Hocking Consumer and Industrial Products Group, 427 Pa. Super. 47, 628 A.2d 421 (1993):

> A plaintiff must also establish that the injuries were caused by a product of a particular manufacturer. Berkebile v. Brantly Helicopter, 462 Pa. 83, 337 A.2d 893 (1975). "Summary judgment is proper when the plaintiff has failed to establish that the defendant's products were the cause of plaintiff's injury." Eckenrode v. GAF Corp., 375 Pa. Super. 187, 191, 544 A.2d 50, 52 (1988), alloc. denied, 520 Pa. 605, 553 A.2d 968 (1989).

427 Pa. Super. at 51-52, 628 A.2d at 423 (emphasis added).

This fundamental burden on the plaintiff to identify the product at issue as having been sold by the defendant also has been recognized by this Court in <u>Lee v. Boyle-Midway Household Products, Inc.</u>, 792 F.Supp. 1001, 1006, fn4 (W.D. Pa. 1992) (holding that identifying the product as the defendant's is a threshold requirement and that this requirement is separate and apart from the related doctrine of spoliation).  See also <u>Stephens v. Paris Cleaners, Inc.</u>, 2005 Pa. Super. 315, 885 A.2d 59, 63 (Pa. Super. 2005) (holding that "[i]n the context of a products liability action, before liability will attach, 'plaintiff must establish that the injuries sustained were caused by the product of a particular manufacturer or supplier'").

In the present case, the evidence is undisputed that the foot control the plaintiff was using at the time of her accident was not sold by Heim.  The business records of Heim establish that Linemaster Model <u>532-SWH</u> foot controls were sold with "all presses" from 1974 through 1982.  (Statement of Undisputed Material Facts No. 35).  The Press Brake being used by Tina Lindquist was sold in 1978.  (No. 3).  The plaintiff's liability experts claim that the plaintiff was using a Linemaster Model <u>511-B</u> at the time of her injury.  (Appendix Exhibit O).  Plaintiff's experts even identified the foot control sold by Heim in 1978 as a Linemaster Model <u>532-SWH</u> in their expert report.[1]

---

[1] During his deposition, plaintiff's liability expert, Ralph Barnett, testified that his reference to a Linemaster Model 532-SWH foot control being sold by Heim in 1978 was an error.  Tellingly, neither he nor his associate, Matthew Ulmenstein, could not identify any other model that would have been sold by Heim in 1978 and could not explain how he concluded that his reference to a Linemaster Model 532-SWH was in error.  (Appendix Exhibit E, pp. 92-94; Appendix Exhibit P, pp. 89-111).

Setting aside the model number, there is no dispute that the foot control the plaintiff was using at the time of her accident contained an anti-trip mechanism which required the user to fully insert their foot into the foot control housing and de-activate a lock plate before the foot control pedal could be activated. (No. 37). The Linemaster Model 532-SWH did not contain this anti-trip mechanism, and no evidence exists that the foot control which accompanied Heim's 1978 sale of the Press Brake contained the anti-trip mechanism which was contained on the foot control the plaintiff was using. (No. 36). <u>The plaintiff herself, and both of her liability experts, concede there is no evidence that the foot control the plaintiff was using at the time of her accident was sold by Heim</u>. (Nos. 34, 40).

Furthermore, the Group Leader of Maintenance for Corry Manufacturing, Jan Oviatt, <u>who installed the foot control which the plaintiff was using at the time of her accident</u> when Corry Manufacturing purchased the Press Brake in 1999, has testified that the foot control the plaintiff was using did <u>not</u> appear to be the original foot control that Heim would have sold with the Press Brake in 1978. (Nos. 44-46). Additionally, the plaintiff and her co-employee who set up the Press Brake to be operated, Robert Rooney, both have testified that the foot control Tina Lindquist was using at the time of her accident was yellow. (No. 42). There is no dispute that the Linemaster Model 532-SWH foot control was orange. (No. 43).

The only evidence that exists in this case is that the foot control being used by Tina Lindquist was <u>not</u> the foot control which Heim sold to a Connecticut machinery distributor in 1978. Plaintiff and her experts concede they have no evidence to indicate the plaintiff

was using a foot control which was sold by Heim. As such, there simply is no evidence to meet the plaintiff's burden of proving, or even speculate, that the foot control the plaintiff was using at the time of her accident was sold by Heim. Because the plaintiff cannot meet her fundamental burden of proving that Heim's product was being used by the plaintiff at the time of her accident, Heim is entitled to summary judgment.

