IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA LINDQUIST,<br><br>           Plaintiff,<br><br>  vs.<br><br>HEIM, L.P.,<br><br>           Defendant. | Civil Action No:  04-249E<br><br>**JUDGE SEAN J. MCLAUGHLIN /<br>MAGISTRATE JUDGE SUSAN<br>PARADISE BAXTER**<br><br><br>PAUL R. ROBINSON, ESQUIRE<br>PA I.D. No. 65581<br>Meyer, Darragh, Buckler, Bebenek &<br>Eck, P.L.L.C.<br>U.S. Steel Tower, Suite 4850<br>600 Grant Street<br>Pittsburgh, PA 15219<br>(412) 261-6600<br>FAX: (412) 471-2754 |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### The Product:  A 1978 Model 70-6 Mechanical Press Brake

1.      The plaintiff was using a Heim Model 70-6 mechanical press brake ("the Press Brake") at the time of her September 25, 2002 accident.  (Anthony Mase Deposition, Appendix Exhibit A, p. 30).

2.      The Press Brake is a multi-purpose press brake having a table six (6) feet in length and a vertically moving ram which a user activates to bend and mold pieces of metal.  (Anthony Mase Deposition, Appendix Exhibit A, pp. 30-33, 49).

3.      The Press Brake was sold by Heim in April, 1978 to a Connecticut machinery distributor, HB Machinery, which requested that the Press Brake shipped to another Connecticut company, Avco Lycoming.  (Anthony Mase Deposition, Appendix Exhibit A, p. 49; Appendix Exhibit C).

4.      The Press Brake was not sold with dies and, prior to the Press Brake being usable as a press brake, the dies which contact the metal parts and cause the bending and

P0774318.1

molding of the metal were affixed to the table and ram by the user.  (Robert Rooney Deposition, Appendix Exhibit B, p. 27-28).

5.      The Press Brake was sold to Avco Lycoming with a foot control activation device.  (Assembly Order and Inspection Sheet, Appendix Exhibit C).

6.      It is unknown if HB Machinery or Avco Lycoming selected the type of foot control which accompanied the Press Brake. (Anthony Mase Deposition, Appendix Exhibit A, p. 195-197).

7.      No evidence exists to suggest that Heim was aware of the type of use which Avco Lycoming would make of the Press Brake.  (Anthony Mase Deposition, Appendix Exhibit A, pp. 51-53).

8.      Certain uses of the Press Brake, including those involving larger metal pieces which must be hand held at the time of the Press Brake operation and those involving the use of hand tools to hold the product, require the use of a foot control activation device. (Gary Dietz Deposition, Appendix Exhibit D, pp. 70-71).

9.      No party is aware of any injury occurring through Avco Lycoming's use of the Press Brake for the twenty-one (21) years which Avco Lycoming used the Press Brake. (Anthony Mase Deposition, Appendix Exhibit A, pp. 204-205).

10.      In 1999, the plaintiff's employer, Corry Manufacturing, purchased the Press Brake at an auction and began using the Press Brake for a number of uses estimated by one employee to be at least twenty (20). (Gary Dietz Deposition, Appendix Exhibit D, p. 92-94).

11.      After Corry Manufacturing purchased the Press Brake, Corry Manufacturing manufactured and hard-wired a two-palm button station to the Press Brake which, when in use, required both hands of the operator to push activation buttons to ensure that the operator does not have either hand in the point of operation when the Press Brake is activated.  (Jan Oviatt Deposition, Appendix Exhibit L, p. 13).

12.      The use of the two-palm button station would have prevented the accident from occurring.  (Ralph Barnett Deposition, Appendix Exhibit E, p. 126; Gary Dietz Deposition, Appendix Exhibit D, p. 108; Jan Oviatt Deposition, Appendix Exhibit L, p. 44).

13.      The plaintiff's co-employees have testified that the plaintiff was permitted to select the two-palm button activation device for the part she was making at the time of her accident through the use of a key located on the pedestal containing the two palm buttons. (Robert Rooney Deposition, Appendix Exhibit B, p. 20-22; Joel Nichols Deposition, Appendix Exhibit F, pp. 68-69).

14.    The Press Brake met or exceeded all requirements of the controlling 1973 ANSI (American National Standard Institute) standard applicable to press brakes.  (ANSI B11.3-1973).

15.    The Parts and Instructions Book attached at Appendix Exhibit G was located in a bin affixed to the Press Brake at the time of plaintiff's accident.  (Joel Nichols Deposition, Appendix Exhibit F, p. 81).

16.    The warning shown in Appendix Exhibit H, pp. 18-19 was affixed to the front of the Press Brake facing the operator at the time of the plaintiff's accident.  (Joel Nichols Deposition, Appendix Exhibit F, p. 79).

