UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

```
TINA LINDQUIST              : NO. 04-249E
            Plaintiff,      :
                            :
                            : JUDGE SEAN MCLAUGHLIN/
    v.                      : MAGISTRATE JUDGE SUSAN
                            : PARADISE BAXTER
HEIM, L.P.                  :
            Defendant.      :
```

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  STATEMENT OF FACTS:

Plaintiff's Response and Statement of Material Facts, filed contemporaneously with this Brief, is incorporated herein by reference as though set forth in its entirety.

## II.  ISSUES PRESENTED:

**A.  THE PRODUCT AT ISSUE WAS MANUFACTURED, DISTRIBUTED, SOLD AND/OR PROVIDED BY DEFENDANT.**

**B. AT THE TIME OF PLAINTIFF'S ACCIDENT, THE SUBJECT PRESS BRAKE WAS BEING USED IN AN INTENDED AND/OR FORESEEABLE MANNER.**

**C.  THE PRESS BRAKE AS MANUFACTURED BY DEFENDANT REACHED PLAINTIFF WITHOUT SUBSTANTIAL CHANGE OR ALTERATION.**

**D.  THE PRESS BRAKE AND ACCOMPANYING FOOT SWITCH LACKED AN ELEMENT NECESSARY TO MAKE THE PRODUCT SAFE FOR USE.**

## III.  LEGAL ARGUMENT:

To recover under Section 402A of the Restatement (Second) of Torts, Pennsylvania Courts have consistently held that a plaintiff must establish the following:

(1)  That the product was defective,

(2)    That the defect was a proximate cause
of the plaintiff's injury,

(3)    That the defect causing the injury
existed at the time the product left the
seller's hands.

Davis v. Berwind Corp., 690 A.2d 186 (Pa. 1997), citing Webb v.
Zern, 220 A.2d 853 (Pa. 1966).

The manufacturer of a product is liable for injuries caused
to the plaintiff by a defect in the product which existed when
the product left possession of the manufacturer. Berkebile v.
Brantly Helicopter Corp., 337 A.2d 893 (Pa. 1975). If the
product lacked any element necessary to make it safe for use or
contained any condition that made it unsafe for use at the time
the product left the Defendant's control, then the product is
defective and Defendant is liable for all harm caused by such
defect. Id.

   **A.    THE PRODUCT AT ISSUE WAS MANUFACTURED, DISTRIBUTED,
SOLD AND/OR PROVIDED BY DEFENDANT.**

To succeed on a product liability cause of action, a
plaintiff must show that his/her injuries were caused by a
product of a particular manufacturer or supplier. Wilson v.
A.P. Green Industries, Inc., 807 A.2d 922, 924 (Pa. Super.
2002). It is well established that the manufacturer or seller
of a product is responsible for injury caused by his defective
product. Berkebile, 337 A.2d 898.

2

**i.    The subject press brake was originally manufactured and sold by Defendant Heim, L.P.**

Defendant, Heim, L.P., has admitted that it manufactured the subject press brake involved in Plaintiff's accident of September 25, 2002.  (Plaintiff's Statement of Material Facts No. 2).

**ii.   The subject foot switch and foot control involved in Plaintiff's accident of September 25, 2002 was the same type and model that was originally supplied as standard equipment with the subject press brake at the time of its original sale and/or distribution.**

A Linemaster ungated foot switch was originally supplied by Heim as standard equipment on Defendant's press brake at the time of its initial sale and/or distribution.  (Nos. 21, 40). This was the same type and model of foot switch which was involved in Plaintiff's accident of September 25, 2002.  (Nos. 22, 40, 46).  Moreover, photographs obtained and taken after Plaintiff's accident verify the ungated Linemaster foot switch that originally accompanied the subject press brake.  (Nos. 26, 46, 47).

Although Plaintiff's expert was unable to say that it was the exact individual foot switch which originally accompanied the press brake at the time of its sale in 1978, the foot control depicted in photograph 29 was "exactly the kind" that he had seen on that press brake (Heim 70-6) in the past.  (No. 47). The foot switch involved in Plaintiff's accident of September

3

25, 2002 was the same type and model of foot switch that originally accompanied the press brake at the time of its original sale and distribution in 1978. (No. 46) In their interrogatory answers, Defendant has acknowledged that it is unable to determine what foot switch originally accompanied the subject press brake. (Appendix Exhibits V, X). Heim is unable to produce any documentation or written record of what foot switch originally accompanied the subject press brake to dispute Plaintiff's expert's testimony. (Id.)

