UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST             : NO. 04-249E
        Plaintiff,     :
                           :
                           : JUDGE SEAN MCLAUGHLIN/
                           : MAGISTRATE JUDGE SUSAN
                           : PARADISE BAXTER
HEIM, L.P.                :
        Defendant.     :

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

### Identity of the Product

1. Defendant, Heim, L.P. manufactured the subject press brake involved in Plaintiff's accident of September 25, 2002. (Affidavit of Ralph Barnett, Appendix Exhibit A).

2. Defendant, Heim, L.P. admits to manufacturing the subject press brake involved in Plaintiff's accident of September 25, 2002. (Defendant's Response to Plaintiff's Request for Admissions-Second Set, Request Number 1, Appendix Exhibit AA).

3. Heim, L.P. supplied a foot control with the press brake involved in Plaintiff's accident. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 79).

4. Heim's manual indicates that a foot control is supplied as standard equipment with the press brake. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 81).

5. Heim's manual does not indicate that the purchaser has the right or opportunity to select a foot control for the press brake. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 81).

6. A foot switch was provided with the machine (the subject press brake) in 1978. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 215).

7. The press brake would be used for a wide breadth of uses. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 89).

8. The proper selection of a foot switch depends on the type and purpose of the machine. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 38-41).

9. The manufacturer of the foot switch is not responsible for selecting the right foot switch for a piece of machinery. (Ralph Barnett Deposition, Appendix Exhibit B, p. 38).

10.  It is the responsibility of the machine manufacturer (ie. press brake manufacturer) to select from a menu of foot switches, foot controls, foot pedals or foot treadles which make sense to utilize on their machines. (Ralph Barnett Deposition, Appendix Exhibit B, p. 38).

11.  In order to determine what proper foot control to provide with a press brake, the manufacturer bases the decision on prior experience with press brakes.  (William Switalski Deposition, Appendix Exhibit L, pp. 106-109).

12.  With regard to a press brake, generally the more information the machine tool manufacturer has, the better position they are in to select the best foot control.  (William Switalski Deposition, Appendix Exhibit L, p. 105).

13.  OSHA does not govern how Heim designs its products (press brake) in the foot selection process. (William Switalski Deposition, Appendix Exhibit L, p. 119).

14.  Heim would be the expert in selecting a foot pedal that would be standard equipment with its press brake.  (William Switalski Deposition, Appendix Exhibit L, p. 185).

15.  As the manufacturer of a general purpose machine, Heim is responsible for sending and providing the appropriate foot switch control.  (Ralph Barnett Deposition, Appendix Exhibit B, pp. 119-120).

16.  The manufacturer of the press brake is in a better position to know the various anticipated uses of the foot control on multimode machinery. (Ralph Barnett Deposition, Appendix Exhibit B, p. 121).

17.  The manufacturer of a press brake should be in a better position than the customer for deciding the best selection of foot control.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 105).

18.  The manufacturer of the press brake (Heim) should make the decision as to what foot switch to accompany the machine. (Ralph Barnett Deposition, Appendix Exhibit B, p. 105).

19.  The manual (for the press brake) should show what is the proper foot switch for the machine.  It does not. (Ralph Barnett Deposition, Appendix Exhibit B, p. 98).

20.  The goal of manufacturers of press brakes is to minimize accidental activation.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 245).

**Identity of the Foot Switch:  An Ungated Linemaster Foot Switch**

21.   A Linemaster ungated foot switch originally accompanied and/or was provided with the subject Press Brake at the time of its initial sale and/or distribution by Heim, L.P. (Affidavit of Ralph Barnett, Appendix Exhibit A).

22.   A Linemaster ungated foot switch was the same type and model of foot switch that was involved in Plaintiff's accident of September 25, 2002.   (Affidavit of Ralph Barnett, Appendix Exhibit A).

23.   Linemaster was one of Heim's principal suppliers. (Deposition of Ralph Barnett, Appendix Exhibit B, p. 86).

24.   Heim's press brakes used the Linemaster foot switches. (Ralph Barnett Deposition, Appendix Exhibit B, p. 86).

25.   The Linemaster foot switch with a kick plate was available at the time of the original sale of the subject press brake in 1978.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 86).

