IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA LINDQUIST,<br><br>   Plaintiff,<br><br> vs.<br><br>HEIM, L.P.,<br><br>   Defendant. | Civil Action No:  04-249E<br><br>**JUDGE SEAN J. MCLAUGHLIN /<br>MAGISTRATE JUDGE SUSAN<br>PARADISE BAXTER**<br><br>PAUL R. ROBINSON, ESQUIRE<br>PA I.D. No. 65581<br>Meyer, Darragh, Buckler, Bebenek &<br>Eck, P.L.L.C.<br>U.S. Steel Tower, Suite 4850<br>600 Grant Street<br>Pittsburgh, PA 15219<br>(412) 261-6600<br>FAX: (412) 471-2754 |

**OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

AND NOW, comes the defendant, HEIM, L.P., through its attorneys, MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C., filing its objections to Magistrate Judge Susan Paradise Baxter's December 11, 2006 Report and Recommendation, averring as follows:

  1. On May 15, 2006, Heim, L.P. ("Heim") filed its motion for summary judgment and supporting memorandum and documentation, requesting that summary judgment be entered in its favor and against the plaintiff on plaintiff's product liability claims (strict liability, negligence, and breach of warranty) which arose out of an August 31, 2004

workplace accident while the plaintiff was using a press brake which had been sold by Heim in 1978 to an uninvolved Connecticut company and purchased through an auction by plaintiff's employer, Corry Manufacturing, in 1999.

2.  On December 11, 2006, the Magistrate Judge issued a report and recommendation that Heim's motion for summary judgment be denied in all respects, including the requested dismissal of claims which the plaintiff did not oppose.

3.  Heim objects to the report and recommendation in the four respects set forth herein and incorporates by reference its motion for summary judgment ("motion"), memorandum of law in support of motion for summary judgment, statement of undisputed material facts, and appendix of exhibits ("supporting documentation") previously filed with the Court.

**A.   Product Identification**

4.  The Magistrate Judge recognized that a plaintiff must establish that the allegedly defective product (here, an ungated foot control) was distributed by the defendant before liability can exist under any theory, but erroneously found that the question of "whether the foot control switch being utilized by the plaintiff at the time of her accident is the same one that originally was attached to the press brake at the time of its sale by Heim is a question of material fact for the jury." (See report and recommendation, p. 6).

5. Heim presented undisputed evidence that the foot control used by the plaintiff at the time of her accident was <u>not</u> the foot control sold by Heim with the subject press brake in 1978, including <u>inter alia</u>:

    a. Heim's business records identify the Linemaster Model 532-SWH foot control as the model sold with "all presses" from 1974 through 1982;

    b. plaintiff's liability expert's report identified the foot control sold by Heim in 1978 as a Linemaster Model 532-SWH foot control;

    c. plaintiff's liability expert conceded in his report that the plaintiff was using a Linemaster Model 511-B foot control at the time of her accident;

    d. plaintiff's liability experts conceded the absence of any evidence to establish that the foot control plaintiff was using at the time of her accident was sold by Heim;

    e. testimony of Jan Oviatt (the Group Leader of Maintenance for Corry Manufacturing who installed the foot control on the press brake when Corry Manufacturing purchased the press brake in 1999) that the foot control the plaintiff was using did <u>not</u> appear to be the original foot control that Heim would have sold with the press brake in 1978;

(<u>See</u> supporting memorandum, pp. 3-5).

6. The evidence submitted by Heim is sufficient to establish as a matter of law that the foot control the plaintiff was using at the time of her accident was <u>not</u> sold by Heim.

7.	Notwithstanding, plaintiff and her experts all have conceded that they have no evidence which indicates that the plaintiff was using a foot control which was sold by Heim.

8.	In short, the plaintiff has not, and cannot, present any evidence to satisfy her burden of proof or establish a jury question with regard to Heim being the seller of the allegedly defective foot control.

9.	Because the plaintiff cannot meet her burden of establishing "with sufficient specificity [that Heim] distributed and manufactured the [product] at issue,"[1] no genuine issue of material fact can exist and Heim is entitled to summary judgment on each of the plaintiff's claims.

B.	**Absence of Defect**

10.	The Magistrate Judge erroneously utilized a "foreseeability" analysis in determining whether the press brake was defective, i.e., not safe for its intended use, when it allegedly left the control of Heim in 1978. (See report and recommendation, pp. 7-8).

