# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST                          )
                                        )
                        Plaintiff,      )
                                        )        C.A. No. 04-249 Erie
            v.                          )        District Judge McLaughlin
                                        )        Magistrate Judge Baxter
HEIM, L.P.,                             )
                                        )
                        Defendant.      )

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      RECOMMENDATION___

        It is respectfully recommended that the motion for summary judgment filed by

Defendant [Document # 41] be denied.

II.     REPORT

        A.      Relevant Factual and Procedural History

        This is a personal-injury suit arising out of a tragic workplace accident. On August 31,

2004, this matter was removed to this Court from the Court of Common Pleas of Erie County,

Pennsylvania, by Defendant. Plaintiff alleges that Defendant is liable for the significant

personal injuries she suffered at her place of employment while using a product manufactured by

it. Plaintiff puts forth three theories of liability: 1) strict liability; 2) negligence; and 3) breach of

express warranty and breach of implied warranties of merchantability and fitness for a particular

purpose. Document # 1, Notice of Removal, Attachment.

        There is no dispute that complete diversity among the parties exists, and that the amount

in controversy exceeds the jurisdictional limit of $75,000. See 28 U.S.C. § 1332(a)(2000). In a

diversity case such as this, a district court must apply the substantive law of the state in which it

sits. Berg Chilling Sys. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006) citing Klaxon Co. v.

1

Stentro Elec. Mfg. Co., 313 U.S. 487 (1941)

      After a lengthy period of discovery, Defendant has moved for summary judgment and Plaintiff has opposed that motion. The legal issues are ripe for disposition by this Court.

      **B.**    **The Standard of Review**

      Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

      A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

      The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance -

which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i e , depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party  Anderson, 477 U.S. at 247-249.

### C.    Count I - Strict Liability

Plaintiff's opening theory of liability is strict products liability under Pennsylvania law

#### 1.    General Principles of Strict Products Liability in Pennsylvania

Applying Pennsylvania law, a plaintiff may recover under a theory of strict liability if a product contains a defect which renders it "unreasonably dangerous" for its intended use and such product causes harm to the plaintiff.  Spino v. John S. Tilly Ladder Co., 696 A.2d 1169, 1172 (Pa.1997) citing Restatement (Second) of Torts § 402A. See also Azzarello v. Black Bros. Co., 391 A.2d 1020, 1025-26 (Pa.1970) ("[T]he phrases 'defective condition' and 'unreasonably dangerous' as used in the Restatement formulation, are terms of art invoked when strict liability is appropriate"). Pennsylvania recognizes three potential defects for which a defendant may be held strictly liable: (1) design defect; (2) manufacturing defect; and (3) failure to warn. Phillips v. Cricket Lighters, 841 A.2d 1000, 1012 n. 1 (Pa 2003). Here, Plaintiff alleges claims most

3

analogous to design defects.[1]

The Restatement (Second) of Torts Section 402A, which has been expressly adopted by the Supreme Court of the Commonwealth of Pennsylvania, [see Pennsylvania Dep't. Of General Services v. United States Mineral Products Company, 898 A.2d 590, 615 (Pa. May 25, 2006) citing Webb v. Zern, 220 A.2d 853 (Pa. 1966)] provides that:

> (1)   One who sells any product in a defective condition and reasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold
>
> (2)   The rule in subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of this product and
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller

Restatement (Second) of Torts Section 402A.

Under Pennsylvania law, "to recover under § 402A , a plaintiff must establish that the product was defective, that the defect was a proximate cause of the plaintiff's injuries, and that the defect causing the injury existed at the time the product left the seller's hands." Davis v. Berwind Corporation, 690 A.2d 186, 190 (Pa. 1997) quoting Berkebile v. Brantly Helicopter Corp., 337 A.2d 893, 899 (Pa. 1975)

## 2.   Identification of Product

---

[1] The other two defect types have not been alleged: 1) the complaint is void of any mention of a "failure to warn by Heim; and 2) there is no "manufacturing defect because there is no breakdown in the machinery or a component of the machinery" alleged. See Schindler v. Sofamor, Inc., 774 A.2d 765, 771 (Pa Super 2001) citing Ellis v. Chicago Bridge & Iron Co., 545 A.2d 906, 909 (Pa. 1988).

