UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST                    : NO. 04-249E
            Plaintiff,            :
                                  : JUDGE SEAN MCLAUGHLIN
    v.                            :
                                  :
HEIM, L.P.                        :
            Defendant.            :

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR A DAUBERT HEARING

### I.   RESPONSE TO STATEMENT OF FACTS:

Plaintiff hereby incorporates by reference Plaintiff's Response to Defendant's Motion in Limine to Exclude the Testimony of Ralph L. Barnett, or alternatively, Motion for a Daubert Hearing.

### II. QUESTIONS PRESENTED:

**A.   DOES PLAINTIFFS' LIABILITY EXPERT'S OPINION SATISFY THE THRESHOLD REQUIREMENT FOR ADMISSIBILITY REQUIRED BY EVIDENCE RULE 702?**

**ANSWER: YES**

**B.   DOES THE DISTRICT COURT NEED TO CONDUCT A <u>DAUBERT</u> HEARING TO RULE ON DEFENDANT HEIM'S MOTION IN LIMINE CONCERNING PLAINTIFFS' LIABILITY EXPERT?**

**ANSWER: NO**

### III. LEGAL ARGUMENT:

**A.   PLAINTIFFS' LIABILITY EXPERT'S OPINION SATISFIES THE THRESHOLD REQUIREMENT FOR ADMISSIBILITY REQUIRED BY EVIDENCE RULE 702.**

The Federal Rules of Evidence provide that "[a]ll relevant evidence is admissible. *F.R.E.* 402. "Relevant evidence" is

defined as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *F.R.E.* 401. Thus, the Federal Rules of Evidence embody a strong preference for admitting any evidence which has the potential to assist the trier of fact. *See* Holbrook v. Lykes Bros. S.S Co., 80 *F.3d* 777, 780 (3d Cir. 1996).

In the matter presently before the Court, the Defendant seeks to exclude the expert opinion testimony of Plaintiffs' liability expert, Professor Ralph Barnett. While the defense has couched their motion in terms of a Daubert motion[1], alleging that Dr. Barnett's opinion is based on "junk science" (Db p.3), what the defense is really seeking is a rehashing of their prior motion for summary judgment on the issue of causation[2]. Defendant is asking the court to reject Professor Barnett's conclusions and accept as fact the Defendant's experts' conclusions which are contrary to those of Professor Barnett.

---

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 *U.S.* 579, 113 *S.Ct.* 2786, 125 *L.Ed.2d* 469 (1993).

[2] Defendant previously filed a motion for summary judgment seeking to dismiss Plaintiffs' Complaint. In that motion Defendant argued that Plaintiffs had failed to identify the proper product and that "there [wa]s no evidence in this case that a gated foot control would have prevented this accident and no evidence that the absence of a gate on the foot control had any causal relationship to the Plaintiff's accident." Document #42, p.5. The Court, citing to Professor Barnett's opinion that a foot switch "with a safety gate would have prevented the injury to Plaintiff in this case" created a material issue of fact for the jury to resolve. Memorandum Order dated February 23, 2007, 2007 WL 626105 (W.D.Pa.).

A review of the Defendant's motion reveals that their entire argument as to why Professor Barnett's opinion is "junk science" is based on the defense experts' claims that an ungated foot pedal satisfies the requirements of OSHA, ANSI and National Safety Council publications. (Db p.9). However, the mere fact that a product meets the minimum industry standards does not mean that a product is not defective. Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc., 515 *Pa*. 334, 528 *A.2d* 590 (1987); Majdic v. Cincinnati Machine Co., 370 *Pa.Super*. 611, 537 *A.2d* 334 (1988).

