UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

```
TINA LINDQUIST                    : NO. 04-249E
             Plaintiff,           :
                                  : JUDGE SEAN MCLAUGHLIN
   v.                             :
                                  :
HEIM, L.P.                        :
             Defendant.           :
```

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR AN AZZARELLO HEARING

### I.  RESPONSE TO STATEMENT OF FACTS:

Plaintiff hereby incorporates by reference Plaintiff's Response to Defendant's Motion for an Azzarello Hearing

### II.  QUESTIONS PRESENTED:

**A.  WHETHER AN AZZARELLO HEARING TO DETERMINE WHETHER OR NOT THE PRESS BRAKE WITHOUT A GATED FOOT CONTROL WAS "UNREASONABLY DANGEROUS" FOR THE PLAINTIFF'S STRICT PRODUCT LIABILITY CLAIM MUST BE SCHEDULED PRIOR TO TRIAL?**

**ANSWER: NO**

**B.  IS THE HEIM PRESS BRAKE, MODEL 70-6, DESIGNED, MANUFACTURED, AND DISTRIBUTED WITHOUT A GATED FOOT CONTROL, AN "UNREASONABLY DANGEROUS" PRODUCT?**

**ANSWER: YES**

### III.  LEGAL ARGUMENT:

**A.  A HEARING TO DETERMINE WHETHER OR NOT THE PRESS BRAKE WITHOUT A GATED FOOT CONTROL WAS "UNREASONABLY DANGEROUS" IS NOT REQUIRED UNDER AZZARELLO AND ITS PROGENY**

In Azzarello v. Black Brothers Company, Inc., 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978), the Pennsylvania Supreme Court

held that in a strict product liability case, the determination of whether or not a product is "unreasonably dangerous" is a question of law to be decided by the court. If the court determines that the risk of loss should be placed on the manufacturer, the case is submitted to the jury to determine whether the product was sold in a defective condition as alleged. *Id*. That threshold determination requires the trial court to make a social policy determination. *Id*.

The term "hearing" is defined in *Black's Law Dictionary* (5th Edition, 1979) as a "[p]roceeding of relative formality * * * in which witnesses are heard and parties proceeded against have a right to be heard, and is much the same as a trial * * *." Neither Azzarello, nor any of the cases decided since then, have mandated that the trial court conduct a hearing, such as is being requested by the defense in this matter, to determine if the product is "unreasonably dangerous".

In Dambacher by Dambacher v. Mallis, 336 *Pa.Super*. 22, 485 *A.2d* 408 (1984), *allocatur granted, appeal dismissed*, 508 *Pa*. 643, 500 *A.2d* 428 (1985), the court observed:

> Nothing in Azzarello precludes a supplier
> or manufacturer, by appropriate motion,
> from asking the trial court to *make explicit*
> *it's ruling* on the threshold determination
> of social policy that Azzarello requires.
> In the absence of such a motion, it will
> be presumed that the court, by permitting
> the case to go to the jury, resolved

2

> the threshold determination against the
> defendant.

336 *Pa.Super*. at 51 n. 6, 485 *A.2d* at 423 n. 6. [Emphasis added].

In fact, the cases that have discussed this threshold issue have mostly arisen in the context of motions for summary judgment or post verdict motions seeking a determination that the product at issue was not "unreasonably dangerous". *See* Schindler v. Sofamor, Inc., 2001 *Pa.Super.* 118, 774 *A.2d* 765 (2001); VanBuskirk v. The West Bend Co., 100 *F.Supp.2d* 281 (E.D.Pa. 1999); Riley v. Warren Manufacturing, Inc., 455 *Pa.Super*. 384, 688 *A.2d* 221 (1997); Surace v. Caterpillar, 111 *F.3d* 1039 (3d Cir. 1997); Dambacher by Dambacher v. Mallis, 336 *Pa.Super*. 22, 485 *A.2d* 408 (1984), *allocatur granted, appeal dismissed*, 508 *Pa*. 643, 500 *A.2d* 428 (1985).

