```
                    UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST,                      : NO. 04-249E
          Plaintiff,                 :
                                     : JUDGE SEAN MCLAUGHLIN
   v.                                :
                                     :
HEIM, L.P.,                          :
          Defendant.                 :
```

**PLAINTIFF'S MOTION *IN LIMINE* TO BAR DEFENDANT HEIM FROM OFFERING EVIDENCE AND/OR ARGUING AT TRIAL THAT PLAINTIFF EITHER: ASSUMED THE RISK; MISUSED THE PRODUCT; OR ENGAGED IN HIGHLY RECKLESS CONDUCT, IN OPERATING THE HEIM PRESS BRAKE WITHOUT A POINT OF OPERATION DEVICE**

NOW COMES the Plaintiff, by and through her undersigned counsel and files the within Motion *In Limine*. In support thereof, Plaintiff states as follows:

I. BACKGROUND:

Through discovery and language found in Defendant's liability expert reports and depositions, Plaintiff has reason to believe that Defendant will attempt to offer evidence and/or testimony that Plaintiff assumed the risk, misused the Press Brake and/or engaged in highly reckless conduct as a defense to the issue of causation in this case.

II. STATEMENT OF FACTS:

1. The present cause of action arises from an incident which occurred on or about September 25, 2002.

2. At the time of her injury, Plaintiff was in the course and scope of her employment with Corry Manufacturing working on a

1

Press Brake designed, manufactured, and distributed by Defendant HEIM.

3. The Press Brake Plaintiff was working on had a supervisory switch which, when set, determined whether the Press Brake would be operated via the foot control or palm buttons.

4. Plaintiff did not have the authority or option to select the method by which the Press Brake would be activated by.

5. On the date of this accident Plaintiff's employer selected that the HEIM Press Brake be operated using the foot control.  (Document No. 48, Appendix Exhibit B, Pages 164-165).

6. Plaintiff was unaware that the machine had the ability to be operated using palm button controls.

7. Plaintiff was performing her job in accordance with the work instructions provided to her by her employer.  (A copy of the Work Instructions is attached hereto as Exhibit "A").

8. The work instructions provided by her employer specifically instructed Plaintiff to hand form the piece of metal she was working with on the mandrel.  (See Exhibit "A")

9. The mandrel is part of the die components that allow the Press Brake to form various shapes.

10  It was necessary for the Plaintiff to put her hands in between the upper and lower die to hand form the part around the mandrel.  (Document No. 48, Appendix Exhibit K, Page 148).

11. Forming the part (as was done by Plaintiff at the time of her injury) was a use of the press brake that was accepted. (Document No. 48, Appendix Exhibit K, Page 146).

12. The final forming of the piece on the mandrel, having the press interface with the piece to make a complete cylinder, is something that Defendant's expert would expect a press brake to be utilized in doing. (Document No. 48, Appendix Exhibit K, p. 147).

13. Defendant's own experts agree that it is foreseeable that under certain circumstances operators will put their hands in the die area. (Document No. 48, Appendix Exhibit J, Page 149; Document No. 48, Appendix Exhibit K, Page 69; Document No. 48, Appendix Exhibit L, Page 138).

14. The press brake industry understands that operators will work with their hands in the die area of press brakes. (Document No. 48, Appendix Exhibit K, Page 70).

15. It is known to manufacturers of press brakes that loading and unloading of work pieces on a general purpose press brake (such as the press brake involved in Plaintiff's accident), will be done by hand. (Document No. 48, Appendix Exhibit A).

16. Point of operation injuries occur on press brakes. (Document No. 48, Appendix Exhibit K, Page 222).

17. Industry-wide it is known that operators of press brakes will have injuries to their hands and fingers at the point of operation while operating press brakes. (Document No. 48, Appendix Exhibit K, Page 75).

18.  Most point of operation injuries occur when an operator places his or her hands or fingers into the die area.  (Document No. 48, Appendix Exhibit K, Pages 222-223).

19.  Plaintiff was using the subject press brake at the Corry Manufacturing facility for purposes for which the subject press brake was intended and foreseeable.  (Document No. 48, Appendix Exhibit A).

