```
                    UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST,                       : NO. 04-249E
          Plaintiff,                  :
                                      : JUDGE SEAN MCLAUGHLIN
   v.                                 :
                                      :
HEIM, L.P.,                           :
          Defendant.                  :
```

**PLAINTIFF'S MOTION *IN LIMINE* TO BAR DEFENDANT HEIM FROM ARGUING THAT PLAINTIFF HAS FAILED TO PROPERLY IDENTIFY THE DEFECTIVE PRODUCT**

NOW COMES the Plaintiff, by and through her undersigned counsel and files the within Motion *In Limine*. In support thereof, Plaintiff states as follows:

I.  BACKGROUND:

Through discovery and language found in Defendant's prior submissions to the court, Plaintiff has reason to believe that Defendant will attempt argue that Plaintiff has failed to properly identify the foot control in use at the time of this accident as having been the same foot control originally provided with the Press Brake at the time it left Defendant HEIM's control as a defense against liability in this case.

II. STATEMENT OF FACTS:

1. Defendant, Heim, L.P. [hereinafter "HEIM"] manufactured the subject Press Brake involved in Plaintiff's accident of September 25, 2002. (Document No. 48, Appendix Exhibit A).

1

2.  HEIM admits to manufacturing the Press Brake involved in Plaintiff's accident of September 25, 2002. (Document No. 48, Appendix Exhibit AA).

3.  The Press Brake was originally sold with a foot control provided. (Document No. 48, Appendix Exhibit U).

4.  HEIM's manual indicates that a foot control was supplied as standard equipment with the Press Brake. (Document No. 48, Appendix Exhibit K, Page 81).

5.  Defendant alleges and defense counsel has argued that a business record from HEIM shows that an ungated foot control was provided with the Press Brake. (Document No. 48, Appendix Exhibit O).

6.  Figure 12 entitled "Foot Pedal" in the *HEIM Mechanical Press Brake* "Instructions and Parts Book" depicts an ungated foot control. (Document No. 48, Appendix Exhibit Q, Page 18).

7.  The section of the *HEIM Mechanical Press Brake* "Instructions and Parts Book" entitled "Foot Pedal Control" states:

> A foot pedal control is furnished as standard equipment on all HEIM press brakes. * * * It has a cover over the top of it to prevent an object from falling on it and activating the press, or an accidental stepping on it.

(Document No. 48, Appendix Exhibit Q, Page 19).

8.  Linemaster, a manufacturer of foot controls and switches, was one of HEIM's principal suppliers. (Document No. 48, Appendix Exhibit B, Page 86).

9.  HEIM's used the Linemaster foot controls during the time the subject Press Brakes was originally designed,

2

manufactured, and distributed. (Document No. 48, Appendix Exhibit B, Page 86).

10. A Linemaster ungated foot control originally accompanied and/or was provided with the subject Press Brake at the time of its initial sale and/or distribution by HEIM. (Document No. 48, Appendix Exhibit A).

11. The foot control on the HEIM Press Brake on the date of this accident did not have a gate. (Document No. 48, Appendix Exhibit H, Pages 143-144).

12. Photographs taken after Plaintiff's accident are consistent with, and illustrate, a Linemaster foot switch which does include a safety gate. (Document No. 48, Appendix Exhibit A).

13. A Linemaster ungated foot switch was involved in Plaintiff's accident of September 25, 2002. (Document No. 48, Appendix Exhibit A).

14. Defendant HEIM's expert has likewise identified that a Linemaster 511 foot control was on the Heim press brake at the time of Plaintiff's accident. (Document No. 48, Appendix Exhibit K, Page 7).

