IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA LINDQUIST,<br><br>        Plaintiff,<br><br>vs.<br><br>HEIM, L.P.,<br><br>        Defendant. | Civil Action No: 04-249E<br><br>**JUDGE SEAN J. MCLAUGHLIN**<br><br><br>PAUL R. ROBINSON, ESQUIRE<br>PA I.D. No. 65581<br>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.<br>U.S. Steel Tower, Suite 4850<br>600 Grant Street<br>Pittsburgh, PA 15219<br>(412) 261-6600<br>FAX: (412) 471-2754 |

### BRIEF IN SUPPORT OF MOTION TO BIFURCATE THE ISSUES
### OF LIABILITY AND DAMAGES AT TRIAL

#### I. STATEMENT OF FACTS

The plaintiff, Tina Lindquist, filed this lawsuit after a September 25, 2002 accident in which she was seriously injured while using a mechanical press brake at her place of employment, Corry Manufacturing, located in Corry, PA. At the time of her crushing, amputation injury, the plaintiff was using a Heim Model 70-6 mechanical press brake which was originally sold in April, 1978 to a third-party.

Tina Lindquist's injuries are severe and garner understandable sympathy. Tina Lindquist sustained a traumatic crushing amputation of all eight (8) of her fingers. Her

fingers were actually molded into the dies which existed on the press brake, and Tina Lindquist's hands were trapped in the dies for a long period of time while a maintenance worker physically removed the dies from the press brake.

Tina Lindquist underwent immediate surgery lasting 12-14 hours, by two teams of surgeons, to re-attach the middle finger and ring finger of her left hand and the middle and ring finger of the right hand. These revascularization surgeries involve the reconnecting of arteries and veins through micro-surgery and, ultimately, the use of wires to hold the re-attached fingers, bones, and tissues to each hand. The photographs following this surgery are unsettling, so much so that they are the subject of a motion in limine to preclude them due to their prejudicial effect.

The fingers which were re-attached to Tina Lindquist's right hand died, and additional surgery was necessary to remove those fingers. Ultimately, a transplantation surgery was performed which involved the transplantation of one of Tina Lindquist's toes to her right hand to allow Tina Lindquist to be able to grasp certain items with her right hand.

In addition to the above surgeries, Tina Lindquist underwent numerous other surgeries, eight total, with regard to her right and left hands in an attempt to provide additional function to those hands.

Tina Lindquist also has sustained substantial financial harm in the nature of medical bills, lost earnings, an impaired earning capacity and costs related to her past and continuing care and medical treatment as a result of her accident. Plaintiff's past medical bills alone, which plaintiff will attempt to introduce into evidence at the time of trial, are approximately $240,000. Future medical expenses in excess of $100,000 also are being claimed by the plaintiff. The plaintiff is claiming a past earnings loss in the approximate amount of $60,000, a loss of future earnings in the range of $840,000 to $970,000, and a reduction in value of household services in the range of $315,000 to $470,000. (Please see plaintiff's expert disclosures).

The trial of this matter is scheduled to begin on May 14, 2007. It is anticipated that the damages portion of plaintiff's case will take three days to try. The plaintiff will introduce in support of her damage claims the expert testimony of John M. Hood, M.D., Donal F. Kirwan, SPHR, Andrew C. Verzilli, MBA and Andrew G. Verzilli, Ph. D. The defendant plans to introduce the expert testimony of David A. Zak, M.Ed., CRC, LCP, CLCP. Additionally, fact witnesses will be called on the damages issues.

The liability and damages issues raised in this case are not in any way interwoven. The plaintiff's theories of liability, furthermore, have no support under the applicable law. (See Heim's motion for summary judgment, brief in support of motion for summary judgment, statement of undisputed material facts, and appendix, and Heim's motion in limine to preclude the testimony of Ralph Barnett and supporting brief). The plaintiff's

liability theories, respectfully, should not be presented to a jury, thereby further inviting bifurcation, and Heim will be filing a Rule 50 motion for judgment as a matter of law which likely will remove the necessity of any damage testimony at the time of this trial.

## II. QUESTION PRESENTED

A. **WHETHER THE LIABILITY AND DAMAGES ISSUES SHOULD BE BIFURCATED?**

**ANSWER: YES.**

## III. ARGUMENT

A. **THE LIABILITY AND DAMAGE ISSUES SHOULD BE BIFURCATED TO AVOID PREJUDICE TO THE DEFENDANT, ALLOW JUDICIAL ECONOMY, AND FOR THE CONVENIENCE OF THE PARTIES AND THE COURT.**

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any . . . . issue . . . ." Fed.R.Civ.P. 42(b). "Motions to conduct separate trials are within the court's discretion when the separation will 'further . . . convenience [and] avoid prejudice.'" Reading Tube Corp. v. Employers Ins. of Wausau, 944 F.Supp. 398, 404 (E.D. Pa. 1996) (citing Fed.R.Civ.P. 42(b)). Additionally, "[s]everance of the question of liability from other issues can 'reduce the length of the trial, particularly if the severed issue[s] [are] dispositive of the case, and can also improve comprehension of the issues and evidence.'" In re Paoli R.R.

