```
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF PENNSYLVANIA

TINA LINDQUIST                    : NO. 04-249E
          Plaintiff,              :
                                  : JUDGE SEAN MCLAUGHLIN
   v.                             :
                                  :
HEIM, L.P.                        :
          Defendant.              :
```

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE REGARDING OTHER MANUFACTURERS PROVIDING GATED FOOT CONTROLS WITH THEIR PRESS BRAKES**

I.  RESPONSE TO STATEMENT OF FACTS:

Plaintiff hereby incorporates by reference Plaintiff's Response to Defendant's Motion To Preclude Evidence of Other Manufacturers Proving Gated Foot Controls with Their Press Brakes.

II.  QUESTIONS PRESENTED:

      **IS PLAINTIFF PRECLUDED FROM OFFERING EVIDENCE THAT OTHER MANUFACTURERS OFFERED GATED FOOT CONTROLS ON THEIR PRESS BRAKES?**

      **ANSWER: NO**

III.  LEGAL ARGUMENT:

      **EVIDENCE THAT OTHER MANUFACTURERS OFFERED GATED FOOT CONTROLS ON THEIR PRESS BRAKES IS ADMISSIBLE TO SHOW (i) THAT THE HEIM PRESS BRAKE LACKED AN ELEMENT NECESSARY TO MAKE IT SAFE FOR USE; (ii) A FEASIBLE ALTERNATIVE SAFER DESIGN EXISTED; AND (iii) TO IMPEACH THE CREDIBILITY OF THE DEFENSE EXPERTS**

Evidence Rule 402 states that, "[a]ll relevant evidence is admissible, except as otherwise provided * * * by these rules * * *." *Fed.R.Evid.* 402. "'Relevant evidence' means any evidence having a tendency to make the existence of any fact * * * more probable or less probable than it would be without the evidence." *Fed.R.Evid.* 401. The Supreme Court has characterized this standard as a "liberal one." <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 *U.S.* 579, 113 *S.Ct.* 2786, 125 *L.Ed.2d* 469 (1993).

Under Pennsylvania's products liability law "[t]he [manufacturer] of a product is subject to liability for the injuries caused to the plaintiff by a defect in the article, which existed when the product left the possession of the [manufacturer]." *Pennsylvania Suggested Standard Civil Jury Instruction* 8.01. A "product **must be provided with every element necessary to make it safe** for its intended use, and without any condition that makes it unsafe for its intended use." *Pennsylvania Suggested Standard Civil Jury Instruction* 8.02 [Emphasis added]. If a jury determines that "at the time [the product] left the defendant's control, [it] lacked **any element necessary to make it safe** * * * and there was an alternative, safer practicable design, then the product was defective and the defendant is liable for all harm caused by the

2

defect." *Pennsylvania Suggested Standard Civil Jury Instruction* 8.02 [Emphasis added].

In the matter presently before the court, the objective for the manufacturer of a Press Brake is to inhibit accidental activation (on a Press Brake). (Doc. #48, Appendix Exhibit B @ p. 159-160). Defendant's expert William Switalski has testified that the benefit of a front gate on a foot control is that it will reduce the likelihood of inadvertent stepping into the foot control. (Doc. #48, Appendix Exhibit L @ p.169-170). Defendant's expert, Dennis R. Cloutier, has likewise testified that unintended operation of the machine is not a desirable event and that any measure taken to reduce that possibility goes to the advancement of the overall safe operation of the machine. (Doc. #48, Appendix Exhibit K @ p.61). He too acknowledged that a gated foot control would have inhibited the inadvertent activation of the foot control. (Doc. #48, Appendix Exhibit K @ p.192).

Accordingly, any evidence offered at trial that other manufacturers provided gated foot controls with their Press Brakes would not be offered to demonstrate an industry standard. Instead, the purpose for offering evidence of other manufacturers' Press Brakes is to demonstrate that the HEIM Press Brake with an ungated foot control lacked an element

necessary to make it safe, to demonstrate that an alternative, safer practicable design, existed at the time the Press Brake left HEIM's control in 1978, and to refute the defense experts' contention that the existing design was safe and that providing a gated foot pedal would introduce a new hazard, "riding the pedal".