B.  **HEIM, L.P. CANNOT BE LIABLE FOR ALLEGEDLY SELLING AN UNGATED FOOT CONTROL WHERE NO EVIDENCE EXISTS THAT A GATED FOOT CONTROL WOULD HAVE PREVENTED THE ACCIDENT.**

Even if the plaintiff was permitted to proceed with her product liability claims without any evidence that the foot control she was using at the time of her accident was sold by Heim in 1978, her claims would fail. There is no evidence in this case that a gated foot control would have prevented this accident and no evidence that the absence of a gate on the foot control had any causal relationship to the plaintiff's accident. "Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence [or] strict product liability." Soldo v. Sandoz Pharmaceuticals Corp., 244 F.Supp.2d 434, 524 (W.D. Pa. 2003).

The plaintiff's expert concedes that the existence of a gate on a foot control is irrelevant if the plaintiff's foot was located inside the housing of the foot control at the time of the assumed accidental activation. (Nos. 48-49). The existence of a gate would be meaningless because the plaintiff's foot, by resting inside the foot control, would already have intentionally bypassed the gate, and the accidental activation could still occur even with a gated foot control. (Id.). Plaintiff's expert references this misuse of a foot control

as "riding the pedal" when authoring his past articles on this type of foot control misuse, and plaintiff's expert opines that the existence of a gate on a foot control increases the likelihood of an operator "riding the pedal" because operators attempt to avoid the more cumbersome event of opening the gate prior to each application. (Appendix Exhibit E, pp. 136-140).

In an attempt to avoid the necessary conclusion that a gated foot control would not have prevented plaintiff's accident, thereby preventing the plaintiff from establishing the causation element of her claims, the plaintiff's expert surmises that the plaintiff's foot must have been located completely outside of the foot control prior to the presumed accidental activation and thereafter accidentally and involuntarily moved a number of ways so as to permit an accidental activation of the foot control pedal. Plaintiff's expert then claims that the gate would have prevented the accidental activation. (Appendix Exhibit O).

To accept this expert's factual conjecture as to how this accident occurred, one would first need to ignore Tina Lindquist's testimony that she has no memory of her foot accidentally entering the protective housing of the foot control. (No. 21). Accepting this factual conjecture also would require this Court to believe that <u>each</u> of the following contortions of the plaintiff's foot necessarily occurred all in the absence of evidence to suggest that <u>any</u> actually occurred:

    a.    The plaintiff's foot must have been completely outside of the foot control before the accident activation occurs;

      b.      The plaintiff's foot must have accidentally targeted and entered the protective housing of the foot control;

      c.      The plaintiff's foot must have accidentally lifted itself over the 1 ½" height of the pedal;

      d.      The plaintiff's foot must have accidentally moved forward horizontally the entire distance of the foot control's protective housing and with enough force to activate the anti-trip mechanism; and,

      e.      The plaintiff's foot must have then accidentally moved downward vertically a sufficient distance to activate the pedal.

(No. 50).

Significantly, there is no evidence that any of these events took place (No. 50-55). There is no evidence that the plaintiff's foot accidentally targeted and entered the protective housing of the foot control. (Id.), and the plaintiff has testified that she has no memory of that conjectured event taking place. (No. 21). There is no evidence that the plaintiff's foot, if it had accidentally entered the foot control housing, would have done so at a height which bypassed the foot pedal. (Nos. 50-55). There is no evidence that plaintiff's foot moved forward, horizontally at all, let alone the entire length of the foot control housing and with such force to activate the anti-trip mechanism which existed at the rear of the foot control. (Id.). There also is no evidence that the plaintiff's foot then accidentally moved downward vertically a sufficient distance and with a sufficient force to activate the pedal. (Id.).

The plaintiff and her liability expert have not even attempted to suggest that some type of methodology was utilized to surmise that these accidental involuntary movements of the plaintiff's foot would have occurred, or could have occurred while the plaintiff was sitting in front of the Press Brake. (No. 57). Oddly, plaintiff's expert conducted a test involving subjects who were standing and who were stepping into a foot control, and plaintiff's expert conceded <u>no</u> similarities existed between his text and the plaintiff's incident. (<u>Id</u>.). Furthermore, the testimony of Joel Nichols, who warned the plaintiff fifteen (15) minutes prior to the accident to not sit while using the foot control, is that the only way this accident could have happened is through the plaintiff "riding the pedal," the situation conceded by plaintiff's expert to render the gate meaningless. (No. 56).