17.    The warnings and instructions located in the Parts and Instructions Book, and those located on the Press Brake itself, were appropriate, and the plaintiff is no longer claiming that the warnings and instructions were deficient.

### The Plaintiff's Accident

18.    The accident occurred when the plaintiff operated the Press Brake while her hands were under the ram and within the die area.  (Tina Lindquist Deposition, Appendix Exhibit I, p. 151).

19.    The plaintiff was sitting in a chair while using the Press Brake at the time of her accident.  (Tina Lindquist Deposition, Appendix Exhibit I, p. 140; Joel Nichols Deposition, Appendix Exhibit F, pp. 44-48).

20.    The plaintiff is unable to provide any explanation as to how the Press Brake activated.  (Tina Lindquist Deposition, Appendix Exhibit I, pp. 141-152).

21.    The plaintiff does not recall her foot slipping into the foot control accidentally. (Tina Lindquist Deposition, Appendix Exhibit I, p. 144, 152).

22.    The Press Brake did not malfunction in any manner at the time of the plaintiff's accident and, instead, performed as it was intended to perform.  (Tina Lindquist Deposition, Appendix Exhibit I, pp. 56-57; Gary Dietz Deposition, Appendix Exhibit D, pp. 107-108).

23.    The plaintiff's employer, Corry Manufacturing, was cited by OSHA for this accident under 29 CFR 1910.212(a)(3)(ii) for not having an appropriate point of operation safety device on the Press Brake. (Gary Merkle Deposition, Appendix Exhibit J, pp. 60-63; OSHA Worksheet, Appendix Exhibit K).

24.     The plaintiff's accident could not have occurred if the warnings on the Press Brake, which directed the user to "NEVER PLACE ANY PART OF YOUR BODY UNDER THE RAM OR WITHIN THE DIE AREA", had been followed.  (Tina Lindquist Deposition, Appendix Exhibit I, p. 212; Gary Merkle Deposition, Appendix Exhibit J, p. 95; Jan Oviatt Deposition, Appendix Exhibit L, pp. 44-45).

25.     The plaintiff's accident could not have occurred if the plaintiff used the two-palm button switch which was connected to the Press Brake.   (Ralph Barnett Deposition, Appendix Exhibit E, p. 128; Gary Dietz Deposition, Appendix Exhibit D, p. 108).

26.     The plaintiff's accident could not have occurred if the plaintiff's employer had installed an appropriate point of operation safety device which both ANSI and OSHA required the employer to install on the Press Brake.

27.     The plaintiff's accident could not have occurred if the foot control had been positioned at a safe distance from the Press Brake.  (Gary Merkle Deposition, Appendix Exhibit J, p. 59; Jan Oviatt Deposition, Appendix Exhibit L, p. 44).

## The Plaintiff's Claim

28.     The plaintiff claims that the Press Brake was defective solely because the foot control which was used by Tina Lindquist to activate it did not have a hinged gate in front of the opening where the user's foot enters the protective top and side guards. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 19-20; See 1977 Linemaster Catalog, Appendix Exhibit N, pp. 8-9).

## Product Identity Issues

29.     The foot control which the plaintiff was using at the time of the incident was discarded or otherwise lost.  (Gary Merkle Deposition, Appendix Exhibit J, pp. 91-92).

30.     The foot control which the plaintiff was using at the time of her accident was discarded or lost after the plaintiff's representatives inspected the Press Brake while the foot control was present.

31.     The foot control used by the plaintiff at the time of her accident had a number of safety features, including a top guard, side guards, and an anti-trip mechanism which required the operator to push his/her toe horizontally against a lever to release a latch which enabled the pedal to be depressed ("anti-trip mechanism").   (Ralph Barnett Deposition, Appendix Exhibit E, pp. 55-57; Robert Rooney Deposition, Appendix Exhibit B, pp. 38-40; Jan Oviatt Deposition, Appendix Exhibit L, p. 15).

32.     The plaintiff claims that the foot control which she was using at the time of her accident was a Model 511-B foot control manufactured by Linemaster. (Ralph Barnett Expert Report, Appendix Exhibit O, p. 81-85).

33.     No evidence exists that the foot control the plaintiff was using at the time of her accident was the foot control which was originally sold by Heim with the Press Brake to HB Machinery in 1978. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 81-85, 91; Matthew Ulmenstein Deposition, Appendix Exhibit P, pp. 60-70, 89-111).

34.     The plaintiff does not now if the foot control she was using was the foot control which was sold with the Press Brake in 1978. (Tina Lindquist Deposition, Appendix Exhibit I, p. 88).