Additionally, the Plaintiff made the following observations in her testimony regarding the foot pedal/foot switch in use at the time of her accident:

- The accident foot switch is identified in the photographs taken by counsel. (No. 33).

- The foot switch used by Plaintiff on the date of the accident was enclosed. (No. 34)

- The accident foot switch did not have a gate. (No. 35).

Defendant's corporate designee, Anthony Robert Mase, Jr. also described the foot pedal as follows:

- The accident foot pedal did appear to be the general type of foot pedal supplied with the machine. (No. 37).

- The accident foot pedal was orange. (No. 38).

- The original foot pedal (provided with the press brake in 1978) was orange. (No. 39).

4

Viewing all facts in favor of the non-moving party (here, Plaintiff), the Court must determine that there are facts sufficient for a jury to conclude that the foot switch in use at the time of Plaintiff's accident was the same type and model which originally was supplied with the subject press brake at the time of its initial sale and distribution. (See also Nos. 21-48). Defendant is unable to counter or refute this with any evidence, testimony or documentation.

**B.  THE PRESS BRAKE AS MANUFACTURED BY DEFENDANT REACHED PLAINTIFF WITHOUT SUBSTANTIAL CHANGE OR ALTERATION.** (Nos. 80-88)

In order for strict products liability to attach, the allegedly defective product must be expected to reach the consumer without substantial change, and must in fact do so. D'Antona v. Hampton Grinding Wheel Co., Inc., 310 A.2d 307, 310 (Pa. Super. 1973). This issue is governed by Section 402A of the Restatement (Second) of Torts, which was adopted in by the Pennsylvania Supreme Court in Webb v. Zern, supra.; Capasso v. Minster Machine Co., 532 F.2d 952 (3d Cir. 1976). Section 402(A) states, in part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if . . . (b) it is expected to and does reach the user or

5

> consumer without substantial change in the
> condition in which it is sold…".

Id. at 954.

Evidence developed in discovery establishes that the foot pedal Plaintiff was using at the time of her accident was the same type and model of foot pedal originally supplied with the press brake. (Nos. 21, 40, 46, 47). Accepting this as true, summary judgment is improper. However, even if the foot pedal was a replacement pedal, this was not a substantial change and Defendant cannot escape liability.

The incorporation of a component part is not a substantial change. Greco v. Bucciconi Engineering Co., 283 F.Supp. 978, 984 (WD Pa. 1967). Where there is no change in the component parts themselves, strict liability attaches. Id., citing Restatement (Second) of Torts, comment q. Furthermore, the Restatement indicates that "where the change does not affect the defective portion of the product, strict liability of the manufacturer continues." Id., citing Restatement (Second) of Torts, comment p.

Plaintiff alleges a specific design defect, and the change of the pedal (as a replacement part) does not affect that design. Without a gate on the foot pedal, whether the original or component part, the press brake was unsafe and therefore defective. (Nos. 49, 79).

6

The chain of causation is broken only when a material change in the product occurs such that the plaintiff would have escaped injury had the product remained unchanged. <u>Fisher v. Walsh Parts & Service Co.,</u> 296 F. Supp. 2d 551, 563 (E.D. Pa. 2003). The test of whether an alteration is a substantial or unexpected change is whether the manufacturer could have reasonable expected or foreseen such an alteration. <u>D'Antona</u>, 310 A.2d at 310; <u>Capasso</u>, 532 F.2d at 955. Here, Defendant knew and/or intended that either a Model 532-SWH Linemaster foot switch or a Linemaster Model 511-B foot switch would be used with its press brake. (Appendix Exhibit O). Defendant's expert even went so far as to testify that he would not expect a foot control pedal to last 30 years; it may need to be replaced. (Appendix Exhibit J). As such, it was foreseeable that Plaintiff would use an ungated foot switch with the subject press brake. Whether an original or replacement foot control was being used, the defect was the same. The foot switch did not have a gate and was defective.

In the instant case, Defendant obviously contemplated using the press brake with the ungated foot pedal, since it was provided with the press brake. (No. 80, 83). The press was designed for foot control operation. (No. 81). It is undisputed by both parties that an ungated foot pedal came with

7

the press.  Further, foot pedals of the same type and model used by Tina Lindquist were provided as standard parts with Defendant's press brakes in 1978 when such machines were sold new. (No. 40).