26.   Photographs taken after Plaintiff's accident are consistent and illustrate a Linemaster foot switch which is not constructed with a safety gate.  (Affidavit of Ralph Barnett, Appendix Exhibit A).

27.   Kevin Messinger, maintenance tech, at Corry Manufacturing, indicated that the foot switch involved in Plaintiff's accident was the foot switch that originally accompanied the subject press brake at the time of its delivery to Corry Manufacturing.  (Kevin Messinger Deposition, Appendix Exhibit C, p. 25-26).

28.   The foot switch involved in Plaintiff's accident was only used on the Heim press brake.  (Kevin Messinger Deposition, Appendix Exhibit C, p. 27).

29.   The Heim press brake was delivered to Corry Manufacturing with only the foot switch attached.  (Gary Merkle Deposition, Appendix Exhibit D, p. 10).

30.   The subject foot switch involved in Plaintiff's accident was "an orange foot pedal".  (Joel Nichols Deposition, Appendix Exhibit F, p. 89).

31.   Foot pedals and foot switches on other machines may have been yellow, but the foot switch on the Heim press brake involved in Plaintiff's accident was orange.  (Joel Nichols Deposition, Appendix Exhibit F, pp. 89-90).

32.   The foot switch involved in Plaintiff's accident, the same foot switch later removed from the Heim press brake, was

orange in color.  (Dave Phillips Deposition, Appendix Exhibit G, p. 92).

33.  Plaintiff identified the accident foot switch in the photographs taken by counsel.  (Tina Lindquist Deposition, Appendix Exhibit H, p. 89).

34.  The foot switch used by the Plaintiff on the date of her accident was enclosed.  (Tina Lindquist Deposition, Appendex Exhibit H, p. 89).

35.  The accident foot switch did not have a gate.  (Tina Lindquist Deposition, Appendix Exhibit H, pp. 143-144).

36.  The foot pedal shown in photos three (3), twenty-nine (29), thirty-one (31) and thirty-two (32) are accurate photos of the foot pedal that the Plaintiff was using at the time of her accident of September 25, 2002.  (Affidavit of Tina Lindquist Ossa, Appendix Exhibit S).

37.  The accident foot pedal appeared to be the general type of foot pedal supplied with the machine.  (Anthony Mase Deposition, Appendix Exhibit I, p. 163).

38.  The accident foot pedal was orange.  (Anthony Mase Deposition, Appendix Exhibit I, p. 163).

39.  The original foot pedal supplied with the press brake was orange.  (Anthony Mase Deposition, Appendix Exhibit I, p. 152 and 164).

40.  An ungated Linemaster foot switch was the same type and model of foot switch shipped by Heim, L.P. (at the time of the press brake's initial sale and/or distribution) and used by the Plaintiff at the time of her accident of September 25, 2002. (Affidavit of Ralph Barnett, Appendix Exhibit A).

41.  The foot switch used at the time of Plaintiff's accident has a locking plate in the back.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 52).

42.  Only Linemaster has a locking plate, also known as a kick plate.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 54)

43.  The locking plate is an enhanced safety feature. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 54-55).

44.  Plaintiff's expert is able to determine that the subject foot switch (involved in Plaintiff's accident of September 25, 2002) had a kick plate/locking plate by visually

observing in the photographs. (Ralph Barnett Deposition, Appendix Exhibit B, p. 57).

45. Looking at photographs 29-30 of Barnett B, Plaintiff's expert concluded the foot switch was a Linemaster foot switch (manufactured by Linemaster). (Ralph Barnett Deposition, Appendix Exhibit B, pp. 73-74).

46. The Linemaster foot switch shown in photographs 29-30 of Barnett B were the same type and model of foot switch which would have accompanied the subject press brake. (Ralph Barnett Deposition, Appendix Exhibit B, p. 77).

47. The foot switch depicted in photographs 29-30 of Barnett B was exactly the kind of foot switch which accompanied the press brake manufactured by Heim. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 84-85).