11.	The Magistrate Judge solely relied upon the conclusion of plaintiff's expert that "it is reasonably foreseeable to manufacturers of press brakes that press brakes will

---

[1] See Payton v. Pennsylvania Sling Co., 710 A.2d 1221, 1225 (Pa. Super. 1998); DeWeese v. Anchor Hocking Consumer and Industrial Products Group, 427 Pa. Super. 47, 51-52, 628 A.2d 421, 423 (1993). See also, Lee v. Boyle-Midway Household Products, Inc., 792 F.Supp. 1001, 1006, fn4 (W.D. Pa. 1992); Stephens v. Paris Cleaners, Inc., 2005 Pa. Super. 315, 885 A.2d 59, 63 (Pa. Super. 2005).

be operated and maintained without the use of proper point of operation protection" in recommending the denial of Heim's motion on this issue. (See report and recommendation, pp. 7-8) (emphasis added).

12. The Supreme Court of Pennsylvania, however, has unequivocally held that "foreseeability" plays no role in determining the intended use of a product for purposes of establishing a defect, specifically holding:

> "there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer;" and
>
> "foreseeable misuse of a product will not support a strict liability claim."

See Pennsylvania Dept. of General Services v. U.S. Mineral Products Co., 587 Pa. 236, 898 A.2d 590, 600-01 (2006) (emphasis added).[2]

13. Plaintiff's expert testified that the foot control the plaintiff was using to operate the press brake only became defective when the plaintiff's employer, which purchased the press brake in 1999, did not install the point of operation safety device which the employer was mandated by OSHA to install. There is no expert testimony that the foot control was defective when it left the control of Heim at the time of its sale in 1978, and plaintiff's expert

---

[2] Id. (citing Phillips v. Cricket Lighters, 576 Pa. 644, 656-57, 841 A.2d 1000, 1007 (2003) (plurality opinion authored by Cappy, C.J., with Castille, J., Newman, J., Saylor, J., and Eakin, J. concurring on this point); accord Id. at 674-75, 841 A.2d at 1018 (Saylor, J., concurring); Id. at 682-83, 841 A.2d at 1023 (Newman, J., concurring and dissenting)). See also, Kimco Dev. Corp. v. Michael D's Carpet Outlets, 536 Pa. 1, 7-9, 637 A.2d 603, 606-07 (1993)).

concedes the foot control would have been safe for use with a properly guarded press brake.

14.     Plaintiff's expert also acknowledged all of the following: (1) the ungated foot control would have been safe if the plaintiff's employer had installed the OSHA required point of operation safety device, such as the light curtain the employer installed on the press brake after the plaintiff's accident; (2) it would be a misuse of the press brake to operate the press brake without the required point of operation safety device; and (3) Heim had no duty to install a point of operation safety device on the press brake when it was sold, as only the employer and user can determine which point of operation safety device is appropriate for the many potential uses of the press brake.  (See supporting memorandum, p. 10; Ralph Barnett deposition, appendix Exhibit E, pp. 238, 124-25, 163-64, 190-91).

15.     Because there is no evidence that the foot control allegedly sold by Heim with its press brake in 1978 lacked any element necessary to make it safe for its intended use or possessed any element which rendered it unsafe for its intended use when sold in 1978, the foot control cannot be deemed defective and summary judgment should be entered in favor of Heim on each of the plaintiffs' claims.  (See supporting memorandum, pp. 9-12).

**C.    Causation**

16.    The Magistrate Judge erroneously found that the issue of whether the foot control caused the plaintiff's accident presents an issue of fact for the jury. (See report and recommendation, pp. 6-7).

17.    Heim's motion and supporting documents identified the absence of any evidence to suggest that a gated foot control would have prevented the plaintiff's accident, and therefore Heim should be granted summary judgment on all claims. (See motion, pp. 3-4, ¶ 7; supporting memorandum, pp. 5-8).

18.    The sole evidence cited by the Magistrate Judge to conclude that the issue of causation is a jury question was the post-deposition affidavit and unsupported conclusion of plaintiff's expert, Ralph Barnett, that a foot control switch with a safety gate would have prevented the plaintiff's injury. (See report and recommendation, p. 7).