4

As an initial matter then, Plaintiff must be able to show that her injuries were caused by a product manufactured by this Defendant. Wilson v. A.P. Green Industries, Inc., 807 A.2d 922, 924 (Pa. Super. 2002); DeWeese v. Anchor Hocking Consumer & Industrial Products Group, 427 Pa.Super. 47, 52-53 (1993). Here, Defendant argues that Plaintiff cannot meet this burden. Summary judgment will be appropriate "when the plaintiff has failed to establish that the defendant's products were the cause of plaintiff's injury." Eckenrod, 544 A.2d 50, 52 (Pa. Super. 1988) quoting Morena v. South Hills Health System, 462 A.2d 680 (1983).

It is undisputed that the press brake machine being used by Plaintiff at the time of her accident in September of 2002 was originally sold by Defendant Heim in 1978.[2] However, Defendant has admitted only that it manufactured the **press brake machine** involved in Plaintiff's accident. Document # 48, Exhibit BB, "Defendant's Response to Plaintiff's Request for Admissions - Second Set and Interrogatories - Third Set and Request for Production of Documents - Fourth Request," Request for Admission ¶ 1. Defendant argues that summary judgment should be granted in its favor because Plaintiff has not established that the foot control switch involved in the accident in 2002 was the same one Defendant originally sold with the press brake machine in 1978. See Document # 42, page 3.[3]

According to Plaintiff's expert, the Manual and Parts Book for the press brake machine reflects that a foot control switch was originally supplied by Defendant as standard equipment on the press brake machine at the time of its initial sale. Document # 48, Exhibit K, Deposition

---

[2] In 1978, Defendant sold this press brake machine to AvcoLycoming. Plaintiff's employer, Corry Manufacturing, purchased this machine from a subsequent owner at auction in 1999.

[3] The evidence which Defendant has produced in this regard is a drawing which Defendant purports is a "business record" that "establish[es] that Linemaster Model 532-SWH foot controls were sold with all presses from 1974 through 1982." Id. A review of this document, listed as "Heim, L.P.'s 1974 Foot Control Engineering Drawing A-470-D," reveals that beginning in 1974 Defendant used Linemaster foot control switches with all presses. Document # 44, Exhibit M. Between 1974 and 1982, Linemaster 532-SWH foot controls were attached to Defendant's products, and after 1982, Linemaster B11-B4 foot controls were used. Document # 44, Exhibit M.

of Dennis Cloutier, page 81. According to Plaintiff's expert, a foot control switch was provided with this particular machine when it was sold in 1978. Id. at 215; see also Exhibit A, Affidavit of Ralph Barnett. According to Plaintiff, the foot control switch involved in the accident appeared to be the general type of foot control originally supplied with the machine. Document # 48, Exhibit I, Deposition of Anthony Mase, pages 163-164; see also Exhibit B, Deposition of Barnett, pages 77, 84-86. In his deposition, Jan Oviatt of Corry Manufacturing testified that when his employer purchased the press brake machine from auction, it included the foot control switch. Document # 48, Exhibit N, page 14. When asked if he thought the foot control switch was original to the machine, Oviatt replied that he would "be surprised if it was." Id. Even Defendant has acknowledged that it is unable to determine what foot switch model originally accompanied the subject press brake machine. Document # 48, Exhibit V, Defendant's Answers to Requests for Admissions, ¶ 9, 10; Exhibit X, Defendant's Answers to Interrogatories, ¶ 9.

The question of whether the foot control switch involved in Plaintiff's accident is the same one that was originally attached to the press brake machine at the time of the sale is disputed and is a question of material fact for the jury. Accordingly, summary judgment should be denied.

### 3.  Causation

Next, defendant argues that summary judgment should be granted in its favor because Plaintiff cannot meet the causation element in her strict liability case.

In order to strict liability to attached, Plaintiff must show that the defective product was the proximate cause of her injury. See Davis, 547 Pa. at 267. Proximate cause is defined as "a substantial contributing factor in bringing about the harm in question." Mazur v. Merck & Co., Inc., 742 F.Supp. 239, 262 (E.D. Pa. 1990) quoting VanBuskirk v. Carey Canandian Mines, Ltd., 760 F.2d 481, 492 (3d Cir. 1985). In other words, the determination of proximate cause "is nothing more than the assignment of legal responsibility for a particular injury." Id.

Our Circuit has recognized "that there is no litmus test of causation. Rather proximate causation, and hence liability, hinges on principles of responsibility, not physics." VanBuskirk

v. Carey Canandian Mines. Ltd., 760 F 2d 481, 492 (3d Cir 1985) quoting Restatement (Second) of Torts. § 431 comment a. Moreover, proximate causation is a jury determination. Ford v. Jeffries, 379 A 2d 111, 114 (Pa. 1977).