Under Pennsylvania's products liability law "[t]he [manufacturer] of a product is subject to liability for the injuries caused to the plaintiff by a defect in the article, which existed when the product left the possession of the [manufacturer]." *Pennsylvania Suggested Standard Civil Jury Instruction* 8.01. A "product **must be provided with every element necessary to make it safe** for its intended use, and without any condition that makes it unsafe for its intended use." *Pennsylvania Suggested Standard Civil Jury Instruction* 8.02 [Emphasis added]. Thus, it is not sufficient, in order to ensure that a product is provided with every element necessary to make it safe, to merely comply with some minimum standard. If a jury determines that "at the time [the product] left the

3

defendant's control, [it] lacked **any element necessary to make it safe** * * * and there was an alternative, safer practicable design, then the product was defective and the defendant is liable for all harm caused by the defect." *Pennsylvania Suggested Standard Civil Jury Instruction* 8.02 [Emphasis added].

Professor Barnett opines that the Defendant could have designed, manufactured and distributed the Press Brake in a safer manner by incorporating a gated foot control. Thus, Professor Barnett has offered relevant opinion evidence to be considered by the jury in this matter regarding an alternative, safer practicable design, which if accepted by the jury would indicate that the Heim Press Brake lacked an element necessary to make it safe at the time the Press Brake left Heim's control.

Evidence Rule 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is based upon the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

*F.R.E.* 702.

The Defendant alleges that Professor Barnett's testimony does not satisfy the <u>Daubert</u> standards and as such is

4

inadmissible under *F.R.E.* 702.  The evidence of record before the court, however, does not support Defendant's allegations.

The gate keeping function called for in Daubert must be "tied to the facts" of a particular "case". Daubert v. Merrell Dow Pharmaceuticals, 509 *U.S.* 579, 591, 113 *S.Ct.* 2786, 125 *L.Ed.2d* 469 (1993)[*quoting* United States v. Downing, 753 *F.2d* 1224, 1242 (3rd Cir. 1985)]. "The factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., Ltd. V. Carmichael, 526 *U.S.* 137, 150, 119 *S.Ct.* 1167, 143 *L.Ed.2d* 238 (1999).

In the matter presently before the court, Professor Barnett's particular expertise, analyzing the safety aspects of foot controls, is undisputed. [cite to defendants' experts who acknowledge him as the expert]. The subject of the proposed expert testimony is straight forward; providing a gate over the cover of a foot control decreases the incidence of unintended activation of the foot control if the operator's foot is outside of the foot control.  This case does not involve novel or complex theories of causation such as whether a prescription drug caused birth defects, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 *U.S.* 579, 113 *S.Ct.* 2786, 125 *L.Ed.2d*

469 (1993); what caused a tire to fail, *Kumho Tire Co., Ltd. V. Carmichael*, 526 *U.S.* 137, 119 *S.Ct.* 1167, 143 *L.Ed.2d* 238 (1999), or what the cause of a particular fire was, *Pappas v. Sony Electronics, Inc.*, 136 *F.Supp.2d* 413 (W.D.Pa. 2000). The issue for the jury in this case, simply stated, is was a gated foot control a necessary element to make the Heim Press Brake safe for its intended use, or did the lack of a gated foot control render the Press Brake defective.

As the Third Circuit Court of Appeals has previously recognized, the *Daubert* factors "are neither exhaustive nor applicable in every case." *Kannankeril v. Terminix International, Inc.*, 128 *F.3d* 802, 806-807 (3rd Cir. 1997). "[A] trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Kumho Tire Co., Ltd. V. Carmichael*, 526 *U.S.* 137, 141, 119 *S.Ct.* 1167, 143 *L.Ed.2d* 238 (1999). The *Daubert* test of reliability is "flexible" and the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co., Ltd. V. Carmichael*, 526 *U.S.* 137, 141, 119 *S.Ct.* 1167, 143 *L.Ed.2d* 238 (1999).

In the matter presently before the court, Professor Barnett's opinion consists of a testable hypothesis; to wit: "a

6

foot switch with a safety gate would eliminate accidental activation". (Barnett Affidavit paragraph 10). In fact, Professor Barnett conducted his own head to head comparison of the open front footswitch provided with the subject Heim Press Brake against a gated footswitch. That testing revealed a 0% accidental activation rate for the gated control, compared with a 93.5% accidental activation rate for the ungated model. (Barnett report). Defendant's liability expert, Dennis Cloutier, who worked for 29 years for Cincinnati, Inc., a manufacturer of Press Brakes, testified that gated foot controls are utilized to prevent inadvertent activation of foot controls and that if the gate is in place it works to prohibit inadvertent activation.[3] (Cloutier T35-T37 attached hereto as Exhibit "A"; Switalski T169-170, T177 attached hereto as Exhibit "B").