Defendant Heim requests an Azzarello hearing, as that "requirement was recently confirmed by the Third Circuit Court of Appeals in Moyer v. United Dominion Indus., Inc., 473 F.3d 532 (2007)." (Db @ p.3). In Moyer, "the District Court conducted a risk-utility analysis and determined, as a threshold matter, that the [product at issue] was 'unreasonably dangerous.'" *Id*. at 536. Thereafter, a jury trial was conducted and the several Plaintiffs were awarded approximately $13.5 million dollars. *Id*. On Appeal the Third Circuit actually

3

upheld the District Court's finding that the product was "unreasonably dangerous", but reversed in part and remanded the case for further proceedings on other grounds. *Id.*

Nothing in the Moyer Court's ruling mandated that the District Court conduct a pretrial hearing, as Defendant Heim has requested. All that is required is that the District Court perform a risk-utility analysis and determine whether, as a threshold matter, the product complained of is "unreasonably dangerous", before the matter is submitted to the jury.

The only case that Plaintiff's research has uncovered where an actual "hearing" was conducted is Shetterly v. Crown Controls Corp., 719 *F.Supp.* 385 (W.D.Pa. 1989), *aff'd*, 898 *F.2d* 142 (3rd Cir. 1990). In that case, the "trial Judge sensed 'early on' that a pre-trial 'risk utility' hearing was the only feasible way to establish the underlying facts necessary to intelligently address the seven factors to be considered when th[e] Judge must act as a combination 'social philosopher and risk-utility economic analyst * * *.'" 719 *F.Supp.* at 388. Because of the trial Judge's perception of what information he needed "an extended pre-trial 'risk-utility' hearing was held and th[e] Judge actually went on an official 'view' of the warehouse in question and saw first hand how the [product] in question [was] operated in the areas where the accident occurred." *Id.*

4

It is respectfully submitted that the facts in Shetterly were unusual and the hearing conducted was actually requested by the trial Judge early on and conducted during the course of the case, not at the 11th hour right before trial was to commence. Moreover, in another case involving the same Defendant, and the exact same product, the District Court Judge was able to make the threshold determination, as to whether the product was "unreasonably dangerous", in the context of Defendant's motion for summary judgment. McMullen v. Crown Equipment Corp., 2004 WL 887470 (E.D.Pa.) [A copy of the McMullen Opinion is attached hereto as Exhibit "A"].

In the matter presently before the court, the District Judge conducted an extensive oral argument in February of this year in connection with Defendant Heim's objections to the Magistrate Judge's rulings on Defendant's motion for summary judgment. Since that time the District Court has also conducted an extensive pre-trial conference. Accordingly, it is respectfully submitted that the District Judge is intimately familiar with the allegations, facts and opinions involved in this case from which to make the threshold determination as to whether the Heim Press Brake, Model 70-6, designed, manufactured and distributed without a gated foot control is an "unreasonably dangerous" product.

5

For the foregoing reasons, it is respectfully submitted that there is no need for the District Court to conduct a hearing to decide the Azzarello issue.

**B.  THE HEIM PRESS BRAKE, MODEL 70-6, DESIGNED, MANUFACTURED, AND DISTRIBUTED WITHOUT A GATED FOOT CONTROL IS AN "UNREASONABLY DANGEROUS" PRODUCT**

A Press Brake designed, manufactured, and distributed, which is intended to be activated by way of a foot control, and which fails to utilize a gated foot control, is an "unreasonably dangerous" product.

Both the Plaintiffs' and Defendant's experts agree that a foot control supplied with a Press Brake should be designed to inhibit inadvertent activation of the machine. (Exhibit "A" attached to Defendant's Appendix to Daubert Motion @ T245; Exhibit "J" attached to Defendant's Appendix to Daubert Motion @ T198-199; Exhibit "H" attached to Defendant's Appendix to Daubert Motion @ T66, T134-135). Plaintiff's liability expert, Professor Ralph Barnett, opines that a gated foot control provides greater protection from the inadvertent activation of a foot control. (Exhibits "C" and "D" attached to Defendant's Appendix to Daubert Motion).