III.  QUESTIONS PRESENTED:

    A.  **DID PLAINTIFF VOLUNTARILY AND KNOWINGLY OPERATE THE HEIM PRESS BRAKE IN THE FACE OF A KNOWN DANGER SO AS WARRANT INSTRUCTING THE JURY ON THE ASSUMPTION OF RISK DOCTRINE?**

    **ANSWER: NO**

    B.  **DID PLAINTIFF MISUSE THE HEIM PRESS BRAKE BY OPERATING IT WITHOUT A POINT OF OPERATION DEVICE?**

    **ANSWER: NO**

    C.  **DID PLAINTIFF ENGAGE IN HIGHLY RECKLESS CONDUCT BY OPERATING THE HEIM PRESS BRAKE WITHOUT A POINT OF OPERATION DEVICE?**

    **ANSWER: NO**

IV.  LEGAL ARGUMENT:

    A.  **<u>PLAINTIFF CANNOT BE CHARGED WITH VOLUNTARILY AND KNOWINGLY PROCEEDING IN THE FACE OF A KNOWN RISK, SO AS TO GIVE RISE TO A CHARGE OF ASSUMPTION OF RISK, AS A MATTER OF LAW WHERE SHE IS USING A DEFECTIVE PRODUCT IN THE COURSE OF HER EMPLOYMENT, AT HER EMPLOYER'S, DIRECTION</u>**

A Plaintiff cannot be precluded from recovery in a product liability case because of his own negligence. *Berkebile v. Brantly Helicopter Corporation*, 462 *Pa*. 83, 100, 337 *A.2d* 893, 901 (1975). However, voluntary assumption of risk is an affirmative defense in some circumstances. 462 *Pa*. at 100, 337 *A.2d* at 901-902.

Before the issue of assumption of risk may be submitted to a jury, the Defendant must produce evidence that the Plaintiff fully understood a specific risk, and yet voluntarily chose to encounter it. *Mucowski v. Clark*, 404 *Pa.Super*. 197, 201, 590 *A.2d* 348, 350 (1991). Assumption of risk is established "only where it is beyond question that the [P]laintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition." *Barrett v. Fedavid Builders, Inc.*, 454 *Pa.Super*. 162, 166-168, 685 *A.2d* 129, 131 (1996), *appeal denied*, 548 *Pa*. 653, 698 *A.2d* 63, (1997); *Surace v. Caterpillar, Inc.*, 111 *F.3d* 1039 (3rd Cir. 1997). "Voluntariness is established only when the circumstances manifest a willingness to accept the risk." *Staub v. Toy Factory, Inc.* 2000 Pa.Super. 87, 749 *A.2d* 522, 529 (2000)[*citing* *Handschuh v. Albert Development*, 393 *Pa.Super*. 444, 574 *A.2d* 693 (1990). The standard to determine whether assumption of the risk existed is essentially subjective. *Weaver v. Clabaugh*, 255 *Pa.Super*. 532, 536, 388 *A.2d* 1094, 1096

(1978); Smith v. Seven Springs Farms, Inc., 716 *F.2d* 1002 (3rd Cir. 1983).

In Robinson v B.R. Goodrich Tire Co., 444 *Pa.Super.* 640, 664 *A.2d* 616 (1995), the Plaintiff, a service station attendant, was injured in a tire explosion while inflating a customer's tire.  444 *Pa.Super.* at 642, 664 *A.2d* at 617. Plaintiff brought a product liability action against the manufacturer and retailer of the tire.  Defendants alleged that Plaintiff, an experienced tire worker, assumed the risk by failing to utilize available safety measures.  *Id*.  The Superior Court held that Plaintiff's failure to utilize available safety measures, without more, provided an insufficient basis upon which to charge the jury on assumption of risk.  444 *Pa.Super.* at 644-645, 664 *A.2d* at 618-619.

In Jara v. Rexworks, Inc., 718 *A.2d* 788 (Pa.Super. 1998), *appeal denied*, 558 *Pa.* 620, 737 *A.2d* 743 (1999), the Superior Court held, unequivocally, than "[a]n employee who is required to use certain equipment in the course of his employment and who uses that equipment as directed by the employer has no choice in encountering a risk inherent in that equipment."  *Id*. at 795.

In Jara the Plaintiff, as part of his employment, was required to perform maintenance work on a conveyor system.  Id. at 795.  While Plaintiff was climbing the conveyor to get to a

6

location to perform his maintenance work, a co-worker[1] started the conveyor causing the conveyor to throw Plaintiff to the ground and thereby causing his injuries. *Id*. Plaintiff brought a strict product liability action against the conveyor belt manufacturer.

In addressing the issue of assumption of risk the Superior Court observed:

> To suggest that [Plaintiff] was required to choose between performing his duties or use a defective product would permit [the Defendant manufacturer], by its own wrong, to deny [Plaintiff] the right and privilege of his employment. Therefore, he could not voluntarily assume the risk as [the Defendant manufacturer] suggests. Where an employee, in doing his job, is required to use equipment as furnished by the employer, **this defense in unavailable**. An employee who is required to use certain equipment in the course of his employment and who uses that equipment as directed by the employer has no choice in encountering a risk inherent in that equipment.