III. QUESTION PRESENTED:

    **A.   HAS PLAINTIFF PROPERLY IDENTIFIED THE DEFECTIVE PRODUCT THAT CAUSED HER SEVERE INJURIES?**

    **ANSWER: YES**

IV. <u>LEGAL ARGUMENT</u>:

**<u>DEFENDANT HEIM IS BARRED FROM ARGUING THAT PLAINTIFF HAS FAILED TO IDENTIFY THE CORRECT PRODUCT WHERE THE DEFENDANT HAS NOT SHOWN THAT THE FOOT CONTROL IN USE AT THE TIME OF THE ACCIDENT WAS A "SUBSTANTIAL CHANGE" FROM THE TYPE OF FOOT PEDAL ORIGINALLY PROVIDED WITH THE PRESS BRAKE</u>**

In order to prevail on a product liability claim, the Plaintiff must establish that their injuries were caused by the product of a particular manufacturer. <u>Berkebile v. Brantly Helicopter Corp.</u>, 462 *Pa*. 83, 337 *A.2d* 893(1975). In the matter presently before the court it is undisputed that Plaintiff Tina Lindquist has identified the manufacturer of the defective product that caused her injuries as HEIM. HEIM has admitted that it manufactured the Press Brake machine which caused Plaintiff's injuries. (Document No. 48, Appendix Exhibit AA).

HEIM argues, however, that Plaintiff's claim must fail because Plaintiff can not prove that the actual foot control on the press brake at the time of this accident, in 2002, was the same foot control attached to the machine at the time it left HEIM's control in 1978. The problem with HEIM's argument is that it ignores the nature of the defect being alleged as well as their legal responsibility under existing Pennsylvania law. *See* <u>Greco v. Bucciconi Engineering Co., Inc.</u>, 283 *F.Supp*. 978, 984 (W.D.Pa. 1967)[strict liability of the manufacturer continues even where there is a change in a component part, if the change does not affect the defective portion of the

4

product]; D'Antona v. Hampton Grinding Wheel Co., Inc., 225 *Pa.Super.* 120, 310 *A.2d* 307 (1973)[the fact that a defect in a product manifests itself in a malfunctioning component part which is expected and intended to be attached thereto does not preclude recovery under strict liability].

In the matter presently before the court it is not argued that the foot control provided by HEIM malfunctioned, in which case Plaintiff agrees she would have to prove it was the original foot control supplied by HEIM. It is not the foot control component part that is alleged to be defective, but rather the incorporation of an ungated foot control, which HEIM provided as standard equipment on all HEIM Press Brakes, that caused a defect in the design, manufacture and distribution of the HEIM Press Brake. *Cf.* Colegrove v. Cameron Machine Co., 172 F.Supp.2d. 611 (W.D.Pa. 2001)[where a claim was brought against the manufacturer of an electric foot switch which did not include a safety cover guard to prevent against accidental activation]. In the matter *sub judice*, it is the fact that the HEIM Press Brake was designed, manufactured, and distributed **without a gated** foot control that renders the product, the Press Brake, "unreasonably dangerous".[1]  (Document No. 48, Appendix Exhibit A).

---

[1] The issue in this case, simply stated, is was a gated foot control a necessary element to make the HEIM Press Brake safe for its intended use, or did the lack of a gated foot control render the Press Brake defective.

5

Under the Restatement (Second) of Torts 402A, which was adopted in Pennsylvania by the Supreme Court in Webb v. Zern, 422 *Pa*. 424, 220 *A.2d* 853 (1966), once the manufacturer of the defective product is identified Plaintiff need only show that the product reached Plaintiff "without substantial change" in the condition in which it was sold.[2] Davis v. Berwind Corp., 547 *Pa*. 260, 690 *A.2d* 186 (1997); Berkebile v. Brantly Helicopter Corp., 462 *Pa*. 83, 337 *A.2d* 893, 901 (1975).

Thus, the law does not require, as Defendant HEIM argues, that the Plaintiff prove that the Press Brake was being operated with the exact same foot control it was equipped with at the time it left their control. Instead, once the manufacturer of the product has been properly identified Plaintiff need only show that the product had not undergone a substantial change at the time of the accident.