Yard PCB Litigation, 113 F.3d 444, 452 n. 5 (3d Cir. 1997) (quoting Manual for Complex Litigation, Third § 21.632, at 119 (West 1995)).

For purposes of a motion to bifurcate the trial of the liability and damages issues in a personal injury action, "[p]rejudice can be shown 'where evidence as to the specific injuries suffered by plaintiffs might influence the jury's consideration of other issues.'" Corrigan v. Methodist Hosp., 160 F.R.D. 55, 57 (E.D. Pa. 1995) (quoting Keister v. Dow Chem. Co., 723 F.Supp. 117, 121 (E.D. Ark. 1989)) (other internal citations omitted). It is clear that bifurcation of the trial of liability and damages issues is appropriate where it will "[ensure] that the jury's decision as to liability [will] not be tainted by sympathy for [plaintiff] occasioned by the severity of [her] injuries." Ptak v. Masontown Men's Softball League, 414 Pa. Super. 425, 430, 607 A.2d 297, 300 (1992). See also, Kushner v. Hendon Construction, Inc., 81 F.R.D. 93, 99 (M.D. Pa. 1979).

The facts of the present case are directly in line with the facts presented in Kushner v. Hendon Construction, Inc., 81 F.R.D. 93 (M.D. Pa. 1979). In Kushner, the plaintiff sought damages for personal injuries he suffered when he fell from the first floor to the basement floor of his vacation home. Kushner, 81 F.R.D. at 94-95. The plaintiff fell as he was attempting to descend the staircase leading to the basement which, unbeknownst to the plaintiff, had been removed by the defendant contractor. Id. at 94-96.

At the pretrial conference, the district court in Kushner sua sponte bifurcated the trial on the issues of liability and damages. Kushner, 81 F.R.D. at 96. After the jury returned a finding of no liability and judgment was entered for the defendant, the plaintiffs filed a motion for a new trial, asserting, inter alia, the court's error in bifurcating the case. Id. at 95. The Kushner court summarized its reasons for bifurcating the trial, as follows:

> [T]he damage testimony was unrelated to the liability testimony so that bifurcation had the potential of shortening the trial, and that because of such separation of testimony it would be preferable to have the jury concentrate on the issue of liability without being aware of the damage figures involved so that no prejudice would result to the Defendant from the jury's consideration of the nature and severity of Mr. Kushner's injuries along with its determination of whether or not Hendon was responsible for the accident.

Id. at 99. In support of its holding that bifurcation of the trial was appropriate, the court opined:

> It is the view of the Court that the decision to bifurcate was a correct one and did in fact result in a shorter trial because as a result of the jury's finding of no liability, no court and jury time was expended in considering the question of damages and because the jury was able to consider the question of liability without knowing how extensively Mr. Kushner was injured. Further, the Court took into consideration those factors set forth in Rule 42(b) and listened to the statements of counsel for both sides before making its decision. Such procedure is clearly the use of informed discretion as contemplated in Lis v. Robert Packer Hospital, 579 F.2d 819 (3d Cir. 1978) and no error was committed by the Court's decision to bifurcate.

Kushner, 81 F.R.D. at 99.

In the present case, the issues of liability and damages should be bifurcated to avoid the certain and substantial prejudice to the defendant. If the issues in this case are not bifurcated, and the jury receives the evidence concerning Tina Lindquist's injuries, the jury will be improperly influenced by such testimony in its liability determination. As this Court is aware, the offers to settle which have been made in this case were made solely because of the serious injuries involved. Separate trials on the issues of liability and damages will reduce the risk of jury confusion and prejudice to this defendant and permit a fair assessment of the issue of liability.

In addition, because a number of the witnesses to be called will be damage witnesses, bifurcation of the issues of liability and damages will result in increased judicial efficiency and reduced costs. If the jury decides in favor of the defendant and against the plaintiff on the issue of liability, no testimony from any damages witnesses and no evidence pertaining to damages will be necessary, thus saving the time and money of the court and the parties. See Fed.R.Civ.P. 42(b). The evidence and witness testimony necessary to the liability issue is different and easily separable from that of the damages issues. See Corrigan, 160 F.R.D. at 57. Finally, the plaintiff will not be prejudiced in any manner if the issues of liability and damages are bifurcated.

## IV. CONCLUSION

For all of the foregoing reasons, Heim, L.P. respectfully requests that this Honorable Court bifurcate the trial of the liability and damages issues in this case and order the liability issues to be tried first, followed by the trial of the damages issues if necessary.

Respectfully submitted,

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.


By:   /s/ Paul R. Robinson
      PAUL R. ROBINSON, ESQUIRE
      PA I.D. No. 65581
      Counsel for defendant, Heim, L.P.

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon all parties on the date and in the manner listed below:

| | |
|---|---|
| _____ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail - Return Receipt Requested |
| _____ | Hand Delivery |
| _____ | Facsimile Transmission |
| ___X___ | Electronic Transmission |

at the following address:

> Dallas W. Hartman, Esquire
> Dallas W. Hartman P.C.
> 2815 Wilmington Road
> New Castle, PA 16105
> *(Counsel for Plaintiff)*

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

Date: May 4, 2007                    /s/ Paul R.   Robinson
                                     PAUL R. ROBINSON, ESQUIRE

P0805887.1