In Putt v. Yates-American Machine Co., 722 A.2d 217 (Pa.Super. 1998), *appeal denied*, 558 Pa. 621, 737 A.2d 743 (1999), Plaintiff's "right hand was amputated while he was using a wood-molding machine." 722 A.2d at 219. As Plaintiff was attempting to dislodge a piece of wood jammed in the machine the rear cutter head severed his hand. *Id*. Plaintiff alleged that the machine was defective because it lacked a protective guard and had a long "coasting" time. *Id*. The Putt Court held that in a design defect case, the court must consider "whether the product was equipped with the **proper safety devices which would allow the user to avoid danger when using the product**." *Id*. at 221 [*citing* DiFrancesco v. Excam, Inc., 434 Pa.Super. 173, 642 A.2d 529 (1994)[Emphasis added]].

In the matter presently before the court, the objective for the manufacturer of a Press Brake is to inhibit accidental activation (on a Press Brake). (Doc. #48, Appendix Exhibit B @ p. 159-160). Defendant's expert William Switalski has testified

4

that the benefit of a front gate on a foot control is that it will reduce the likelihood of inadvertent stepping into the foot control. (Doc. #48, Appendix Exhibit L @ p.169-170). Defendant's expert, Dennis R. Cloutier, also acknowledged that a gated foot control would have inhibited the inadvertent activation of the foot control. (Doc. #48, Appendix Exhibit K @ p.192). Accordingly, evidence that gated foot controls were available for use by HEIM and that other manufacturers provided gated foot controls with their Press Brakes would be offered as evidence from which the jury could conclude that the HEIM Press Brake, by not incorporating a gated foot control, was not equipped with a proper safety device which have allowed the user to avoid danger when using the product.

In <u>DiFrancesco v. Excam, Inc.</u>, 434 *Pa.Super*. 173, 642 *A.2d* 529 (1994), *appeal dismissed as improvidently granted*, 543 *Pa.* 627, 674 *A.2d* 214 (1996), the Plaintiff was injured when his derringer pistol accidentally discharged. Plaintiff alleged that the derringer was defectively designed in that it allowed the gun to inadvertently discharge if the gun suffered an accidental blow to the exposed hammer. 434 *Pa.Super*. at 177, 642 *A.2d* at 530. The court observed that **in a design defect case, the question in whether the product should have been designed more safely.** 434 *Pa.Super*. at 178, 642 *A.2d* at

531[*citing* Dambacher by Dambacher v. Mallis, 336 *Pa.Super.* 22, 485 *A.2d* 408 (1984) *appeal denied* 508 *Pa.* 643, 500 *A.2d* 428 (1985)(Emphasis added]]. The court noted that the intended purpose of the derringer was to fire when the trigger was pulled intentionally, not when the hammer is inadvertently bumped. 434 *Pa.Super.* at 184, 642 *A.2d* at 534.

In support of his claim of a design defect, the Plaintiff's experts in DiFrancesco "testified at length about feasible and safer design alternatives that would eliminate the problems that made the derringer unsafe for its intended use." 434 *Pa.Super.* at 183, 642 *A.2d* at 534. Plaintiff's experts offered testimony, "based upon registered patents for designs which would have eliminated the potential for the specific way in which [Defendant's] gun discharged accidentally." 434 *Pa.Super.* at 179, 642 *A.2d* at 532. Plaintiff's "experts also offered evidence that other guns on the market were equipped with safety features which reduced the risk of accidental discharge." *Id*. In affirming the jury's verdict in favor of Plaintiff, the Superior Court upheld the admissibility of the above evidence.

In the matter presently before the court, the intended purpose of the Press Brake was to cycle when the foot control was intentionally activated, not when it was inadvertently activated. Plaintiff contends that the Press Brake was

defective because it was designed, manufactured, and distributed without a gated foot control. The lack of a gate on the foot control increased the likelihood of inadvertent activation. Plaintiff's expert will testify that a gated foot control is a feasible and safer design alternative that would eliminate the problem that made the Press Brake unsafe for its intended use. Plaintiff's expert will likely offer evidence that at the time the HEIM Press Brake was placed on the market gated foot controls were available on the market and could have been incorporated into the design of the HEIM Press Brake. Plaintiff's expert will likely also offer evidence that other manufacturers had available on the market, at the same time the HEIM Press Brake was placed on the market, Press Brakes equipped with gated foot controls which reduced the risk of inadvertent activation. Thus, any proffered evidence regarding other products would be offered to demonstrate the feasibility and availability of a safer alternative design, not to establish any supposed industry standard.