No theory of product liability permits a plaintiff to present a version of an accident which is controverted by the evidence, which has no support by the evidence, and which has no support by an accepted methodology utilized by an expert. <u>Hussey v. May Department Stores, Inc.</u>, 238 P.S. 431, 435, 357 A.2d 635, 637 (1976) (expert is only allowed to assume the truth of the evidence and cannot base his opinion on conjecture). The plaintiff's theory would require a complete abandonment of these rules. Because the plaintiff cannot establish how this accident happened, and because the plaintiff cannot establish that the absence of a gate bears any causal relationship to her injury, summary judgment is required on each of her claims.

C.  **HEIM L.P. CANNOT BE LIABLE FOR ALLEGEDLY SELLING AN UNGATED FOOT CONTROL WHERE THE PRODUCT AT ISSUE, AN UNGATED FOOT CONTROL, WAS SAFE FOR ITS INTENDED USE.**

The Supreme Court of Pennsylvania adopted the Restatement (Second) of Torts § 402A[2] in <u>Webb v. Zern</u>, 422 Pa. 424, 220 A.2d 853 (1966). In order to prevail, a plaintiff has the burden of proving each of the following: (1) the product was defective; (2) the defect existed when it left the hands of the defendant; and (3) the defect caused the harm. <u>Schindler v. Sofamor, Inc.</u>, 2001 Pa. Super. 118, 774 A.2d 765, 771 (2001).

In <u>Azzarello v. Black Bros. Co., Inc.</u>, 480 Pa. 547, 391 A.2d 1020 (1978), the Supreme Court of Pennsylvania held that a product can be considered defective only under the following two circumstances:

> Where the product left the supplier's control lacking any element necessary to make it safe for its <u>intended use</u> or possessing any feature that renders it unsafe for the <u>intended use</u>.

<u>Azzarello</u>, 480 Pa. 547, 391 A.2d at 1027. Both circumstances expressly require the product to be put to its "intended use" before a defect can be found to exist.

---

[2]Section 402A provides: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of its product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

"A manufacturer cannot be asked to pay damages merely because its product caused an injury." Ellis v. Chicago Bridge & Iron Co., 376 Pa. Super. 220, 544 A.2d 906 (1988), appeal den'd, 524 Pa. 620, 571 A.2d 383 (1989).  Furthermore, "[t]here are certain products and risks against which the law of products liability is not meant to protect the user and, in those situations, the trial court should rule as a matter of law that strict liability does not apply."  Weiner v. American Honda Motor Co., 718 A.2d 305, 309 (Pa. Super. 1998).  Whether or not a defect existed at the time it left the control of the defendant is a question of law for the court to decide.  See Schindler, 774 A.2d at 771; Ellis, supra.

Here, the plaintiff is not contending that the Press Brake sold by Heim in 1978 was defective.  Instead, she is claiming that the foot control became defective when the plaintiff's employer did not install the required point of operation safety device.  The plaintiff's expert concedes that the ungated foot control would have been safe if the plaintiff's employer had installed the OSHA required point of operation safety device, such as the light curtain the employer installed on the Press Brake after the plaintiff's accident. (No. 65).  Plaintiff's expert further concedes that it would be a misuse of the Press Brake to operate it without the required point of operation safety device. (Nos. 59, 64).  Plaintiff's expert further concedes that Heim had no duty to install a point of operation safety device on the press brake when it was sold, as only the employer and user can determine which point of operation safety device is appropriate for the many potential uses of the Press Brake. (Nos. 60).

As a result of the above, the foot control cannot be deemed to have been defective at the time it was sold by Heim in 1978. Under the plaintiff's reasoning, the foot control only became defective when the plaintiff's employer failed to install an appropriate point of operation safety device after it purchased the Press Brake in 1999. There is no evidence to suggest that the original user of the Press Brake, Avco Lycoming, did not utilize an appropriate point of operation safety device for the Press Brake after it obtained the Press Brake in 1978, and there is no evidence that any injury occurred through the use of the Press Brake for the twenty-one (21) years it was used prior to its purchase by Corry Manufacturing.

Because the foot control sold by Heim with its Press Brake in 1978 did not lack any element necessary to make it safe for its <u>intended use</u>, and did not possess any element which rendered it unsafe for its intended use, at the time it was sold in 1978, summary judgment should be entered on the strict liability claim.