35.     The Heim business records which exist relative to the identity of the foot control which was sold with the Press Brake in 1978, specifically a Heim foot control drawing, evidences the sale of Linemaster Model 532-SWH foot controls for "all presses" from 1974 through 1982 and Heim's change to the Linemaster Model 511-B in 1982. (Heim Drawing A-470-D, Appendix Exhibit M).

36.     The Model 532-SWH Linemaster foot control does not contain the anti-trip mechanism which is contained on the Model 511-B Linemaster. (1977 Linemaster Catalog, Appendix Exhibit N, p. 8; Ralph Barnett Deposition, Appendix Exhibit E, p. 92; William Switalski Expert Report, Appendix Exhibit Q).

37.     The foot control which the plaintiff was using at the time of her accident included an anti-trip mechanism. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 52, 57, 72; Robert Rooney Deposition, Appendix Exhibit B, pp. 38-40; Jan Oviatt Deposition, Appendix Exhibit L, p. 15).

38.     The expert report of plaintiff's expert, Ralph Barnett, indicated that the foot control which was originally sold with the Press Brake in 1978 was a Linemaster Model 532-SWH.[1]  (Appendix Exhibit O, pp. 2, 7).

39.     The plaintiff has not and cannot produce any evidence that a Linemaster Model 511 foot control used by the plaintiff at the time of her accident was sold by Heim with the Press Brake in 1978. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 83, 92-94; Matthew Ulmenstein Deposition, Appendix Exhibit P, pp. 60-70; 89-111).

---

[1]During the discovery deposition of Ralph Barnett, Barnett claimed that his reference to a Model 532-SWH being sold with the press brake was an error, but neither he nor his associate was unable to identify the model of foot control which was sold with the Press Brake in 1978 to permit them to conclude that the reference to the Model 532-SWH was an error. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 92-94; Matthew Ulmenstein Deposition, Appendix Exhibit P, pp. 60-70, 89-111).

40.    The plaintiff has not and cannot produce any evidence that the foot control being used the by the plaintiff at the time of her accident was the same foot control which was sold by Heim in 1978 to HB Machinery.  (Ralph Barnett Deposition, Appendix Exhibit E, pp. 92-94; Matthew Ulmenstein Deposition, Appendix Exhibit P, pp. 60-70; 83, 89-111).

41.    No evidence exists that the foot control which Heim sold with the Press Brake in 1978 still existed when the Press Brake was purchased at auction by Corry Manufacturing in 1999.

42.    Tina Lindquist and the co-employee who set up the Press Brake to be operated with the foot control, Robert Rooney, both testified that they believed the foot control which Tina Lindquist was using at the time of her accident was yellow.  (Tina Lindquist Deposition, Appendix Exhibit I, pp. 86-87, 210-211; Robert Rooney Deposition, Appendix Exhibit B, p. 40).

43.    The Linemaster Model 532-SWH foot control was orange.  (1977 Linemaster Brochure, Appendix Exhibit N, p. 8).

44.    Jan Oviatt is the Group Leader of Maintenance for Corry Manufacturing.  (Jan Oviatt Deposition, Appendix Exhibit L, p. 8).

45.    Jan Oviatt installed the foot control Tina Lindquist was using at the time of her accident on the Press Brake shortly after Corry Manufacturing purchased the Press Brake in 1999.  (Jan Oviatt Deposition, Appendix Exhibit L, p. 13).

46.    Jan Oviatt believes that the foot control which he installed on the Press Brake in 1999 was not the original foot control that Heim sold with the Press Brake in 1978.  (Jan Oviatt Deposition, Appendix Exhibit L, pp. 16, 63-67).

**Irrelevance of the Gate**

47.    The plaintiff's expert's opinion that the number one reason for accidental activations of a Press Brake is "riding the pedal", a misuse which involves the user keeping their foot inside of the foot control between activations. (Ralph Barnett Deposition, Appendix E, p. 137; pp. 51-52).

48.    Whether or not a gate exists on a foot control is irrelevant if the operator's foot is "riding the pedal."  (Ralph Barnett Deposition, Appendix E, p. 213-214).

49.    The existence of a gate or a foot control is irrelevant in a "riding the pedal" accidental activation situation because the user's foot has already intentionally bypassed the gate to be in a "riding the pedal" position. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 213-214).

50.     The theory of how plaintiff's accident occurred provided by her expert requires each of the following facts to exist for her absence of gate theory to have a causal relationship to her accident:

     a.    The plaintiff's foot must have been completely outside of the foot control before the accident activation occurs such that the gate would have been closed;

     b.    The plaintiff's foot must have accidentally moved forward and into the protective housing of the foot control;

     c.    The plaintiff's foot must have accidentally moved vertically upwards over the 1 ½" height of the pedal;

     d.    The plaintiff's foot must have accidentally moved forward, horizontally, the entire distance of the foot control's protective housing and with enough force to activate the anti-trip mechanism located at the inside rear of the foot control; and;

     e.    The plaintiff's foot must have then accidentally moved vertically downwards a sufficient distance to activate the pedal.