Defendant Heim plainly expected at the time of sale that an ungated foot control of the type and model used by Plaintiff would be utilized with the press brake in question.  Moreover, Heim provided for this same type and model of foot switch as an approved replacement part.  Based on this evidence, it is clear that Defendant not only expected but intended the foot switch used by Plaintiff to be attached and used with the subject press brake.

### C.  AT THE TIME OF PLAINTIFF'S ACCIDENT, THE SUBJECT PRESS BRAKE WAS BEING USED IN AN INTENDED AND/OR FORESEEABLE MANNER. (Nos. 89-108).

In a strict products liability action, a plaintiff must show that a product is "unreasonably dangerous to intended users for its intended use." Parks v. Alliedsignal, Inc., 113 F.3d 1327, 1331 (3d cir. 1997), quoting Pacheco v. Coats Co., Inc., 26 F.3d 418, 421 (3d Cir. 1994).  All uses which are reasonably foreseeable to the seller are considered intended uses.  Parks, 113 F.3d at 1331.  Therefore, if a plaintiff's actions are foreseeable, a jury must find for the plaintiff unless it

concludes that the defect failed to play more than a negligible role in causing injury to the plaintiff. _Id_. at 1332.

In the instant case, Plaintiff's operation of the press brake without point of operation protection was plainly foreseeable. (Nos. 107, 108)  The operation of the press brake without point of operation protection is anticipated, foreseeable and known to happen.  (Id.)  Although an employer may have a responsibility to provide point of operation protection, it is commonly known that some fulfill that responsibility while others do not.  (Id.)  Additionally, point of operation protection has been known to fail and is imprecise. (Nos. 116, 117, 119).  Operators can still be injured even with proper point of operation protection on the press brake.  (_Id_.)

The Pennsylvania Supreme Court has clearly indicated that the manufacturer of a product has a responsibility to provide a non-defective product, and this responsibility cannot be avoided or delegated to another party.   "The duty to provide a non-defective product is non-delegable."  _Berkebile_, 337 A.2d at 903.  See also _Forrest v. Beloit_, 424 F.3d 344, 352 (3d Cir. 2005).

In _Heckman v. Federal Press Co._, the plaintiff's hand was injured by a power press he was operating.  587 F.2d 612, 616 (3d Cir. 1979).  A foot control and a two button system were

provided with the press, but the plaintiff was only using the
foot control at the time of injury. Id. As the plaintiff put a
piece of metal into the machine to be cut, the ram of the press
descended, amputating some of his fingers. Id. The
manufacturer argued that because the employer and the employee
did not use point-of-operation protection, it should be free
from liability. Id. In the manufacturer's view, the lack of
use of such protection shielded it from responsibility. Id.
The court disagreed, stating

> If a manufacturer fails to provide
> reasonable safety devices for a product and
> thus creates an unreasonable risk of harm to
> the user, the fact that the manufacturer may
> expect the user to provide a protective
> appliance is not sufficient to preclude
> liability.

Id.

In the case at hand, Defendant Heim, L.P. is liable
regardless whether the employer provided point of operation
protection. Even if the employer failed to provide point of
operation protection, Heim, L.P. is not relieved of its
responsibility to design a safe product, as it was foreseeable
that Plaintiff would use the machine without such protection and
that injury can occur to operators even with point of operation
protection utilized. (Nos. 107, 116-119). The product was

10

defective when it left the Defendant's control, and caused injury to Plaintiff. Summary judgment is improper.

   **D.  THE PRESS BRAKE AND ACCOMPANYING FOOT SWITCH LACKED AN ELEMENT NECESSARY TO MAKE THE PRODUCT SAFE FOR USE.** (Nos. 49-79).

   Causation involves two separate and distinct concepts. Cause in fact and legal (or proximate) cause. <u>Summers v. Giant Food Stores, Inc.</u>, 743 A.2d 498 (Pa. Super. 1999, supporting citations omitted).

   Proximate cause exists where a defendant's conduct is a substantial factor in bringing about plaintiff's harm. <u>Cmwlth of Pennsylvania, Dept. of General Services v. United States Mineral Product Company</u>, 809 A.2d 1000, (Pa.Cmwlth. 2002); citing <u>Gutteridge v. A.P. Green Services, Inc.</u>, 804 A.2d 643 (Pa. Super 2002). In fact, Pennsylvania Courts have held that

> Under the law of Pennsylvania, a cause can be found to be substantial so long as it is significant or recognizable; it need not be quantified as considerable or large.