48. The photographs depicting the subject foot switch (involved in Plaintiff's accident of September 25, 2002) show a Linemaster foot switch. (Ralph Barnett Deposition, Appendix Exhibit B, p. 86).

### The Defect: Failure to have a gated Foot Switch to prevent accidental activation

49. An ungated foot switch provided with a general purpose press brake makes the press brake defective. (Affidavit of Ralph Barnett, Appendix Exhibit A).

50. On a general purpose press brake, it is never safe to have an ungated foot pedal associated with or accompanying the press brake. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 233-234).

51. If a foot pedal is attached to a press brake, the mandate is that it shall be protected against inadvertent activation. (William Switalski Deposition, Appendix Exhibit L, p. 84).

52. A foot pedal and a foot control attached to a press brake must be protected from inadvertent activation. (William Switalski Deposition, Appendix Exhibit L, p. 85).

53. Industry standards were to prevent accidental activation on the foot pedal. (William Switalski Deposition, Appendix Exhibit L, pp. 95-97).

54. The object for the manufacturer is to inhibit accidental activation (on a press brake). (Ralph Barnett Deposition, Appendix Exhibit B, pp. 159-160).

55. Regardless of the press brake's setup, it is defective without a gate on the foot switch. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 168-169).

56. An ungated foot control in use with a press brake is always defective. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 176-177).

57. Minimizing the risk of accidental activation is the responsibility of the designer of the press brake. (Ralph Barnett Deposition, Appendix Exhibit B, p. 108)

58. On a general purpose machine (press brake), the manufacturer should try to minimize the probability of accidental activation. (Ralph Barnett Deposition, Appendix Exhibit B, p. 108).

59. Unintended actuation of the foot control and foot switch is a recognized hazard. (William Switalski Deposition, Appendix Exhibit L, pp. 134-135).

60. The unintended and/or accidental activation of a machine (press brake) was a known hazard. (William Switalski Deposition, Appendix Exhibit L, pp. 136-137).

61. At the time of the Plaintiff's accident, a Linemaster 511 foot switch was on the Heim press brake. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 7).

62. A Linemaster 511 foot switch is an anti-trip type foot switch that has a toe release mechanism. The purpose of this toe latch is to reduce or minimize the possibility and/or probability of inadvertent activation of the foot switch. (Dennis Cloutier Deposition, Appendix Exhibit K, p.8).

63. Other manufacturers of (press brakes) provided gated foot controls with their press brakes. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 35).

64. Other manufacturers of press brakes provided a gated foot control with their press brakes between 1971 and 1982. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 36).

65. Manufacturers such as Cincinnati, Inc. and Chicago provided gated foot controls with their press brakes between 1971 and 1982. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 36).

6

66. Manufacturers such as Pacific and Cincinnati both still include gated foot controls with their press brakes today. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 37).

67. On some Cincinnati machines, the gated foot control is standard. (Dennis Cloutier Deposition, Appendix Exhibit, K, p. 37).

68. Cincinnati began the era of gated foot controls in their press brakes in 1973. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 42).

69. Defendant's expert was not aware of any increase in accidents to the operator of Cincinnati press brakes with the incorporation of the gated foot control. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 38).

70. Unintended operation of a machine is not a desirable event under any circumstance. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 61).

71. An ungated foot control is defective when utilized on any general purpose press brake. (Ralph Barnett Deposition, Appendix Exhibit B, p. 129)

72. Heim knew the subject press brake was a general purpose machine. (Ralph Barnett Deposition, Appendix Exhibit B, p. 115).

73. A foot switch for a general purpose press brake should have a locking plate and gate. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 129-130).

74. The object (of a locking plate and gate) is to inhibit accidental activation. (Ralph Barnett Deposition, Appendix Exhibit B, p. 131).

75. A foot control on the subject press brake is defective if it does not properly inhibit accidental activation. (Ralph Barnett Deposition, Appendix Exhibit B, p. 134).

76. If the foot switch does not have a gate with a lock and plate, it is defective. (Ralph Barnett Deposition, Appendix Exhibit B, p. 147).

77. On a general purpose machine, the manufacturer does not know how it will be used so it cannot put on point of operation protection devices. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 111-112).