19.    However, the Magistrate Judge did not consider any of the facts upon which the plaintiff's expert based this conclusion or the speculation which plaintiff's expert used to arrive at this post-deposition conclusion.

20.    Plaintiff's expert concedes that the existence of a gate on a foot control is irrelevant if the plaintiff's foot was located inside the housing of the foot control at the time of the accidental activation because the plaintiff's foot, by resting inside the foot control,

would already have intentionally bypassed the gate and the accidental activation therefore would occur even with a gated foot control. (See supporting memorandum, p. 5; Ralph Barnett deposition, appendix Exhibit E, pp. 213-14).

21.     Plaintiff's expert references this type of misuse of a foot control as "riding the pedal," and plaintiff's expert has acknowledged that the existence of a gate on a foot control increases the likelihood of an operator "riding the pedal" because operators attempt to avoid the more cumbersome event of opening the gate prior to each application. (See supporting memorandum, pp. 5-6, deposition of Ralph Barnett, appendix Exhibit E, pp. 136-40).

22.     Plaintiff's expert does not present any factual evidence that the plaintiff's foot was outside of the foot control and concedes speculation and involuntary contortions which plaintiff's foot would be required to make for the "absence of gate" theory to have any causal relationship to plaintiff's accident. (See supporting memorandum, pp. 5-8; Ralph Barnett deposition, appendix Exhibit E, pp. 180-83, 216, 219-20; Tina Lindquist deposition, appendix Exhibit I, pp. 152-54, 163-64).

23.     The Magistrate Judge also did not consider the plaintiff's own testimony that she has no memory of her foot accidentally entering the protective housing of the foot control. (See supporting memorandum, pp. 6-7; Tina Lindquist deposition, appendix Exhibit I, pp. 144, 152; Ralph Barnett deposition, appendix Exhibit E, pp. 180-83, 216).

24. Because the plaintiff has not established, and cannot establish, how this accident happened, and because plaintiff cannot establish that the absence of a gate bears any causal relationship to her injury, summary judgment should be granted on each of the plaintiff's claims.

### D. **Breach of Warranty**

25. The Magistrate Judge erroneously found, without any analysis, that the plaintiff's breach of warranty claims should be presented to a jury. (See report and recommendation, pp. 8-9).

26. The breach of warranty claims are barred by the applicable four-year statute of limitations which expired in 1982 (four years after the sale of the press brake in 1978). See Nationwide Insurance Co. v. General Motors Corp., 533 Pa. 425, 625 A.2d 1172 (1993). (See motion, p. 4, ¶ 9; supporting memorandum, pp. 12-13).

27. The plaintiff did not even present any opposition to the requested dismissal of the breach of warranty claims.

28. Because the undisputed evidence establishes that the press brake at issue was sold by Heim in 1978 and plaintiff's breach of warranty claims are barred by the applicable statute of limitations, summary judgment should be granted to Heim on the breach of warranty claims.

WHEREFORE, the defendant, HEIM, L.P., respectfully requests that the Court reject the report and recommendations of the Magistrate Judge and enter summary judgment in favor of Heim, L.P. on each of the plaintiff's claims.

          Respectfully submitted,

          MEYER, DARRAGH, BUCKLER,
          BEBENEK & ECK, P.L.L.C.


By: _____/s/ Paul R. Robinson_____
      PAUL R. ROBINSON, ESQUIRE
      PA I.D. No. 65581
      Attorney for defendant, Heim, L.P.

      U.S. Steel Tower, Suite 4850
      600 Grant Street
      Pittsburgh, PA 15219
      (412) 261-6600

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon all parties on the date and in the manner listed below:

|  |  |
|---|---|
| _____ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail - Return Receipt Requested |
| _____ | Hand Delivery |
| _____ | Facsimile Transmission |
| \_\_\_X\_\_\_ | Electronic Transmission |

at the following address:

>Dallas W. Hartman, Esquire
>Raymond Conlon, Esquire
>Dallas W. Hartman P.C.
>2815 Wilmington Road
>New Castle, PA 16105
>*(Counsel for Plaintiff)*

>MEYER, DARRAGH, BUCKLER,
>BEBENEK & ECK, P.L.L.C.

Date: December 28, 2006          /s/ Paul R. Robinson
                                 PAUL R. ROBINSON, ESQUIRE

P0797438.1