Defendant argues that "there is no evidence in this case that a gated foot control would have prevented this accident and no evidence that the absence of a gate on the foot control had any causal relationship to the Plaintiff's accident" Document # 42, page 5. However, Plaintiff's expert Ralph Barnett testifies to the contrary: he avers that a foot control switch "with a safety gate would have prevented the injury to Plaintiff in this case" Document # 48, Exhibit A, Affidavit of Ralph Barnett, ¶ 10.

Accordingly, the issue of whether the foot control switch involved in the accident was the proximate cause of Plaintiff's accident is a material issue of fact for the jury to decide. Summary judgment should be denied.


4.    **Intended Use**

Defendant also argues that summary judgment should be granted in its favor because Plaintiff was not using the product consistent with its "intended use." Document # 42, page 9.

In a strict liability action, a plaintiff must show that the product at issue was "unreasonably dangerous to intended users for its intended use." Parks v. AlliedSignal. Inc., 113 F.3d 1327, 1331 (3d Cir. 1997) All uses that are reasonably foreseeable to the seller are considered "intended uses." Id.

Defendant argues that Plaintiff's employer was responsible for installing a point of operation protection on the press brake machine and that the employer's failure to do so constitutes "unintended use." However, Plaintiff's expert testifies to the contrary: "it is reasonably foreseeable to manufacturers of press brakes that press brakes will be operated and maintained without the use of proper point of operation protection." Document # 48, Exhibit A, Affidavit of Ralph Barnett, ¶ 9. Even, Defendant's own expert acknowledges that he has investigated accidents in which no point of operation protections were provided Document # 48, Exhibit K, Deposition of Dennis Cloutier, page 76. This is a factual dispute to be resolved

7

by the jury

Accordingly, summary judgment should be denied.

### D.    Count II - Negligence

Plaintiff also advances a negligence theory of liability  Defendant moves for summary judgment on this count of the complaint.

Under Pennsylvania law in order to establish a cause of action in negligence, plaintiffs bear the burden of demonstrating that there was a duty or obligation recognized by law, breach of that duty by the defendants, a causal connection between the defendants' breach of that duty and the resulting injury, and actual loss or damage suffered by the complainants. Corrigan v. Methodist Hosp., 2002 WL 31492261, at *7 (E.D.Pa. Nov 07, 2002).

Defendant argues for summary judgment because "Plaintiff cannot establish that the foot control switch was defective when it was originally sold by Defendant." Document # 12.

The Third Circuit has explained that "under Pennsylvania law, in order for an injured party to establish a cause of action against a manufacturer based upon the latter's breach of a duty [in other words, negligence], 'the plaintiff must prove, [ .. ] that the product was defective. Oddi v. Ford Motor Company, 234 F.3d 136, 144 (3d Cir 2000).

Although Defendant argues to the contrary, Plaintiff has supported her claim with evidence that the failure to include a gated foot control switch on the press brake machine makes the product defective  Document # 48, Exhibit A, Affidavit of Ralph Barnett, and Exhibit B, Deposition of Ralph Barnett. See also Document #48, Exhibit L, Deposition of William Switalski.

Again, summary judgment is inappropriate and should be denied

### E.    Count III - Breach of Warranty

Finally, Plaintiff advances a breach of warranty claim. The Third Circuit has explained such claims as:

Both the implied warranty of merchantability and the warranty of fitness for a

8

particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose. Vlases v. Montgomery Ward & Co., 377 F.2d 846, 849 (3d Cir. 1967). In order to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S.A. § 2314(b)(3). The warranty of fitness for a particular purpose is more exacting. It requires that the seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's expertise. In that case, the goods are implicitly warranted to be fit for that particular purpose. 13 Pa.C.S.A. § 2315. **To establish a breach of either warranty, plaintiffs must show that the equipment they purchased from defendant was defective.**

Altronics of Bethlehem, Inc., v. Repco, Inc., 957 F.2d 1102 (3d Cir. 1992) (emphasis added).

Again, Defendant moves for summary judgment based on Plaintiff's failure to show that the press brake machine was defective and again this is not the case. See discussion infra.