The hypothesis that a gated foot control provides protection against inadvertent activation has not only been subject to peer review but has also been put to use in the real world. In fact, the technology recommended by Professor Barnett was already in existence in the marketplace at the time the Heim Press Brake at issue left the Defendant's control and was placed into the stream of commerce. Figure 1 attached to Professor

---

[3] In fact, Cincinnati, Inc. sent out a safety alert or recall notice to the owners of its press brakes that they were offering gated foot controls. (Cloutier T190 attached hereto as Exhibit "A").

Barnett's report, taken from Linemaster's Product Catalog, confirms that the Linemaster Anti-Trip Foot Control, with the gate option, which complies with OSHA provisions for full shielding of foot controls was available in 1977. This gated foot control, which Professor Barnett contends should have been incorporated into the Heim Press Brake and without which renders the machine defective, can be found in the Linemaster catalog page directly opposite the foot control Heim chose to select for use on the subject Press Brake. [Barnett report].

Moreover, other manufacturers of Press Brakes such as Cincinnati, Inc. and Chicago were designing, manufacturing and distributing their respective brands of Press Brakes with gated foot controls at the same time Heim was offering their Press Brake without the gated control. (Cloutier T35-T37 attached hereto as Exhibit "A"); (Switalski T97-99 attached hereto as Exhibit "B"). Other Press Brake manufacturers such as Pacific, Amada, LBD and possibly Trumpf, also provided a gated foot switch with their products at a later date. (Cloutier T35-T37 attached hereto as Exhibit "A").

In addition, a gated foot control such as the type being recommended by Professor Barnett would have complied with the ANSI B11.3 standard which the defense experts so heavily rely

upon.    (Cloutier T29–T33 attached as Exhibit "A"); (Switalski T66–67, 99–100 attached hereto as Exhibit "B")

Thus, Professor Barnett's opinion is not offering "junk science", but rather an alternative design, using then existing technology which, in addition to meeting the applicable ANSI standard, would have reduced the possibility of unintended activation from inadvertent contact with the foot control, thereby making the product safer.   It is Professor Barnett's opinion that without the gated foot control the Heim Press Brake lacked an element necessary to make it safe.   This is exactly the type of evidence a jury should be permitted to consider in order to decide if the Heim Press Brake was defective.

The Defendant further alleges that Professor Barnett's opinion should be disregarded because Defendant's experts' believe Professor Barnett is contradicting previous articles he has written on the subject of foot controls and that a gated foot control will introduce an increased hazard of "riding the pedal".

Initially, it must be noted that the very fact that all three defense experts cite to and/or reference Professor Barnett's own work as the basis for their opinion that a gated foot control will lead to an increased hazard of "riding the pedal" proves that Professor Barnett is in fact the foremost

9

authority on foot controls. Professor Barnett disputes the Defendant's assertion that any opinion offered in the course of this litigation contradicts any of his prior writings, opinions, testimony or beliefs. His opinion that use of a gated foot pedal for Press Brakes is completely consistent with prior work. Those prior articles cited and relied upon by the defense experts all dealt with the selection of a proper foot pedal for use on a Punch Press, which is a different machine, governed by different standards and considerations. The very reasons you do not want a gated foot control on a Punch Press, support Professor Barnett's thesis as to why you would want to include a gated foot control on a Press Brake.

Moreover, whether or not Professor Barnett's present opinion is contrary to his prior writings goes to the weight and credibility of Professor Barnett's testimony, not the baseline admissibility of that testimony. In re Paoli R.R. Yard PCB Litig., 35 *F.3d* 717,743-746 (3rd Cir. 1994). Daubert does not set up a test of which opinion has the best foundation, but rather the test is "whether any particular opinion is based on valid reasoning and reliable methodology." Kannankeril v. Terminix International, Inc., 128 *F.3d* 802, 806 (3rd Cir. 1997).