The Defendant's several experts, on the other hand, contend that the ungated foot pedal utilized on the Heim Press Brake meets the applicable ANSI B11.3 standard and therefore the

6

product was not unreasonably dangerous. However, the mere fact that a product meets the minimum industry standards does not mean that the product is not defective. Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc., 515 *Pa*. 334, 528 *A.2d* 590 (1987); Majdic v. Cincinnati Machine Co., 370 *Pa.Super*. 611, 537 *A.2d* 334 (1988). Moreover, the gated foot control recommended by Professor Barnett would have likewise complied with the ANSI B11.3 standard which the defense experts so heavily rely upon. (Exhibit "J" attached to Defendant's Appendix to Daubert Motion @ T29-T33; Exhibit "H" attached to Defendant's Appendix to Daubert Motion @ T66-67, 99-100).

In Dambacher by Dambacher v. Mallis, 336 *Pa.Super*. 22, 50-51, 485 *A.2d* 408, 423 (1984), *allocatur granted, appeal dismissed*, 508 *Pa*. 643, 500 *A.2d* 428 (1985), the Appellate Division identified several factors[1] the trial court should consider in analyzing whether the risk of loss should be placed

---

[1] Some courts rely on the following factors: (i) the gravity of the danger posed by the challenged design; (ii) the likelihood that such danger would occur; (iii) the mechanical feasibility of a safer design; and (iv) the adverse consequences to the product and to the consumer that would result from a safer design." Dambacher by Dambacher v. Mallis, 336 *Pa.Super*. 22, 51, 485 *A.2d* 408, 423 (1984), *allocatur granted, appeal dismissed*, 508 *Pa*. 643, 500 *A.2d* 428 (1985)[*quoting* Barker v. Lull Engineering Co., Inc., 573 *P.2d* 443, 445 (1978)]. Other courts cite to the so-called *Wade* Factors derived from an article by Dean John Wade of Vanderbilt University, "On the Nature of Strict Tort Liability for Products" 44 *Miss.L.J.* 825, 837-838 (1973).

on the manufacturer.  This analysis is commonly referred to as risk/utility analysis.

In performing the risk/utility analysis there is no litmus test, and no case has ever held that each of the suggested factors must be proven. *See* Riley v. Warren Manufacturing, Inc., 455 *Pa.Super*. 384, 392, 688 *A*.2d 221, 225 (1997); Surace v. Caterpillar, 111 *F.3d* 1039 (3d Cir. 1997).  Moreover, when performing the Azzarello analysis, the court must view the evidence in the light most favorable to the Plaintiff.  Barker v. Deere & Co., 60 *F.3d* 158, 166 (3d Cir. 1995); Burch v. Sears Roebuck & Co., 320 *Pa.Super*. 444, 450-451, 467 *A.2d* 615, 618-619 (1983).

### 1.   Usefulness and Desirability of the Product

It is not contested that a Press Brake is a useful and desirable product.  However, the mere fact that a product is both useful and desirable does not end the inquiry in a risk-utility analysis.  While a Press Brake is a useful and desirable product, a Press Brake designed, manufactured and distributed so as to be a safer product, without adversely affecting its utility, is an even more useful and desirable product.

One of Defendant's liability experts, Dennis Cloutier, worked for 29 years for Cincinnati, Inc., a manufacturer of Press Brakes. Cincinnati, Inc. has been providing gated foot

controls with their press brakes since 1971,[2] seven years before the Heim Press Brake was manufactured. (Exhibit "J" attached to Defendant's Appendix to Daubert Motion @ T36). Mr. Cloutier has testified that gated foot controls are utilized to prevent inadvertent activation of foot controls and that if the gate is in place it works to prohibit inadvertent activation. (Exhibit "J" attached to Defendant's Appendix to Daubert Motion @ T35-T37).