*Id*. at 795. *See* Coward v. Owens-Corning Fiberglas Corp., 1999 *Pa.Super*. 82, 729 *A.2d* 614, 720 (1999) [*quoting* Coffman v. Keene Corp., 131 *N.J.* 581, 628 *A.2d* 710, 721 (1993)]["because '[a] plaintiff who uses or is exposed to a defective product in the

---

[1] The Superior Court also ruled that it was improper for the trial court to have allowed evidence concerning the co-worker's action. The actions of the co-worker were "irrelevant to the question of product defect. Had the product not been defective, [the Plaintiff] would have had warning or been provided a safe location once the belt was activated. Thus, it could not be established that the accident was solely a result of [Plaintiff's] or another's conduct." *Id*. at 793-794.

course of his or her employment may not be able to exercise meaningful choice with respect to confronting the risk of injury posed by the product,' he may never be able to establish that he would have avoided exposure * * *."]; *see also* Cosgrove v. Cameron Machine Co., 172 F.*Supp.2d* 611 (W.D.Pa. 2001).

More recently, in Clark v. Bil-Jax, Inc., 2000 *Pa.Super*. 370, 763 *A.2d* 920 (2000), the Superior Court reaffirmed that the defense of assumption of risk cannot be used where a worker is injured while doing his job which requires use of the defective product.

This is exactly the situation in the matter presently before the court. Plaintiff Tina Lindquist sustained severe injuries while doing the job she was assigned to do, which required the use of the HEIM Press Brake. Plaintiff did not have the ability to avoid the danger she was confronted with. The Press Brake Plaintiff was working on had a supervisory switch which, when set, determined whether the Press Brake would be operated via the foot control or palm buttons. Her employer selected the method by which the Press Brake was to be operated and chose the foot control switch. (Document No. 48, Appendix B, Pages 164-165). Plaintiff did not have the authority or option to select the method by which the Press Brake would be activated by. Defendant HEIM selected to incorporate an ungated foot control into the design of their Press Brake and furnished the

8

ungated foot control as their standard equipment. Plaintiff had no meaningful choice but to operate the HEIM Press Brake with the ungated foot control.

Accordingly, since Plaintiff was injured by a defective product, while using that product in the course of her employment and at the direction of her employer, as a matter of law, Defendant HEIM must be barred from either introducing evidence of, or arguing that, Plaintiff assumed the risk of injury.

**B. PLAINTIFF'S USE OF THE HEIM PRESS BRAKE WITHOUT A POINT OF OPERATION DEVICE WAS AN INTENDED USE AND NOT OUTRAGEOUS, THEREFORE, SHE CANNOT BE CHARGED WITH MISUSE OF THE PRESS BRAKE**

The law requires that a product must be safe for its intended use. Azzarello v. Black Brothers Company, Inc., 480 *Pa.* 547, 559, 391 *A.2d* 1020, 1027 (1978). "Unless the use giving rise to a strict liability cause of action is a reasonably obvious misuse * * * or unless the particular use * * * is clearly warned against, the manufacturer is not obviously exonerated." Metzgar v. Playskool, Inc., 30 *F.3d* 459, 465 (3rd Cir. 1994).

In order to prove misuse of the product, so as to relieve the manufacturer from liability, the Defendant must show "that the use employed by the [Plaintiff] was either unforeseeable or

9

outrageous." Childers v. Power Line Equip. Rentals, Inc., 452 *Pa.Super*. 94, 108, 681 *A.2d* 201, 208 (1996), *appeal denied*, 547 *Pa*. 735, 690 *A.2d* 236 (1997); Brandimarti v. Caterpillar Tractor Co., 364 *Pa.Super*. 26, 527 *A.2d* 134 (1987).

In Childers, Plaintiff was crushed to death while standing at the operator's station of a Pitman Polecat digger-derrick truck.  452 *Pa.Super*. at 102, 681 *A.2d* at 206. While Plaintiff was "operating the truck from behind, the truck jerked forward, then rolled back crushing him between the truck and a flatbed trailer." *Id*.  The Defendant argued that "decedent should have been aware of the danger at issue because he failed to apply the parking brakes, failed to chock the wheels, failed to take the truck out of reverse and parked the truck perpendicular to the flatbed trailer. 452 *Pa.Super*. at 107, 681 *A.2d* at 208.  The Appellate Court ruled that the Plaintiff's alleged conduct was neither unforeseeable nor outrageous.