In Burch v. Sears, Roebuck & Co., 320 *Pa.Super*. 444, 451, 467 *A.2d* 615, 619 (1983), the Plaintiff was injured when he reached into a stalled lawnmower to unclog it. Defendant alleged that Plaintiff, by replacing the electrical cord had

---

[2] Pennsylvania Suggested Standard Civil Jury Instruction 8.08 provides:

> A seller is responsible only for defects that exist at the time the product leaves his or her control. The seller is not liable for defective conditions created by **substantial changes** in the product occurring after the product has been sold.

(Emphasis Added).

6

substantially changed the product from the time it had originally been placed on the market. 320 *Pa.Super.* at 453, 467 *A.2d* at 620. In rejecting the Defendant's argument, the court held that **"[n]one of the changes argued by [Defendant] affected th[e] design."** *Id.*[Emphasis added]. The replacement of the electric cord on the electric lawnmower did not substantially alter the product. **"[T]he unchanged design lacking a deadman's switch [which] failed to protect against uncontrolled restarting" was the same defect even after the electrical cord had been replaced**. 320 *Pa.Super.* at 453-454, 467 *A.2d* at 620 [Emphasis added].

The same is true in the matter presently before the court. The unchanged design of the HEIM Press Brake, incorporating an ungated foot control to activate the machine, remained the same even if there was a different foot control on the Press Brake at the time of Plaintiff's accident.

It is admitted by HEIM that the press brake originally sold by them in 1978 was equipped with a foot control. (Document No. 48, Appendix Exhibit Q, Page 19). There is no dispute that the standard foot control provided by HEIM in 1978 with the Press Brake was ungated. (Document No. 48, Appendix Exhibit Q, Pages 18-19). Furthermore, the foot control on the HEIM Press Brake

7

on the date of this accident was likewise ungated.[3] (Document No. 48, Appendix Exhibit H, Pages 143-144).

Assuming *arguendo* that there had been a change from the original ungated foot control supplied by HEIM, to a replacement foot control that was also ungated, the change of the component part did not change the faulty design of the Press Brake machine. Anthony R. Mase, Jr. was produced as the corporate designee for Defendant HEIM. (Relevant portions of Anthony R. Mase Jr.'s deposition are Attached hereto as Exhibit "A" @ p. 8). According to the sales manual a foot control accompanied the Press Brake at the time it left HEIM's control. (*See* Exhibit "A" attached hereto @ p.52). HEIM sold replacement foot controls for their Press Brakes. (*See* Exhibit "A" attached hereto @ p.91). Mr. Mase agreed that pictures taken of the foot pedal that was on the machine at the time of Plaintiff's accident displayed the same characteristics as the type of foot pedal used by HEIM in 1978 (*See* Exhibit "A" attached hereto @ p.150-152). Accordingly, the "unreasonably dangerous" characteristic of the Press Brake, as original designed, manufactured, and distributed, remained unchanged.

---

[3] Defendant HEIM's own experts acknowledge that the Press Brake did not contain a gated foot control either at the time it left HEIMS control and entered into the stream of commerce, or at the time of Mr. Lindquist's accident. (Document No. 48, Appendix Exhibit K, Page 7; Document No. 44, Appendix Exhibit Q, Page 3; Document No. 68, Exhibit G; Document No. 68, Exhibit F, Pages 54-56, and 180-181).

For example, if the original ungated foot control provided with the Press Brake was blue and it was later replaced by an ungated green foot control, which replacement part contained all of the same characteristics and features as the original foot control except for the color, would it seriously be argued that the Press Brake had been "substantially altered"? Yet this is exactly what HEIM is arguing before this court.  However, under either scenario, regardless of whether the foot control is blue or green, the Press Brake is being activated using an ungated foot control in the same manner in which it was originally designed to perform.

The fact that a different foot control may have been on the Press Brake at the time of Ms. Lindquist's accident is irrelevant.  This is especially so where, as here, the replacement foot control was an approved replacement part by HEIM.  *See* Capasso v. Minster Machine Co., Inc., 532 *F.2d* 952 (1976)[optional foot control provided by manufacturer at the time of delivery, which allowed for alternative method for activating press, was not a substantial modification of the press which could also be activated by palm buttons].