In Phatak v. United Chair Co., 756 *A.2d* 690 (Pa.Super. 2000), Plaintiff was injured when the chair she was sitting in tipped over as she was leaning forward. Plaintiff alleged that the chair was defectively designed in that the legs/outriggers did not extend all the way out to the end of the seat of the

chair, thereby rendering the chair unstable. *Id*. at 691. Plaintiff's expert contended that a chair design that featured longer legs/outriggers would have had more stability. *Id*. at 692. At trial Plaintiff attempted to offer evidence that the defendant manufactured other chairs with the design feature Plaintiff argued would make the chair safer. *Id*. Plaintiff attempted to have her expert identify a chair in the courtroom, manufactured by the Defendant which incorporated the safer design alternative but was precluded by the court from doing so. *Id*. The Defendant defended the design of the chair by arguing that it was not only "safe" as designed, but that incorporating Plaintiff's alternative design would have created an "unbelievable" and "unacceptable" safety/tripping hazard. *Id*. at 694. In response thereto, Plaintiff attempted to cross-examine the witness with Defendant's own catalog which contained chairs with the exact same design feature complained of by Defendant's expert. *Id*. The trial court likewise precluded Plaintiff from conducting that line of cross-examination. The Superior Court reversed and remanded the case ruling that the Plaintiff should have been permitted to introduce evidence that the Defendant made other chairs that lacked the alleged design defect and should have been able to cross-examine the Defendant's expert regarding his comments that the existing

8

design was "safe" and that the proposed alternative design created a new hazard.

This is the same situation in the matter presently before the court. All three (3) of Defendant HEIM's experts have alleged that the Press Brake as designed, without a gated foot control, was "safe" and that Plaintiff's proposed alternative design creates an increased hazard in "riding the pedal". However, the defense offers absolutely no empirical data to support this allegation. Defendant HEIM's one expert, Dennis R. Cloutier, has testified that during his 29 years working for Cincinnati Incorporated, a manufacturer of Press Brakes with gated foot controls as standard equipment since the early 1970s, he is unaware of any increase in accidents to the operator. (Doc. #48, Appendix Exhibit K @ p. 38). Accordingly, Plaintiff should be permitted to offer evidence that in 1978, at the time HEIM was designing, manufacturing, and distributing the subject Press Brake, an alternative safer design existed on the market. Thus, evidence of an alternative, safer practicable design, may be offered to refute the defense experts' allegations that the ungated foot control was "safe" and that use of a gated foot pedal would increase the risk of "riding the pedal".

Plaintiff agrees with defense counsel that the cases of Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc., 515 *Pa.*

334, 528 *A.2d* 590 (1987); Majdic v. Cincinnati Machine Co., 370 *Pa.Super*. 611, 620, 537 *A.2d* 334, 339 (1988); and Sheehan v. Cincinnati Shaper Co., 382 *Pa.Super*. 579, 555 *A.2d* 1352 (1989), all stand for the proposition that a Defendant may not introduce evidence of industry custom, industry standards (ANSI), and/or federal safety standards (OSHA) in a product liability case. However, nothing in any of those cases precludes a Plaintiff from offering evidence to demonstrate that the defendant's product lacked an element necessary to make it safe, to demonstrate a feasible, alternative safer design or to refute the defense's claim that their product is safe or that the Plaintiff's proposed alternative design creates a new safety hazard.  Accordingly, nothing in any of the cases cited by defense counsel precludes the type of information Plaintiff may seek to introduce at trial for the purposes for which it is being offered.

IV.  CONCLUSION:

For the foregoing reasons, it is respectfully requested that the Defendant's motion to preclude Plaintiff from introducing evidence of other manufacturers' providing gated

foot controls with their Press Brakes must be denied.

                                    DALLAS W. HARTMAN, P.C.

                                    <u>/s/ Dallas W. Hartman</u>
                                    Attorneys for Plaintiff

                                    Dallas W. Hartman, Esq.
                                    Attorney I.D. No. 41649

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the within document was served on the party below in the following manner:

VIA ELECTRONICALLY:

                Paul R. Robinson, Esquire
      MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, PLLC
              U.S. Steel Tower, Suite 4850
                Pittsburgh, PA  15219

                  Attorney for DEFENDANT

                                        DALLAS W. HARTMAN, P.C.

DATE:  05/09/07

                                        /s/ Dallas W. Hartman
                                        Attorneys for Plaintiff

                                          Dallas W. Hartman, Esq.
                                          Attorney I.D. No. 41649

                                          2815 Wilmington Road
                                          New Castle, PA  16105
                                          (724) 652-4081