The Third Circuit Court of Appeals has recognized that a product must be defective for a product liability claim based upon negligence principles in <u>Oddi v. Ford Motor Company</u>, 234 F.3d 136 (3d Cir. 2000). In <u>Oddi</u>, the plaintiff filed suit against Ford Motor Company after a one-vehicle accident, claiming that Ford was negligent in designing the front bumper his vehicle. In affirming the dismissal of the negligence claim, the Third Circuit recognized that, regardless of whether or not a product liability claim is based upon negligence or strict liability principles, the product must contain a defect to allow a recovery:

> Under Pennsylvania law, in order for an injured party to establish a cause of action against a manufacturer based upon the latter's breach of a duty, "the plaintiff must prove, not only that the product was defective and that the defect caused his[/her] injury, but in addition, [the plaintiff must prove] that in manufacturing or supplying the product the defendant failed to exercise due care."  <u>Thus, Oddi must first establish that the vehicle was defective.</u>
>
> <u>Thus, whether we view Oddi's theory as crashworthiness or negligence arising from a failure to test, he must establish a defect in the design of the truck in order to recover, and he must then show that that defect caused his injuries.</u>

<u>Oddi</u>, 234 F.3d at 144 (emphasis added).  As such, and because the plaintiff cannot establish that the foot control was defective when it left the control of Heim in 1978, plaintiff's negligence claim fails.

Plaintiff's breach of warranty claims similarly fail because of the absence of a defect in the foot control at the time of its sale in 1978.  In <u>Altronics of Bethlehem, Inc. v. Repco, Inc.</u>, 957 F.2d 1102 (3d Cir. 1992), the Third Circuit Court of Appeals, applying Pennsylvania law, discussed the need for there to be a product defect to make out a breach of warranty claim.  Specifically, the Third Circuit held, with regard to both the warranty of merchantability and the warranty of fitness for a particular purpose:

> To establish a breach of either warranty, <u>plaintiffs must show that the equipment they purchased from defendant was defective</u>.

<u>Id</u>. at 1105 (emphasis added).  <u>See</u> <u>also</u>, <u>Salvador v. I.H. English of Philadelphia, Inc.</u>, 224 Pa. Super. 377, 307 A.2d 398, <u>aff'd</u>, 457 Pa. 24, 319 A.2d 903 (1973).  As a result, and

also because the four-year statute of limitations on the warranty claims expired in 1982. Plaintiff's breach of warranty claims fail. See <u>Nationwide Insurance Co. v. General Motors Corp.</u>, 533 Pa. 423, 625 A.2d 1172 (1993).

### IV.  CONCLUSION

The plaintiff's product liability claims fail as a matter of law for each of the reasons set forth herein.  The evidence existing in this case is clear that the foot control which the plaintiff was using at the time of her accident was not the same foot control which was sold by Heim with the Press Brake in 1978, and the plaintiff cannot meet her fundamental burden of establishing that the foot control she was using was sold by Heim.

Furthermore, the plaintiff does not know how the accident happened, and there is no evidence that a gated foot control would have prevented this accident from occurring. The theory of plaintiff's expert as to how this accident happened is unsupported by the evidence and cannot form the basis of a conjectured theory as to how this accident happened in an attempt to make the gate relevant and causally related to the accident.

Finally, the plaintiff's expert concedes that the foot control was not defective when it was sold with the press brake in 1978 and only became allegedly defective through its use on a press brake that did not contain a point of operation safety device which the plaintiff's employer was required to install on the machine.  Because the foot control was not defective at the time of its sale in 1978, the plaintiff's claims fail.

The plaintiff's theories of liability against Heim have changed repeatedly throughout the course of this litigation, and it is clear that no liability exists under any theory. Heim respectfully requests that this Honorable Court enter summary judgment in its favor and against the plaintiff on all claims.

        Respectfully submitted,

        MEYER, DARRAGH, BUCKLER,
        BEBENEK & ECK, P.L.L.C.


By: /s/ Paul R. Robinson
      PAUL R. ROBINSON, ESQUIRE
      PA I.D. No. 65581
      Attorneys for Heim, L.P.

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon all parties on the date and in the manner listed below:

|  |  |
|---|---|
| _____ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail - Return Receipt Requested |
| _____ | Hand Delivery |
| _____ | Facsimile Transmission |
| _____ | Overnight Delivery |
| \_\_\_X\_\_\_\_ | Electronic Transmission |

at the following address:

> Dallas W. Hartman, Esquire
> Raymond Conlon, Esquire
> Dallas W. Hartman P.C.
> 2815 Wilmington Road
> New Castle, PA 16105
> *(Counsel for Plaintiff)*

> MEYER, DARRAGH, BUCKLER,
> BEBENEK & ECK, P.L.L.C.

Date: May 15, 2006              /s/ Paul R. Robinson
                                PAUL R. ROBINSON, ESQUIRE

P0770450.1