(Ralph Barnett Deposition, Appendix Exhibit E, pp. 180-183, 216).

51.     There is no evidence that the plaintiff's foot accidentally moved forward and into the protective housing of the foot control. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 181, 216).

52.     There is no evidence that the plaintiff's foot accidentally moved vertically upwards over the 1 ½" height of the pedal. (Id., pp. 180-183, 216)

53.     There is no evidence that the plaintiff's foot accidentally moved horizontally the entire distance of the foot control's protective housing and with sufficient force to activate the anti-trip mechanism. (Id.).

54.     There is no evidence that the plaintiff's foot accidentally moved vertically downwards a sufficient distance to activate the pedal. (Id.).

55.     The plaintiff does not know how the Press Brake was activated and does not recall her foot accidentally entering the foot control. (Tina Lindquist Deposition, Appendix Exhibit I, pp. 152-154, 163-164).

56.    The plaintiff's co-worker, Joel Nichols, who testified he warned Tina Lindquist fifteen (15) minutes before her accident not to sit in a chair while operating the Press Brake, did not know of any other manner in which this accident could have happened other than through Tina Lindquist "riding the pedal" while her hands were in the point of operation of the Press Brake.  (Joel Nichols Deposition, Appendix Exhibit F, pp. 39-41).

57.    Plaintiff's expert has performed no testing to determine if a person in a seated position such as Tina Lindquist could accidentally move her foot upward, forward, and downward as required by the plaintiff's absence of gate theory.  (Ralph Barnett Deposition, Appendix Exhibit E, pp. 180, 219-220).

## An Ungated Foot Control is Not Defective

58.    Plaintiff's sole liability expert, Ralph Barnett, admits that an ungated foot control is safe when the foot control is used on a press brake which contains the OSHA required employer installed point of operation guards. (Ralph Barnett Deposition, Appendix Exhibit E, pp. 190-191).

59.    The intended use of the Press Brake includes use with an OSHA required point of operation safety device.  (Ralph Barnett Deposition, Appendix Exhibit E, p. 238).

60.    It is the employer's responsibility to install the appropriate point of operation safety device for the particular use of the Press Brake.   (Ralph Barnett Deposition, Appendix Exhibit E, pp. 163-164).

61.    The plaintiff's employer continued to use the Press Brake after the plaintiff's accident, but it did so through the use of the two-palm button switch.  (Gary Dietz Deposition, Appendix Exhibit D, p. 78).

62.    The plaintiff's employer also added a point of operation safety device, a light curtain, to the Press Brake after the plaintiff's accident.  (Gary Dietz Deposition, Appendix Exhibit D, p.78).

63.    The Press Brake was intended to be used with an appropriate point of operation safety device.  (Ralph Barnett Deposition, Appendix Exhibit E, p. 238).

64.    The use of the Press Brake without an appropriate point of operation safety device constitutes a misuse of the Press Brake.  (Ralph Barnett Deposition, Appendix Exhibit E, pp.124-125).

65.    If an appropriate point of operation safety device, such as the light curtain installed by the plaintiff's employer after the accident, had been in use, the foot control

used by Tina Lindquist would have been safe.  (Ralph Barnett Deposition, Appendix Exhibit E, pp. 190-191).


Respectfully submitted,

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.


By: _____ /s/ Paul R. Robinson _____
    PAUL R. ROBINSON, ESQUIRE
    Attorney for Heim, L.P.
    PA I.D. No. 65581

    U.S. Steel Tower, Suite 4850
    600 Grant Street
    Pittsburgh, PA 15219
    (412) 261-6600

**PROOF OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been

served upon all parties on the date and in the manner listed below:

|          |                                          |
|----------|------------------------------------------|
| _____ | First Class Mail, Postage Prepaid        |
| _____ | Certified Mail - Return Receipt Requested |
| _____ | Hand Delivery                            |
| _____ | Facsimile Transmission                   |
| ___X___  | Electronic Transmission                  |

at the following address:

Dallas W. Hartman, Esquire
Raymond Conlon, Esquire
Dallas W. Hartman P.C.
2815 Wilmington Road
New Castle, PA 16105
*(Counsel for Plaintiff)*


MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.


Date: May 15, 2006                    ___/s/ Paul R. Robinson_____
                                       PAUL R. ROBINSON, ESQUIRE

P0774318.1