<u>Cmwlth, Dept. of General Services v. United States Mineral Products Co.</u>, 809 A.2d at 1011; citing <u>Jeter v. Owens-Corning Fiberglas Corp.</u>, 716 A.2d 633 (Pa. Super 1998).

   Additionally, an event or injury may have "more than one proximate cause." <u>Weider v. Towmotor Corp.</u>, 568 F. Supp. 1058 (D.C. Pa. 1983), citing <u>David v. Broadway Maintenance Corp.</u>, 451 F. Supp. 877 (ED Pa. 1978).

Moreover, causation is a question of fact to be determined by the ultimate fact finder, the jury. <u>Ford v. Jeffries</u>, 379 A.2d 111 (Pa. 1977). Here, Plaintiff has presented sufficient evidence for a jury to determine causation. The press brake supplied with an ungated foot switch was defective and caused injury to Plaintiff. (Nos. 79, 129–139).

The testimony unequivocally indicates that a gated foot switch would have prevented accidental activation of the press brake and, therefore, would have prevented Plaintiff's accident and injuries. (Nos. 140–146). An ungated foot switch accompanying a general purpose press brake (such as the Heim 70-6 which Plaintiff was using at the time of her accident) makes the subject press brake defective. (Nos. 49, 50, 71, 73, 79). The failure by Defendant to provide a gated foot control and foot switch allowed the inadvertent activation of the subject press brake and caused injury to Plaintiff. (Nos. 129–139).

An ungated foot pedal/foot switch associated with Defendant's general purpose press brake was not safe. (Nos. 49, 50, 56, 58, 71, 73). A foot switch with a safety gate would eliminate any accidental activation by the operator such as Plaintiff. (Nos. 140–146).

In fact, the Defendant's expert, William Switalski, testified similarly regarding inadvertent activation.

12

Defendant's expert testified that industry standards <u>mandate</u> that a foot pedal attached to a press brake shall be protected against inadvertent activation.  (Nos. 142, 143, 51, Appendix Exhibit L).  The failure to so caused injury to Plaintiff.  The press brake, as designed, sold, manufactured and/or placed into the stream of commerce by Defendant was defective because it did not have a gated foot switch.  A gated foot switch would have protected against inadvertent activation, thereby precluding Plaintiff's accident and injuries.  As such, Plaintiff has presented sufficient facts for a jury to conclude that the product was defective.

<u>IV.  CONCLUSION:</u>

Plaintiff has set forth sufficient facts herein, as developed through the discovery and evidence to date, to meet her burden.  The Defendant manufactured the subject press brake.  The foot switch utilized by Plaintiff at the time of her injury was the same type and model which was originally was supplied with the subject press brake.  The product reached Plaintiff without substantial change or alteration.  The product failed to have an element necessary to make it safe; a gated foot switch which would have prevented the accidental activation and prevented Plaintiff's injuries.  The failure of the manufacturer to provide and/or supply a gated foot switch with its product

13

renders it defective.  As a result of this defect, Plaintiff was injured.

In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Potter v. Herman, 762 A.2d 1116 (Pa. Super. 2000).  Summary judgment is proper only when no issue of material fact exists. Id. at 1117.  The moving party has the burden of proving the nonexistence of any genuine issue of material fact.  Heath Lampeter Township v. County of Lancaster, 744 A.2d 359 (Pa.Cmwlth. 2000).  A material fact is one that directly affects the outcome of the case.  Kuney v. Benjamin Franklin Clinic, 751 A.2d 662 (Pa. Super. 2000).

Here, Plaintiff has sufficiently set forth facts to enable a jury to determine that the Defendant is liable for its defective product.  Viewing the record in the light most favorable to Plaintiff, there are genuine issues of material fact present which preclude a determination of summary judgment. As such, summary judgment must be denied.

                              DALLAS W. HARTMAN, P.C.

                              /s/ Dallas W. Hartman
                              Attorneys for Plaintiff
                              Dallas W. Hartman, Esq.
                              Attorney I.D. No. 41649

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the within document was served on the party below in the following manner:


Paul R. Robinson, Esquire
MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
U.S. Steel Tower, Suite 4850
Pittsburgh, PA  15219

Attorney for DEFENDANT



DALLAS W. HARTMAN, P.C.

DATE:  05/22/06

/s/ Dallas W. Hartman
Attorneys for Plaintiff

Dallas W. Hartman, Esq.
Attorney I.D. No. 41649

Raymond J. Conlon, Esq.
Attorney I.D. No. 49495

2815 Wilmington Road
New Castle, PA  16105
(724) 652-4081

15