78.  Even with proper and appropriate point of operation safety devices in place on the press brake, an ungated foot control on the Heim press brake would still be considered defective.  (Ralph Barnett Deposition, Appendix Exhibit B, pp. 128-129).

79.  The foot control used by the Plaintiff at the time of her injury was defective because it did not have a gate on the front of the foot control.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 19).

### The Defect existed at the time the press brake left the manufacturer

80.  The press brake failed to have any gated foot controls/foot switch at the time of its original sale or distribution by Defendant.  (Heim drawing A-470-D, Appendix Exhibit O)

81.  The subject press brake was originally sold with a foot switch provided.  (Assembly order and inspection sheet, Appendix Exhibit U).

82.  Defendant is unable to state what foot switch was originally provided with the subject press brake.  (Answers to Admissions/Interrogatories, Appendix Exhibit V).

83.  Business records from Defendant regarding the foot switch provided with the subject press brake show an ungated foot switch. (Heim drawing A-470-D, Appendix Exhibit O).

84.  A foot switch with a front gate was available in 1973. (William Switalski Deposition, Appendix Exhibit L, p. 98).

85.  The front gate was available on a Linemaster foot control in 1977 and 1978.  (William Switalski Deposition, Appendix Exhibit L, pp. 98-99).

86.  The Linemaster foot switch shown in photographs 29-30 of Barnett B were the same type and model of foot switch which accompanied the subject press brake. (Ralph Barnett Deposition, Appendix Exhibit B, p. 77)

87.  The foot switch depicted in photograph 29-30 of Barnett B was exactly the kind of foot switch which accompanied the foot switch manufactured by Heim.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 77).

88.  The Line master foot switch with a kick plate was available at the time of the original sale of the subject press

brake in 1978.   (Ralph Barnett Deposition, Appendix Exhibit B, p. 86).

## Plaintiff's use of the product was foreseeable

89.  Plaintiff was using the subject press brake at the Corry Manufacturing facility for purposes for which the subject press brake was intended and foreseeable.  (Affidavit of Ralph Barnett, Appendix Exhibit A,).

90.  Operating the subject press brake with the operator in the seated position was foreseeable. (Affidavit of Ralph Barnett, Appendix Exhibit A,).

91.  The electric foot control/foot switch works best when the operator is in a sitting position. (William Switalski Deposition, Appendix Exhibit L, P. 139)

92.  There was no fault with the Plaintiff operating the press brake at the time of her injury in a seated position with a foot control by her side.   (William Switalski Deposition, Appendix Exhibit L, p. 140).

93.  The electric foot control involved the Plaintiff's accident can be utilized by standing as well as a seated position by the operator.  (William Switalski Deposition, Appendix Exhibit L, p. 141).

94.  Plaintiff was either seated or leaning against her seat at the time of the accident.  (Ralph Barnett Deposition, Appendix Exhibit B, p. 179).

## It was foreseeable that Plaintiff's hands would be within the die area

95.  It is reasonably foreseeable to manufacturers of press brakes that loading and unloading of work pieces on a general purpose press brake (such as the press brake involved in Plaintiff's accident), will be done by hand. (Affidavit of Ralph Barnett, Appendix Exhibit A).

96.  It is foreseeable that under certain circumstances operators will put their hands in the die area.  (Gary Hutter Deposition, Appendix Exhibit J, p. 149).

97.  Operators can interact with machines (ie. press brakes) where they have their hands in the die area.  (Dennis Cloutier Deposition, Appendix Exhibit K, p.69).

98.  The press brake industry understands that operators will work with their hands in the die area of press brakes. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 70).

99.  Point of operation injuries occur on press brakes. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 222).

100. Point of operation injuries occur most typically when a body part is placed in the die area.  (Dennis Cloutier Deposition, Appendix Exhibit K, p. 222).

101. Industry-wide it is known that operators of press brakes will have injuries to their hands and fingers at the point of operation while operating press brakes.  (Dennis Cloutier Deposition, Appendix Exhibit K, p. 75).