The motion for summary judgment should be denied.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment filed by Defendant [Document # 41] be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Failure to timely file objections may constitute a waiver of any appellate rights. _____

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: December 11, 2006

9

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA LINDQUIST,<br><br>        Plaintiff,<br><br>    vs.<br><br>HEIM, L.P.,<br><br>        Defendant. | Civil Action No:  04-249E<br><br>**JUDGE SEAN J. MCLAUGHLIN /<br>MAGISTRATE JUDGE SUSAN<br>PARADISE BAXTER**<br><br>PAUL R. ROBINSON, ESQUIRE<br>PA I.D. No. 65581<br>Meyer, Darragh, Buckler, Bebenek &<br>Eck, P.L.L.C.<br>U.S. Steel Tower, Suite 4850<br>600 Grant Street<br>Pittsburgh, PA 15219<br>(412) 261-6600<br>FAX: (412) 471-2754 |

### OBJECTIONS TO MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

AND NOW, comes the defendant, HEIM, L.P., through its attorneys, MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C., filing its objections to Magistrate Judge Susan Paradise Baxter's December 11, 2006 Report and Recommendation, averring as follows:

    1.    On May 15, 2006, Heim, L.P. ("Heim") filed its motion for summary judgment and supporting memorandum and documentation, requesting that summary judgment be entered in its favor and against the plaintiff on plaintiff's product liability claims (strict liability, negligence, and breach of warranty) which arose out of an August 31, 2004

workplace accident while the plaintiff was using a press brake which had been sold by Heim in 1978 to an uninvolved Connecticut company and purchased through an auction by plaintiff's employer, Corry Manufacturing, in 1999.

2.     On December 11, 2006, the Magistrate Judge issued a report and recommendation that Heim's motion for summary judgment be denied in all respects, including the requested dismissal of claims which the plaintiff did not oppose.

3.     Heim objects to the report and recommendation in the four respects set forth herein and incorporates by reference its motion for summary judgment ("motion"), memorandum of law in support of motion for summary judgment, statement of undisputed material facts, and appendix of exhibits ("supporting documentation") previously filed with the Court.

A.     **Product Identification**

4.     The Magistrate Judge recognized that a plaintiff must establish that the allegedly defective product (here, an ungated foot control) was distributed by the defendant before liability can exist under any theory, but erroneously found that the question of "whether the foot control switch being utilized by the plaintiff at the time of her accident is the same one that originally was attached to the press brake at the time of its sale by Heim is a question of material fact for the jury." (See report and recommendation, p. 6).

2

5.     Heim presented undisputed evidence that the foot control used by the plaintiff at the time of her accident was <u>not</u> the foot control sold by Heim with the subject press brake in 1978, including <u>inter alia</u>:

    a.     Heim's business records identify the Linemaster Model 532-SWH foot control as the model sold with "all presses" from 1974 through 1982;

    b.     plaintiff's liability expert's report identified the foot control sold by Heim in 1978 as a Linemaster Model 532-SWH foot control;

    c.     plaintiff's liability expert conceded in his report that the plaintiff was using a Linemaster Model 511-B foot control at the time of her accident;

    d.     plaintiff's liability experts conceded the absence of any evidence to establish that the foot control plaintiff was using at the time of her accident was sold by Heim;

    e.     testimony of Jan Oviatt (the Group Leader of Maintenance for Corry Manufacturing who installed the foot control on the press brake when Corry Manufacturing purchased the press brake in 1999) that the foot control the plaintiff was using did <u>not</u> appear to be the original foot control that Heim would have sold with the press brake in 1978;

(<u>See</u> supporting memorandum, pp. 3-5).

6.     The evidence submitted by Heim is sufficient to establish as a matter of law that the foot control the plaintiff was using at the time of her accident was <u>not</u> sold by Heim.

7.    Notwithstanding, plaintiff and her experts all have conceded that they have no evidence which indicates that the plaintiff was using a foot control which was sold by Heim.

8.    In short, the plaintiff has not, and cannot, present any evidence to satisfy her burden of proof or establish a jury question with regard to Heim being the seller of the allegedly defective foot control.

9.    Because the plaintiff cannot meet her burden of establishing "with sufficient specificity [that Heim] distributed and manufactured the [product] at issue,"[1] no genuine issue of material fact can exist and Heim is entitled to summary judgment on each of the plaintiff's claims.

B.    **Absence of Defect**

10.    The Magistrate Judge erroneously utilized a "foreseeability" analysis in determining whether the press brake was defective, i.e., not safe for its intended use, when it allegedly left the control of Heim in 1978.  (See report and recommendation, pp. 7-8).