District Courts enjoy broad latitude when they decide how to determine reliability in respect to their ultimate

reliability determination. *See* <u>General Electric Co. v. Joiner</u>, 522 *U.S.* 136, 143, 118 *S.Ct*. 512, 139 *L.Ed.2d* 508 (1997). Plaintiffs' burden is only to provide an expert opinion that is relevant and reliable and that will assist the trier of fact. <u>Kannankeril v. Terminix International, Inc.</u>, 128 *F.3d* 802, 809-810 (3rd Cir. 1997). In the matter presently before the court, Plaintiffs, through their expert, Professor Barnett, have met that minimal showing and accordingly, the matter should be submitted to a jury. *See* <u>Kerrigan v. Maxon Indus., Inc.</u>, 223 *F.Supp.2d* 626, 637 (E.D.Pa. 2002)[citation omitted]("[T]he standard of reliability is not a high one" but seeks "to exclude so-called 'junk science'").

    **B.   THE DISTRICT COURT HAS SUFFICIENT EVIDENCE FROM WHICH TO CONCLUDE THAT PLAINTIFFS' LIABILITY EXPERT HAS SATISFIED THE REQUIREMENTS OF EVIDENCE RULE 702 AND DOES NOT NEED TO CONDUCT A <u>DAUBERT</u> HEARING TO DECIDE DEFENDANT HEIM'S MOTION IN LIMINE.**

Professor Barnett's proffered testimony is set forth in an initial report dated February 13, 2006, an amended report dated May 2006, an affidavit dated May 19, 2006 and a deposition dated April 6, 2006. In addition, Professor Barnett's extensive CV was previously submitted to the court on or about February 16, 2006.

The reports and depositions of Defendant's liability experts, Dennis Cloutier, William Switalski and Gary Hutter,

have likewise previously been submitted to the court in connection with Defendant's prior motion for summary judgment.

In February of this year the District Court conducted an extensive oral argument in connection with Defendant Heim's objections to the Magistrate Judge's rulings on Defendant's motion for summary judgment. Since that time the District Court has also conducted an extensive pre-trial conference. Accordingly, it is respectfully submitted that the District Court is intimately familiar with the issues involved in this case as well as the opinions, facts, and theories relied upon by Plaintiff's liability expert Professor Ralph Barnett to support his opinion from which to make the threshold determination as to whether that opinion satisfies the requirements of Evidence Rule 702.

However, in the alternative, in the event the District Court is of the opinion that it lacks sufficient evidence from which to perform its initial gate keeping function, Plaintiff would respectfully request the opportunity to present testimony to supplement the record with additional facts and evidence to allow the District Court to rule upon Defendant Heim's *In Limine* Motion.

IV.  CONCLUSION:

For the foregoing reasons, it is respectfully submitted that Plaintiffs have made the threshold requirement of showing that Professor Barnett's opinion is relevant and reliable and that it will assist the trier of fact in accordance with Evidence Rule 702. Accordingly, the Defendant's motion should be denied and it should be left for the jury to decide if the Press Brake designed, manufactured, and distributed by Heim lacked any element necessary to make it safe for its intended use.

                    DALLAS W. HARTMAN, P.C.

                    /s/ Dallas W. Hartman
                    Attorneys for Plaintiff
                    Dallas W. Hartman, Esq.
                    Attorney I.D. No. 41649

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the within document was served on the party below in the following manner:


Paul R. Robinson, Esquire
MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
U.S. Steel Tower, Suite 4850
Pittsburgh, PA 15219

Attorney for DEFENDANT



DALLAS W. HARTMAN, P.C.

DATE: 04/27/07

/s/ Dallas W. Hartman
Attorneys for Plaintiff

Dallas W. Hartman, Esq.
Attorney I.D. No. 41649

2815 Wilmington Road
New Castle, PA 16105
(724) 652-4081

14