Thus, while a Press Brake is a useful and desirable product, one that further reduces the risk of inadvertent activation by providing a gated foot control is an even more useful and desirable product.

2.    Likelihood that the Product will Cause Injury, and the Probable Seriousness of the Injury

In weighing the risk-utility of the Press Brake it is important to note that the substantial dangers associated with an operator of a Press Brake sustaining an injury to their hands is well known to the Defendant. It is also significant that the risk, that the operator of a Press Brake would be severely injured, is likewise well known by Defendant. In fact, Defendants' experts have acknowledged this risk. (Exhibit "J" attached to Defendant's Appendix to Daubert Motion @ T222-223;

_____

[2] In fact, Cincinnati, Inc. sent out a safety alert or recall notice to the owners of its press brakes that they were offering gated foot controls. (Exhibit "J" attached to Defendant's Appendix to Daubert Motion @ T190).

9

Exhibit "H" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T134-138).

In <u>Surace v. Caterpillar, Inc.</u>, 111 *F.3d* 1039, 1048 (3rd Cir. 1997), the Third Circuit held as a matter of law, "the fact that [a product] will from time to time cause injury, and if so, the injury will be serious" is a sufficiently grave risk of harm that must be weighed in favor of the injured Plaintiff in the risk-utility analysis. In <u>Surace</u> the court overturned the lower court's determination that an intermittent dangerous condition with a risk of serious injury does not weigh in favor of Plaintiff on the risk-utility analysis. *Id.*

Here, the defective Press Brake caused the traumatic amputation of all eight of Ms. Lindquist's fingers. (Report of Dr. Hood dated December 12, 2005 is attached hereto as Exhibit "B"). As a result of this accident, she has had to undergo several surgical procedures, including a surgery to transfer her second toe to where the third metacarpal belongs to try to give her some functional use of her right hand. (Exhibit "B" attached hereto). Her treating surgeon, Dr. Hood, has opined that Ms. Lindquist suffers from severe limitations in her ability to perform even daily activities such as washing herself, and clothing herself will be an arduous chore. (Exhibit "B" attached hereto).

To date, $202,222.67 in medical expenses have been incurred to treat Ms. Lindquist's injuries. Dr. Hood has opined that she may need to undergo additional surgeries in the future, the cost of which will likely exceed $100,000 per surgery. (Exhibit "B" attached hereto).

Dr. Hood has opined that as a result of her injuries, Ms. Lindquist has lost her ability to perform any gainful employment. (Exhibit "B" attached hereto). Plaintiff's economic expert, Donal Kirwan, has estimated Plaintiff's economic damages for past lost wages and benefits and future lost earnings capacity in the range of $904,660 to $1,031,922. (Report of Forensic Human Resources dated November 11, 2005 is attached hereto as Exhibit "C").

Accordingly, this factor weighs in favor of finding that the Press Brake without a gated foot control was "unreasonably dangerous".

### 3. Availability of a Substitute Product

Plaintiff's expert, Professor Ralph Barnett, has identified a gated foot control made by Linemaster that is contained in the same catalog from which Defendant Heim chose the ungated foot control which Defendant Heim opted to include in the design, manufacture, and distribution of the Press Brake, Model 70-6. (Exhibits "C" and "D" attached to Defendant's Appendix to

Daubert Motion).  Thus, an alternative product, a gated foot control, was unquestionably feasible and was available on the market.

Defendants' experts have likewise acknowledged that gated foot controls were available at the time the Heim Press Brake, Model 70-6, involved in this accident, was designed, manufactured, and distributed. (Exhibit "J" attached to Defendant's Appendix to Daubert Motion @ T35-37; Exhibit "H" attached to Defendant's Appendix to Daubert Motion @ T98-99).

Those defense experts merely dispute that use of a gated foot control provides a safer design.  That issue, whether a gated foot control is a safer design, is an issue of fact for the jury to determine in deciding if the Press Brake left the Defendant's control lacking any element necessary to make it safe.