Likewise, in Charlton v. Toyota Indus. Equip., 714 *A.2d* 1043 (*Pa.Super*. 1998), the Plaintiff was injured when a co-employee ran over his foot with a forklift.  Plaintiff alleged that the forklift was defectively designed in that the gas tank obstructed the driver's rearward vision, and it lacked rearview mirrors and/or a backup alarm. *Id*. at 1045.  Defendant alleged that the injuries were caused by the Plaintiff and/or co-worker. The Superior Court found that there was no evidence that

10

Plaintiff or the co-worker misused the forklift or otherwise engaged in highly reckless behavior. *Id*. at 1047.

In Clark v. Bil-Jax, Inc., 2000 *Pa.Super*. 370, 763 *A.2d* 920 (2000), Plaintiff's decedent was assisting several co-employees who were moving a metal scaffold with the use of a forklift. As they were moving the scaffold it came in contact with a power line electrocuting Plaintiff's decedent. *Id*. at 922. Plaintiff filed a product liability claim asserting that the scaffold should have been provided with a clamping device to hold it onto the forklift or removable handles of a material which would have reduced the transmission of electric current. *Id*. The Superior Court reiterated that in order to prove "misuse" the Defendant must show that the use employed by the decedent was either unforeseeable or outrageous. *Id*. at 925. Since no such showing had been made by the Defendant there was no basis for the trial court to find a misuse of the product. *Id*.

Several federal court cases have also addressed the issue of misuse. Surace v. Caterpillar, Inc., 111 *F.3d* 1039 (3rd Cir. 1997)[Third Circuit Court of Appeals could not find as a matter of law that Plaintiff's use of a profiling machine in the course of his employment, without the conveyor system attached, was a misuse of the product]; Dillinger v. Caterpillar, Inc., 959 *F.2d* 430 (3rd Cir. 1992)[Third Circuit Court of Appeals held that there was no evidence that Plaintiff misused the Defendant's

11

product by failing to use an alternative braking system on the truck after the primary braking system failed]; <u>Kramer v. Raymond Corp.</u>, 840 *F.Supp*. 333 (E.D.Pa. 1993)[Plaintiff's failure to look in the direction he was traveling and keep his foot inside the operator's compartment was not a misuse of the forklift].

Dennis Cloutier, one of Defendant HEIM's experts, has testified that the Press Brake industry understands that Press Brake operators will have to work with their hands in the die area. (Document No. 48, Appendix Exhibit K, Pages 70 and 75). In fact, at the time of this accident, the process Ms. Lindquist was performing "required the operator to manually form the part around the mandrel." (Document No. 48, Appendix Exhibit K, Pages 147-148). "Therefore it was necessary for Ms. Lindquist to place her hands between the upper and lower die to fit the part around the mandrel." (Document No. 48, Appendix Exhibit K, Pages 147-148). As such, it cannot be said that Ms. Lindquist's conduct was unforeseeable or outrageous. She was operating the Press Brake in a manner in which Defendant HEIM would anticipate it would be used. Since Ms. Lindquist's conduct in operating the Press Brake in the course of her employment cannot form the basis for a charge of assumption of risk, that same conduct cannot be found to be "outrageous".

Accordingly, as a matter of law Plaintiff cannot be said to have been using the Press Brake in an unforeseeable or outrageous manner, and Defendant HEIM must therefore be barred from either introducing evidence of, or arguing that, Plaintiff was misusing the Press Brake at the time of her injury.

**C.   PLAINTIFF'S USE OF THE HEIM PRESS BRAKE WITHOUT A POINT OF OPERATION DEVICE WAS NOT RECKLESS, AND THEREFORE, HER CONDUCT CAN NOT BE SHOWN TO BE THE CAUSE OF THIS ACCIDENT**

"Evidence that a [P]laintiff acted in a highly reckless fashion is akin to evidence that a [P]laintiff misused a product." Charlton v. Toyota Indus. Equip., 714 *A.2d* 1043, 1047 (*Pa.Super.* 1998); Clark v. Bil-Jax, Inc., 2000 *Pa.Super.* 370, 763 *A.2d* 920 (2000); Childers v. Power Line Equip. Rentals, Inc., 452 *Pa.Super.* 94, 681 *A.2d* 201 (1996), *appeal denied*, 547 *Pa*. 735, 690 *A.2d* 236 (1997); Dillinger v. Caterpillar, Inc., 959 *F.2d* 430 (3rd Cir. 1992).