Where a Defendant alleges that a defect is caused by a later change in the product, it is the **Defendant's burden** to prove that the change substantially altered the product.

Berkebile v. Brantly Helicopter Corp., 462 *Pa*. 83, 337 *A.2d* 893, 901 (1975)[Emphasis added].

Thus, having admitted that they manufactured the Press Brake involved in this accident and that the Press Brake contained an ungated foot pedal (Document No. 48, Appendix Exhibit O), it is Defendant HEIM's burden to prove that there was a substantial change in Press Brake, after it left their control, in order to be relieved of liability in this case. In the matter presently before the court, no such showing has, or can, be made by Defendant HEIM.

The cases where a "substantial change" has been found to exist are readily distinguishable from the matter presently before the court. In those cases, the mechanisms for activating the machines were found to have been significantly altered from those present when the machines left the manufacturers' control.

In Hanlon v. Cyril Bath Co., 541 *F.2d* 343 (3d Cir. 1975), a press brake originally equipped with a manual treadle pedal was modified to operate by way of an electric foot pedal. The original activation method was a treadle pedal attached to the front of the press some 8 inches above the floor. *Id*. at 345. To activate the pedal the operator had to lift his foot a considerable distance and then exert approximately 65 pounds of downward pressure on the treadle to activate the press. *Id*. The machine was subsequently altered so that the press could be

10

activated using an electric pedal. *Id*. The replacement pedal was connected to the press with a flexible cable. *Id*. The replacement pedal looked similar to a Dictaphone pedal and could be activated with very little pressure. *Id*. Based on those facts, the court found that "in relation to danger of accidental activation, this substitution of a significantly different and much more sensitive starting mechanism was a 'substantial change in the condition in which . . . (the press brake was) sold', within the meaning of Section 402A." Hanlon, 541 *F.2d* at 346.

In Rooney v. Federal Press Co., 751 *F.2d* 140 (3d Cir. 1984), a power press was originally manufactured with palm buttons. The electrical wiring was later modified so that either a foot pedal or hand buttons could be used to activate the press. *Id*. at 141. In order to adapt the press to a different application, and to speed up work, the employer added a foot pedal. *Id*. at 143. Use of the foot pedal freed the operator's hands from their safe position on the buttons, creating a danger from the descending ram. *Id*. at 141. Based on those facts the court found that the post-delivery modification from palm buttons to a foot pedal constituted a substantial change. *Id*. at 143.

In the matter presently before the court, no such showing of "substantial change" can be made. It is undisputed that the ungated foot control attached to the Press Brake at the time of

11

this accident, even if not the original ungated foot control, was an approved replacement control.

Since the defect in the HEIM Press Brake is the unguarded condition of the foot control they can hardly claim that use of an unguarded foot control at the time of the accident, that might not have been the original foot control and which in no way changed the defective design, created a "substantial change" in the Press Brake.

V.   CONCLUSION:

For the foregoing reasons, Defendant HEIM should be precluded from arguing at trial that (i) Plaintiff has failed to identify the product that caused her injury; and (ii) that the Press Brake did not reach Plaintiff in the same condition it was in when it left their control.

DALLAS W. HARTMAN, P.C.

/s/ Dallas W. Hartman
Attorneys for Plaintiff
Dallas W. Hartman, Esq.
Attorney I.D. No. 41649

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the within document was served on the party below in the following manner:

VIA ELECTRONICALLY:

                  Paul R. Robinson, Esquire
      MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
              U.S. Steel Tower, Suite 4850
                Pittsburgh, PA   15219

                    Attorney for DEFENDANT

                                                  DALLAS W. HARTMAN, P.C.

DATE:  05/04/07

                                                    /s/ Dallas W. Hartman
                                                    Attorneys for Plaintiff

                                                    Dallas W. Hartman, Esq.
                                                    Attorney I.D. No. 41649

                                                    2815 Wilmington Road
                                                    New Castle, PA   16105
                                                    (724) 652-4081