102. Most point of operation injuries occur when an operator places his or her hands or fingers into the die area.  (Dennis Cloutier Deposition, Appendix Exhibit K, p. 223).

103. Forming the part (as done by Plaintiff at the time of her injury) was a use of the press brake that was accepted. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 146).

104. The final forming of the piece on the mandrel, having the press interface with the piece to make a complete cylinder, is something that Defendant's expert would expect a press brake to be utilized in doing.  (Dennis Cloutier Deposition, Appendix Exhibit K, p. 147).

105. It was necessary for the Plaintiff to put her hands in between the upper and lower die to fit the part around the mandrel.  (Dennis Cloutier Deposition, Appendix Exhibit K, p. 148).

106. With regards to press brakes, it is foreseeable that operators will have their hands in the die area or point of operation area.  (William Switalski Deposition, Appendix Exhibit L, p. 138).

## It is foreseeable that press brakes will be operated without point of operation protection

107. It is reasonably foreseeable to manufacturers of press brakes that press brakes will be operated and maintained without the use of proper point of operation protection.  (Affidavit of Ralph Barnett, Appendix Exhibit A).

108. Defendant's own expert investigated incidents involving point of operation injuries by press brake operators where there was no point of operation protection in place (on the press brake machine). (Dennis Cloutier Deposition, Appendix Exhibit K, p. 76).

### The hands out of die (HOOD) method does not always work or protect operators.

109. HOOD is a recommended practice that is not a completely adequate way of safeguarding most machines and most operations. (Gary Hutter Deposition, Appendix Exhibit J, p. 186)

110. HOOD is impractical at times. (Gary Hutter Deposition, Appendix Exhibit J, p. 188).

111. The HOOD requirements are directed to employers as it relates to setting up the machine and operation. (William Switalski Deposition, Appendix Exhibit L, p. 70).

112. Only the employer is in a position to carry out the HOOD requirements and instructions. (William Switalski Deposition, Appendix Exhibit L, p. 71)

113. With any safety device, there is no guarantee that injury will not occur. (William Switalski Deposition, Appendix Exhibit L, p. 170).

114. The HOOD method and philosophy is not a good or beneficial policy. The disadvantages of HOOD completely out-weigh the advantages. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 153-154).

115. There are foreseeable situations where HOOD has been applied to the use of a power press brake but the operator still becomes injured at the point of operation. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 68).

116. A properly guarded machine can still cause injuries to individuals in certain circumstances. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 194).

117. Personnel could still be injured on a properly guarded machine at certain times. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 194).

118. Operators have been injured at the point of operation while operating a press brake where there has been a HOOD procedure in place. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 77).

119. Individuals can be injured when there are proper point of operation protections on press brakes. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 196).

**Plaintiff was not "riding the pedal" at the time of her injury**

120. Prior to the accident, Plaintiff did not have her foot inside the foot switch. She had moved it away from the foot switch after completing the previous part. (Tina Lindquist Deposition, Appendix Exhibit H, p. 140).

121. Plaintiff's foot was not resting on the pedal, it was away from it. (Tina Lindquist Deposition, Appendix Exhibit H, p. 142).

122. When performing her job on the date of the accident, Plaintiff would completely remove her foot from the foot control after each cycle of the machine. (Affidavit of Tina Lindquist, Appendix Exhibit S).

123. Plaintiff was not riding the pedal at the time of her accident. (Ralph Barnett Deposition, Appendix Exhibit B, p. 52).

124. Prior to her injury, Plaintiff was not riding the pedal. She had taken her foot out of the foot control. (Ralph Barnett Deposition, Appendix Exhibit B, p. 180).

125. Plaintiff's foot was not in the pedal at all prior to the inadvertent activation of the press brake. (Ralph Barnett Deposition, Appendix Exhibit B. P. 210).

126. Plaintiff's foot moved forward to inadvertently activate the press brake. Prior to that, her foot was located out side of the unit. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 235-236).

127. Defendant's expert agrees that if Plaintiff's foot was outside of the foot pedal prior to the accident and inadvertently went into the foot pedal and activated the press brake, she would not have been riding the foot control. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 168).