11.    The Magistrate Judge solely relied upon the conclusion of plaintiff's expert that "it is reasonably foreseeable to manufacturers of press brakes that press brakes will

---

[1]See Payton v. Pennsylvania Sling Co., 710 A.2d 1221, 1225 (Pa. Super 1998); DeWeese v. Anchor Hocking Consumer and Industrial Products Group, 427 Pa. Super. 47, 51-52, 628 A.2d 421, 423 (1993). See also, Lee v. Boyle-Midway Household Products, Inc., 792 F.Supp. 1001, 1006, fn4 (W D Pa 1992); Stephens v. Paris Cleaners, Inc., 2005 Pa Super 315, 885 A 2d 59, 63 (Pa. Super 2005).

be operated and maintained without the use of proper point of operation protection" in recommending the denial of Heim's motion on this issue. (See report and recommendation, pp. 7-8) (emphasis added).

12.    The Supreme Court of Pennsylvania, however, has unequivocally held that "foreseeability" plays no role in determining the intended use of a product for purposes of establishing a defect, specifically holding:

> "there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer;" and
>
> "foreseeable misuse of a product will not support a strict liability claim."

See Pennsylvania Dept. of General Services v. U.S. Mineral Products Co., 587 Pa. 236, 898 A.2d 590, 600-01 (2006) (emphasis added).[2]

13.    Plaintiff's expert testified that the foot control the plaintiff was using to operate the press brake only became defective when the plaintiff's employer, which purchased the press brake in 1999, did not install the point of operation safety device which the employer was mandated by OSHA to install. There is no expert testimony that the foot control was defective when it left the control of Heim at the time of its sale in 1978, and plaintiff's expert

---

[2] Id. (citing Phillips v. Cricket Lighters, 576 Pa. 644, 656-57, 841 A.2d 1000, 1007 (2003) (plurality opinion authored by Cappy, C.J., with Castille, J., Newman, J., Saylor, J., and Eakin, J. concurring on this point); accord Id. at 674-75, 841 A.2d at 1018 (Saylor, J., concurring); Id. at 682-83, 841 A.2d at 1023 (Newman, J., concurring and dissenting)). See also, Kimco Dev. Corp. v. Michael D's Carpet Outlets, 536 Pa. 1, 7-9, 637 A.2d 603, 606-07 (1993)).

concedes the foot control would have been safe for use with a properly guarded press brake.

14. Plaintiff's expert also acknowledged all of the following: (1) the ungated foot control would have been safe if the plaintiff's employer had installed the OSHA required point of operation safety device, such as the light curtain the employer installed on the press brake after the plaintiff's accident; (2) it would be a misuse of the press brake to operate the press brake without the required point of operation safety device; and (3) Heim had no duty to install a point of operation safety device on the press brake when it was sold, as only the employer and user can determine which point of operation safety device is appropriate for the many potential uses of the press brake. (<u>See</u> supporting memorandum, p. 10; Ralph Barnett deposition, appendix Exhibit E, pp. 238, 124-25, 163-64, 190-91).

15. Because there is no evidence that the foot control allegedly sold by Heim with its press brake in 1978 lacked any element necessary to make it safe for its intended use or possessed any element which rendered it unsafe for its intended use when sold in 1978, the foot control cannot be deemed defective and summary judgment should be entered in favor of Heim on each of the plaintiffs' claims. (<u>See</u> supporting memorandum, pp. 9-12).

C.     **Causation**

16.     The Magistrate Judge erroneously found that the issue of whether the foot control caused the plaintiff's accident presents an issue of fact for the jury. (See report and recommendation, pp. 6-7).

17.     Heim's motion and supporting documents identified the absence of any evidence to suggest that a gated foot control would have prevented the plaintiff's accident, and therefore Heim should be granted summary judgment on all claims. (See motion, pp. 3-4, ¶ 7; supporting memorandum, pp. 5-8).

18.     The sole evidence cited by the Magistrate Judge to conclude that the issue of causation is a jury question was the post-deposition affidavit and unsupported conclusion of plaintiff's expert, Ralph Barnett, that a foot control switch with a safety gate would have prevented the plaintiff's injury. (See report and recommendation, p. 7).

19.     However, the Magistrate Judge did not consider any of the facts upon which the plaintiff's expert based this conclusion or the speculation which plaintiff's expert used to arrive at this post-deposition conclusion.

20.     Plaintiff's expert concedes that the existence of a gate on a foot control is irrelevant if the plaintiff's foot was located inside the housing of the foot control at the time of the accidental activation because the plaintiff's foot, by resting inside the foot control,

would already have intentionally bypassed the gate and the accidental activation therefore would occur even with a gated foot control. (See supporting memorandum, p. 5; Ralph Barnett deposition, appendix Exhibit E, pp. 213-14).