Accordingly, this factor weighs in favor of finding that the Press Brake without a gated foot control was "unreasonably dangerous".

4.  Manufacturer's Ability to Eliminate Unsafe Character Without Impairing its Usefulness

In the matter presently before the court Plaintiff's expert, Professor Ralph Barnett, has opined that the unsafe character of the Heim Press Brake could be eliminated by incorporation of a gated foot control. (Exhibits "C" and "D"

attached to Defendant's Appendix to <u>Daubert</u> Motion). Figure 1 attached to Professor Barnett's report, taken from Linemaster's Product Catalog, confirms that the Linemaster Anti-Trip Foot Control, with the gate option, which complies with OSHA provisions for full shielding of foot controls was available in 1977. (Exhibit "D" attached to Defendant's Appendix to <u>Daubert</u> Motion). This gated foot control, which Professor Barnett contends should have been incorporated into the Heim Press Brake and without which renders the machine defective, can be found in the Linemaster catalog page directly opposite the foot control Heim chose to select for use on the subject Press Brake. (Exhibit "D" attached to Defendant's Appendix to <u>Daubert</u> Motion).

Moreover, other Press Brake manufacturers such as Cincinnati, Inc. and Chicago were designing, manufacturing and distributing their respective brands of Press Brakes with gated foot controls at the same time Heim was offering their Press Brake without the gated control. (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T35-37; Exhibit "H" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T98-99). Other Press Brake manufacturers such as Pacific, Amada, LBD and possibly Trumpf, also provided a gated foot switch with their

13

products at a later date. (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T35-T37).

As such, Heim could have easily eliminated the unsafe character of the Press Brake by simply choosing a different foot control out of the same Linemaster catalog from which the ungated foot control was chosen from. *See* <u>Epler v. Jansport, Inc.</u>, 2001 *WL* 179862 (E.D.Pa. 2001)[where "Plaintiffs have shown the availability of [an] alternative product * * * which utilized [the proposed safety feature] * * * this factor weighs in favor of the Plaintiffs * * *."][A copy of the <u>Epler</u> Opinion is attached hereto as Exhibit "D"].

Accordingly, this factor weighs in favor of finding that the Press Brake without a gated foot control was "unreasonably dangerous".

<u>5.  User's Ability to Avoid Danger</u>

As observed by the Third Circuit in <u>Surace v. Caterpillar, Inc.</u>, 111 *F.3d* 1039, 1051 (3rd Cir. 1997), "[t]he proper focus in applying the fifth *Wade* factor [] is an objective inquiry into whether the class of ordinary [users] of the product could avoid injury through the exercise of care in the use of the product, not whether this particular plaintiff could have avoided this particular injury."

14

In <u>Coward v. Owens-Corning Fiberglas Corp.</u>, 1999 *Pa*. 82, 729 *A.2d* 614 (1999), the Superior Court of Pennsylvania agreed with the New Jersey Supreme Court's recognition that "because '[a] plaintiff who uses or is exposed to a defective product in the course of his or her employment may not be able to exercise meaningful choice with respect to confronting the risk of injury posed by the product,' he may never be able to establish that he would have avoided exposure * * *." 729 *A.2d* at 620 [*quoting* <u>Coffman v. Keene Corp.</u>, 131 *N.J.* 581, 628 *A.2d* 710, 721 (1993)].

Dennis Cloutier, on of Defendant Heim's experts, testified that the Press Brake industry understands that Press Brake operators will have to work with their hands in the die area. (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T70, T75; Exhibit "H" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T138). In fact, at the time of this accident, the process Ms. Lindquist was performing "required the operator to manually perform the part around the mandrel." (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T147-148). "Therefore it was necessary for Ms. Lindquist to place her hands between the upper and lower die to fit the part around the mandrel." (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T147-148).