In Parks v. AlliedSignal Inc., 113 *F.3d* 1327 (3rd Cir. 1997), the Third Circuit reiterated that evidence concerning a Plaintiff's possible role in causing her own harm is only admissible where it is established that the conduct was so extraordinary or unforeseeable that it amounts to a superseding cause. *Id.* at 1332.

Since the standard for highly reckless conduct is essentially the same standard necessary to show a misuse of the

13

product, for the reasons set forth above, Ms. Lindquist cannot be found to have acted in a highly reckless manner. Ms. Lindquist performing her job in accordance with the work instructions provided to her by her employer. (A copy of the Work Instructions is attached hereto as Exhibit "A"). Those instructions specifically directed Plaintiff to hand form the piece of metal she was working with on the mandrel. (See Exhibit "A"). The mandrel is part of the die components that allow the Press Brake to form various shapes. It was necessary for the Plaintiff to put her hands in between the upper and lower die to hand form the part around the mandrel. (Document No. 48, Appendix Exhibit K, Page 148). Forming the part (as was done by Plaintiff at the time of her injury) was a use of the press brake that was accepted. (Document No. 48, Appendix Exhibit K, Page 146). Defendant's own experts agree that it is foreseeable that under this circumstance Plaintiff would put her hands in the die area. (Document No. 48, Appendix Exhibit J, Page 149; Document No. 48, Appendix Exhibit K, Page 69; Document No. 48, Appendix Exhibit L, Page 138). As such, her conduct in operating the Press Brake without a point of operation device did not amount to highly reckless conduct.

The Pennsylvania Superior Court has only permitted evidence of a Plaintiff's highly reckless conduct in a product liability case under the most egregious circumstances. <u>Madonna v. Harley Davidson, Inc.</u>, 708 *A.2d* 507 (1998). In <u>Madonna</u> the Plaintiff

brought suit alleging that an upper mounting bolt on the brake caliper of the front wheel of his motorcycle was defective. *Id*. at 508. Plaintiff claimed that the bolt fractured while he was operating the motorcycle causing him to crash. *Id*. At the time of the accident Plaintiff's blood alcohol level was a .14%. *Id*. Defendant offered evidence at trial that the bolt was working properly at the time of the accident and that the sole cause of the accident was the Plaintiff's conduct. *Id*. In upholding the trial court's decision to admit evidence of the Plaintiff's intoxication the Superior Court observed, "[t]his is precisely the situation which the court in Childers recognized would make admission of [P]laintiff's conduct relevant because it directly impacts on the issue of causation." *Id*. at 509. "Here, * * * [the] evidence sought to prove that the driver's reckless conduct **alone** caused the accident regardless of the defect in the bolt. For this reason it was properly admitted." *Id*.

The facts in Madonna are readily distinguishable. It is important to note, aside from the obvious factual differences, that the Plaintiff in Madonna was not injured by a defective product in the course of his employment, where he would have had no alternative but to use the defective product. In the matter presently before the court Plaintiff's conduct cannot be said to have been the sole cause of her injuries. Defendant Heim's own experts have acknowledged that a gated foot control been on the

15

Press Brake would have prevented inadvertent activation of the machine. They further acknowledge that use of a point of protection device would not necessarily have prevented this accident and that some operations of the Press Brake cannot accommodate use of a point of operation device.

Accordingly, as a matter of law Plaintiff cannot be deemed to have been using the Press Brake in a highly reckless manner, and therefore Defendant HEIM must be barred from either introducing evidence of, or arguing that, Plaintiff's conduct was a superseding cause of this accident.

V.  <u>CONCLUSION</u>:

For the foregoing reasons, evidence of Plaintiff Tina Lindquist's alleged voluntary assumption of risk, misuse of the product, or highly reckless conduct is inadmissible and may not be offered by Defendant HEIM to prove an element of causation.

                                      DALLAS W. HARTMAN, P.C.

                                      <u>/s/ Dallas W. Hartman</u>
                                      Attorneys for Plaintiff

                                      Dallas W. Hartman, Esq.
                                      Attorney I.D. No. 41649

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the within document was served on the party below in the following manner:

VIA ELECTRONICALLY:

                Paul R. Robinson, Esquire
      MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
             U.S. Steel Tower, Suite 4850
               Pittsburgh, PA  15219

                Attorney for DEFENDANT

                                         DALLAS W. HARTMAN, P.C.

DATE:  05/04/07

                                         /s/ Dallas W. Hartman
                                         Attorneys for Plaintiff

                                         Dallas W. Hartman, Esq.
                                         Attorney I.D. No. 41649

                                         2815 Wilmington Road
                                         New Castle, PA  16105
                                         (724) 652-4081