128. If Plaintiff's foot was outside the foot control before she began forming the part on the press brake, and her foot inadvertently activated the foot control, there would be no indication that Plaintiff was riding the pedal prior to activation. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 173).

**Causation: Defendant's press brake had an ungated foot switch which allowed accidental activation causing Plaintiff's injury**

12

129. Without a gate on the foot switch, an inadvertent activation of the press brake can occur. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 244-245).

130. The failure of Heim to provide a gated foot control and foot switch caused injury to Plaintiff and rendered the press brake defective. (Affidavit of Ralph Barnett, Appendix Exhibit A).

131. Plaintiff inadvertently activated the foot switch and foot brake. She did not intend to activate the press brake. It was involuntary, not voluntary. (Ralph Barnett Deposition, Appendix Exhibit B, pp. 205-209).

132. Tina did not intend to activate the press brake. (William Switalski Deposition, Appendix Exhibit L, p. 175).

133. There was nothing mechanically wrong with regard to the press brake. (William Switalski Deposition, Appendix Exhibit L, p. 179).

134. The activation of the press brake by the foot pedal caused the accident. (William Switalski Deposition, Appendix Exhibit L, p. 179).

135. The only way the press brake would have cycled is by activation of the foot switch. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 115).

136. This was an inadvertent activation of the foot switch. (Dennis Coutier Deposition, Appendix Exhibit K, p. 154).

137. A gate is intended to prevent unintended activation of a foot control. (William Switalski Deposition, Appendix Exhibit K, p. 176.)

138. Inadvertent activation can occur as a result of someone's foot going from outside the foot control inadvertently activating the foot pedal going into the foot control. (Dennis Cloutier Deposition, Appendix Exhibit L, p. 156).

139. If Plaintiff had not inadvertently operated the foot control, she would have not sustained the injuries she sustained. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 199).

**A gated foot switch would have prevented the accidental activation of the press brake and prevented injury to the Plaintiff.**

140. The intended function of a gate on a foot control is to minimize inadvertent activation. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 202).

141. The gate on a foot switch is in place when the operator is not running the pedal. It works to inhibit inadvertent activation of the foot control. (Dennis Cloutier Deposition, Appendix Exhibit K, p. 192).

142. A foot switch with a toe latch or front gate and cover to protect the operator from stepping onto it would be acceptable by industry standards. (William Switalski Deposition, Appendix Exhibit L, pp. 66-67).

143. The benefit of the front gate (on a foot switch) is that it will reduce the likelihood of inadvertently stepping into a foot control. (William Switalski Deposition, Appendeix Exhibit L, p. 169).

144. The Linemaster foot switch with the locking plate gate in front eliminates accidental activation and reduces the likelihood of riding the pedal. (Ralph Barnett Deposition, Appendix Exhibit B, p. 141-142).

145. If Plaintiff's foot was outside the foot control before activation, if there was a gate on the foot control and the gate served its purpose, it would prevent or inhibit inadvertent activation and Plaintiff's accident would not have occurred. (Dennis Cloutier Deposition Appendix Exhibit K, p. 200).

146. A foot switch with a safety gate would eliminate accidental activation and clearly would have prevented injury to the Plaintiff in this case. (Affidavit of Ralph Barnett, Appendix Exhibit A).

DALLAS W. HARTMAN, P.C.

/s/ Dallas W. Hartman
Attorney I.D. No. 41649

Raymond J. Conlon, Esq.
Attorney I.D. No. 49495

2815 Wilmington Road
New Castle, PA  16105
(724) 652-4081

14

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the within document was served on the party below in the following manner:


Paul R. Robinson, Esquire
MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
U.S. Steel Tower, Suite 4850
Pittsburgh, PA  15219

Attorney for DEFENDANT



    DALLAS W. HARTMAN, P.C.

DATE:  <u>05/22/06</u>

    <u>/s/Dallas W. Hartman</u>
    Attorneys for Plaintiff

    Dallas W. Hartman, Esq.
    Attorney I.D. No. 41649

    Raymond J. Conlon, Esq.
    Attorney I.D. No. 49495

    2815 Wilmington Road
    New Castle, PA  16105
    (724) 652-4081

15