21.    Plaintiff's expert references this type of misuse of a foot control as "riding the pedal," and plaintiff's expert has acknowledged that the existence of a gate on a foot control increases the likelihood of an operator "riding the pedal" because operators attempt to avoid the more cumbersome event of opening the gate prior to each application. (See supporting memorandum, pp. 5-6, deposition of Ralph Barnett, appendix Exhibit E, pp. 136-40).

22.    Plaintiff's expert does not present any factual evidence that the plaintiff's foot was outside of the foot control and concedes speculation and involuntary contortions which plaintiff's foot would be required to make for the "absence of gate" theory to have any causal relationship to plaintiff's accident. (See supporting memorandum, pp. 5-8; Ralph Barnett deposition, appendix Exhibit E, pp. 180-83, 216, 219-20; Tina Lindquist deposition, appendix Exhibit I, pp. 152-54, 163-64).

23.    The Magistrate Judge also did not consider the plaintiff's own testimony that she has no memory of her foot accidentally entering the protective housing of the foot control. (See supporting memorandum, pp. 6-7; Tina Lindquist deposition, appendix Exhibit I, pp. 144, 152; Ralph Barnett deposition, appendix Exhibit E, pp. 180-83, 216).

24.     Because the plaintiff has not established, and cannot establish, how this accident happened, and because plaintiff cannot establish that the absence of a gate bears any causal relationship to her injury, summary judgment should be granted on each of the plaintiff's claims.

## D.     Breach of Warranty

25.     The Magistrate Judge erroneously found, without any analysis, that the plaintiff's breach of warranty claims should be presented to a jury.  (See report and recommendation, pp. 8-9).

26.     The breach of warranty claims are barred by the applicable four-year statute of limitations which expired in 1982 (four years after the sale of the press brake in 1978). See Nationwide Insurance Co. v. General Motors Corp., 533 Pa. 425, 625 A.2d 1172 (1993).  (See motion, p. 4, ¶ 9; supporting memorandum, pp. 12-13).

27.     The plaintiff did not even present any opposition to the requested dismissal of the breach of warranty claims.

28.     Because the undisputed evidence establishes that the press brake at issue was sold by Heim in 1978 and plaintiff's breach of warranty claims are barred by the applicable statute of limitations, summary judgment should be granted to Heim on the breach of warranty claims.

WHEREFORE, the defendant, HEIM, L.P., respectfully requests that the Court reject the report and recommendations of the Magistrate Judge and enter summary judgment in favor of Heim, L.P. on each of the plaintiff's claims.

Respectfully submitted,

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.


By:_____ /s/ Paul R. Robinson_____
PAUL R. ROBINSON, ESQUIRE
PA I.D. No. 65581
Attorney for defendant, Heim, L.P.

U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA 15219
(412) 261-6600

P0797438 1

10

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been

served upon all parties on the date and in the manner listed below:

|  |  |
|---|---|
| _____ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail - Return Receipt Requested |
| _____ | Hand Delivery |
| _____ | Facsimile Transmission |
| ___X___ | Electronic Transmission |

at the following address:

Dallas W. Hartman, Esquire
Raymond Conlon, Esquire
Dallas W. Hartman P.C.
2815 Wilmington Road
New Castle, PA 16105
(Counsel for Plaintiff)

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

Date: December 28, 2006                    ____/s/ Paul R. Robinson_____
                                           PAUL R. ROBINSON, ESQUIRE

P0797438 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA LINDQUIST,<br><br>           Plaintiff,<br><br>    vs.<br><br>HEIM, L.P.,<br><br>           Defendant. | Civil Action No:  04-249E<br><br>**JUDGE SEAN J. MCLAUGHLIN /**<br>**MAGISTRATE JUDGE SUSAN**<br>**PARADISE BAXTER** |

## ORDER OF COURT

AND NOW, to wit, this _____ day of _____, 2006, upon consideration of Heim's objections to Magistrate Judge's report and recommendation, it is hereby ORDERED, ADJUDGED, and DECREED that the objections to the Magistrate Judge's December 11, 2006 report and recommendations are sustained.  Summary judgment is entered in favor of Heim, L.P. and against the plaintiff, Tina Lindquist, on each of the plaintiff's claims, and all claims and this civil action are dismissed with prejudice.

BY THE COURT:

_____
HONORABLE SEAN J. MCLAUGHLIN,
District Judge, U.S. District Court for the
Western District of Pennsylvania

P0798346.1