15

Plaintiff Tina Lindquist did not have the ability to avoid the danger she was confronted with.  Her employer selected the method by which the Press Brake was to be operated and chose the foot control switch. (Exhibit "A" attached to Defendant's Appendix to Daubert Motion @ T164-165).

Accordingly, this factor weighs in favor of finding that the Press Brake without a gated foot control was "unreasonably dangerous".

### 6. User's Anticipated Awareness of the Dangers and their Avoidability

The defect at issue in this case, is Defendant Heim's failure to incorporate, or utilize, a gated foot pedal in the design, manufacture, and distribution of the Press Brake.  While Plaintiff, Tina Lindquist, may have anticipated the dangers of placing her hands in the dye area of the Press Brake while it was operating, there is nothing in the record to suggest that she understood or anticipated that there was a danger the machine would cycle when she did not intend for it to activate. As set forth above, Ms. Lindquist's job required her to place her hands in the dye area to perform her work. When she knowingly placed her hands in the work area, the machine was not suppose to be activated and thus there was no perceived danger. This accident occurred as a result of an unintended activation. (Exhibit "J" attached to Defendant's Appendix to Daubert Motion

16

@ T154). That inadvertent activation could have been avoided if the Press Brake incorporated a guarded foot control, which would have prevent her foot from entering into the foot control and activating the machine unintentionally.

Even the Defendant's experts agree that the possibility of unintended activation of the Press Brake should be minimized. (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T60). Unintended operation of a Press Brake is not desirable under any circumstance and that any measures taken to reduce the possibility of an unintended cycle advance the overall safety of the machine. (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T61, Exhibit "H" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T135). A gated foot control would have prevented the inadvertent activation of the foot control. (Exhibit "J" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T192, Exhibit "H" attached to Defendant's Appendix to <u>Daubert</u> Motion @ T169-170).

Accordingly, this factor weighs in favor of finding that the Press Brake with an ungated foot control was "unreasonably dangerous".

7. <u>Feasibility on the part of the Manufacturer of Spreading the Loss</u>

Pennsylvania's Federal District Courts have previously noted that a manufacturer or supplier is usually able to spread

the cost of a Plaintiff's loss to all consumers of a product by raising the price of the product.  Riley v. Becton Dickinson Vascular Access, Inc., 913 F.Supp. 879, 890 (E.D.Pa. 1995)[citing Monahan v. Toro Co., 865 F.Supp. 955 (E.D.Pa. 1994)]; VanBuskirk v. The West Bend Co., 100 F.Supp.2d 281 (E.D.Pa. 1999).

The fact that at least six (6) Press Brake manufacturers[3] offered gated foot controls on their Press Brakes, leaves no doubt that it was feasible for Defendant Heim to spread any loss implicated by using the safer gated foot control design.

Accordingly, this factor weighs in favor of finding that the Press Brake without a gated foot control was "unreasonably dangerous".

IV.  CONCLUSION:

In evaluating the risk-utility factors in the light most favorable to Plaintiff, Tina Lindquist, the grave risk of harm that the Heim Press Brake provides absent a gated foot control renders the product "unreasonably dangerous".  It should be left for the jury to decide if the Press Brake lacked any element necessary to make it safe for its intended use.

DALLAS W. HARTMAN, P.C.

/s/ Dallas W. Hartman

---

[3] Those manufacturers included Cincinnati, Inc.; Chicago; Pacific; Amada; LBD; and Trumpf.

18

Attorneys for Plaintiff

Dallas W. Hartman, Esq.
Attorney I.D. No. 41649

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the within document was served on the party below in the following manner:

VIA ELECTRONICALLY:

Paul R. Robinson, Esquire
MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
U.S. Steel Tower, Suite 4850
Pittsburgh, PA 15219

Attorney for DEFENDANT

DALLAS W. HARTMAN, P.C.

DATE: 04/27/07

/s/ Dallas W. Hartman
Attorneys for Plaintiff

Dallas W. Hartman, Esq.
Attorney I.D. No. 41649

2815 Wilmington Road
New Castle, PA 16105
(724) 652-4081