IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA LINDQUIST,<br><br>        Plaintiff,<br><br>    vs.<br><br>HEIM, L.P.,<br><br>        Defendant. | Civil Action No:  04-249E<br><br>**JUDGE SEAN J. MCLAUGHLIN**<br><br><br>PAUL R. ROBINSON, ESQUIRE<br>PA I.D. No. 65581<br>MEYER, DARRAGH, BUCKLER,<br>BEBENEK & ECK, P.L.L.C.<br>U.S. Steel Tower, Suite 4850<br>600 Grant Street<br>Pittsburgh, PA 15219<br>(412) 261-6600<br>FAX: (412) 471-2754 |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE
TO BAR DEFENDANT HEIM FROM INTRODUCING AT THE TIME OF
TRIAL ANY EVIDENCE OF INDUSTRY CUSTOM, INDUSTRY
STANDARDS (ANSI), AND/OR FEDERAL SAFETY STANDARDS (OSHA)
RELATING TO THE DESIGN OF THE PRESS BRAKE**

AND NOW, comes the defendant, HEIM, L.P. (hereinafter "Heim"), through its attorneys, MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C., filing its response in opposition to plaintiff's motion in limine to bar defendant Heim from introducing at the time of trial any evidence of industry custom, industry standards (ANSI), and/or federal safety standards (OSHA) relating to the design of the press brake (hereinafter "plaintiff's motion in limine"), averring as follows:

Plaintiff's motion in limine seeks to preclude Heim from introducing evidence relating to industry customs, industry standards (ANSI) or federal safety regulations (OSHA), apparently on any issue involved with this case. Plaintiff's motion lacks all merit and should be denied.

With regard to the "ungated foot control," plaintiff argues that Heim's purpose behind introducing evidence of industry customs, ANSI standards and OSHA regulations at trial will be to "suggest to the jury that by meeting those minimum standards the Press Brake should not be considered to have been in a defective condition, unreasonably dangerous to the consumer." Plaintiff asserts that such evidence is inadmissible in a product liability case because it goes to the reasonableness of the defendant's conduct in making its design choice and, therefore, would improperly introduce concepts of negligence law.

With regard to the "point of operation guarding," plaintiff argues that evidence of industry customs, ANSI standards and OSHA regulations should not be admissible at trial to suggest that Plaintiff's employer was responsible for providing point of operation safeguards, although plaintiff's own expert acknowledges this to be true and this case does not involve a dispute as to whether the manufacturer or the employer should have installed a point-of-operation safety device like in many other cases. It is undisputed the employer was obligated to provide it, and the absence of a point-of-operation safety device is not the plaintiff's defect alleged by the plaintiff.

Plaintiff also requests that Heim's counsel be precluded from questioning any lay or expert witness about, or even mentioning, the OSHA investigation into the accident, the OSHA report, or the citations issued to plaintiff's employer as a result of the investigation.

Plaintiff misconstrues the existing law relative to industry standards and government safety standards and plaintiff's motion in limine should be denied.

1.  **Negligence Claim**

The plaintiff's motion does not recognize that the plaintiff has asserted a strict product liability claim <u>and</u> a negligence claim against Heim. With regard to the negligence-based product liability claim, evidence of industry standards and federal safety regulations is admissible to establish the reasonableness of a defendant's actions in designing a product. <u>See</u> <u>Holloway v. J. B. Systems, Ltd.</u>, 609 F.2d 1069, 1073 (3d Cir. 1979) ("<u>This use of trade custom as evidence of the reasonableness of EGW inaction would be permissible if the case were tried under negligence principles</u>; but is inconsistent with the doctrine of strict liability"); <u>Lewis v. Coffing Hoist Div., Duff-Norton Co., Inc.</u>, 515 Pa. 334, 343, 528 A.2d 590, 594 (1987).

The Pennsylvania cases which have precluded the introduction of industry standards <u>in strict product liability actions</u> did so on the issue of whether or not a product <u>is defective</u> because such introduction was deemed to introduce negligence concepts (and the reasonableness of the manufacturer), into the strict product liability forum which is

intended to address only the condition of the product. Industry standards and federal safety regulations have always been admissible in a product liability action which is based upon negligence principles, just as comparative negligence is a defense to a negligence-based product liability action. See Lewis v. Coffing Hoist Division, Duff-Norton Co. Inc., 515 Pa. 334, 337, 528 A.2d 590, 591 (1987) ("[U]nder our decision in Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020 (1978), negligence concepts have no role in a case based entirely on strict liability under Section 402A of the Restatement (Second) of Torts").

Plaintiff's motion in limine ignores this distinction and requests a blanket order which attempts to preclude Heim from introducing evidence of industry standards and federal safety regulations which are directly applicable and admissible in plaintiff's negligence based product liability claim. As such, plaintiff's motion in limine, to the extent that it attempts to preclude Heim from offering evidence of the applicable and controlling industry standards and federal safety regulations in defense of the plaintiff's negligence based product liability claim should be denied.

**2.    Strict Liability Claim**

Plaintiff cites Lewis v. Coffing Hoist Div., Duff-Norton Co., Inc., 515 Pa. 334, 528 A.2d 590 (1987) and its progeny[1], as well as certain federal court cases[2], for the proposition that evidence of industry standards (ANSI) and federal safety standards (OSHA) are not admissible for any purpose in a product liability action. Plaintiff's motion in limine again ignores the controlling law which recognizes that, while general industry standards and federal safety regulations have been deemed in the past to be inadmissible to establish the non-defectiveness of a product for strict product liability purposes, they are certainly admissible on numerous other issues.

In Nesbitt v. Sears, Roebuck & Co., 415 F.Supp.2d 530 (E.D. Pa. 2005), the distinction between the admissibility of industry standards and federal safety regulations for purposes of establishing a product defect, as opposed to introducing evidence of industry standards and safety regulations for purposes of causation and misuse, was discussed at length. The court recognized that the introduction of such evidence on the issue of whether or not the product is defective "inappropriately introduces negligence concepts into a strict liability action, improperly shifting a jury's focus from the defective nature of a particular product on to the reasonableness of the manufacturer's conduct in

---

[1] Majdic v. Cincinnati Mach. Co., 370 Pa. Super. 611, 537 A.2d 334 (1988); Sheehan v. Cincinnati Sheer Company, 382 Pa. Super. 579, 555 A.2d 1352 (1989); Jara v. Rexworks, 718 A.2d 788 (Pa. Super. 1998), appeal denied, 558 Pa. 620, 737 A.2d 743 (1999).

[2] Colegrove v. Cameron, 172 F.Supp.2d 611 (W.D. Pa. 2001); Forrest v. Beloit Corp., 424 F.3d 344 (3d Cir. 2005); Holloway v. J.B. Systems, Limited, 609 F.2d 1069 (3d Cir. 1979).

designing, manufacturing, and distributing the product, an issue which is irrelevant as to whether liability attaches." Id. at 538. The court, however, recognized that such evidence is admissible on the issues of causation and misuse, holding as follows:

> Nonetheless, defendants may introduce testimony, through [defendant's expert] concerning the alleged failure of plaintiff's employer to comply with OSHA and industry standards. <u>This testimony is relevant to the issue of causation</u>. For instance [defendant's expert's] testimony is relevant to whether [plaintiff's employer] and Bradley Stewart, owner and safety manager of [plaintiff's employer], acted in a highly reckless manner in failing to comply with OSHA standards, including the alleged failure to train employees about using the writhing knife on the saw during cross cuts, the removal of this safety device, and the removal of the anti-kickback pawls; a finding of gross negligence by the jury would constitute a superceding cause of plaintiff's injuries and would defeat liability as to defendants.

Id. at 538-39 (emphasis added).

The cases cited by plaintiff only relate to the introduction of industry standards and federal safety regulations on the issue of product defect. In <u>Lewis v. Coffing Hoist Div., Duff-Norton Co., Inc.</u>, the evidence regarding industry standards was for the sole purpose of rebutting the plaintiff's claim that the product at issue was <u>defectively designed</u>. <u>Lewis</u>, 515 Pa. 334, 337-39, 341, 343, 528 A.2d 590, 591-92, 593, 594 (1987). In <u>Majdic v. Cincinnati Mach. Co.</u>, similarly makes clear that industry customs and standards were not permitted to establish that the product was <u>not defective</u>. <u>Majdic</u>, 370 Pa. Super. at 618, 537 A.2d at 338. In <u>Sheehan v. Cincinnati Sheer Company</u>, the general OSHA standards were not admissible in a strict liability action for purposes of showing the reasonableness

of the defendant's product's design. In <u>Forrest v. Beloit Corp.</u> and <u>Holloway v. J.B. Systems</u>, the court held that a manufacturer in a products liability action may not invoke industry or OSHA standards to argue that the plaintiff's employer, rather than the manufacturer, had the responsibility to provide <u>the equipment necessary to make a product safe for its intended use</u>." (quoting <u>Forrest</u>, 424 F.3d at 352). Here, there is no argument as to whether Heim or the plaintiff's employer had the responsibility of installing a gated foot control.

It is clear that evidence concerning industry standards and federal safety regulations is admissible in a strict product liability action on the issues of causation, unintended use, and misuse. In <u>Nesbitt</u>, 415 F.Supp.2d at 538-39, the court held that defendant's expert's testimony was relevant to whether plaintiff's employer and its owner and safety manager caused the accident by failing to comply with various OSHA standards (citing <u>Brodsky v. Mile High Equipment Co.</u>, 69 Fed.Appx. 53, 57 (3d Cir. 2003) (unpublished opinion) (permitting manufacturer to introduce evidence of OSHA citations and fines against employer to establish cause of plaintiff' death); <u>Fisher v. Walsh Parts & Service Co., Inc.</u>, 296 F.Supp.2d 551, 566 n. 5 (E.D. Pa. 2003) (noting that courts permit evidence of industry standards in strict liability cases to show that employer's conduct absolved manufacturer of liability).

Evidence concerning industry standards and federal safety regulations also has been held to be admissible in a strict product liability case to show that it is the

responsibility of the employer, not the manufacturer, to provide point of operation guards – where the absence of the guards is the alleged defect. See Fisher, 296 F.Supp.2d at 566 (citing Christner v. E.W. Bliss Co., 524 F.Supp. 1122, 1125 n. 5 (M.D. Pa. 1981)). See also, Nesbitt, 415 F.Supp.2d at 538-39; Hoffman v. Niagara Machine and Tool Works Co., 683 F.Supp. 489 (E.D. Pa. 1988).

Furthermore, the industry standards and federal safety regulations involved here directly apply to the alleged defect being claimed by the plaintiffs and are therefore admissible. In Blacker v. Oldsmobile Division, General Motors Corp., 869 F.Supp. 313 (E.D. Pa. 1994), the federal court held that, where the federal safety standard at issue speaks directly to the alleged defect in the case, such safety standard must be admitted:

> Because compliance is mandatory, FMVSS do not reflect a manufacturer's voluntary choice to exercise a particular level of care. FMVSS will not validate the level of care the manufacturer exercises since they are usually no shield to common law liability, however, they are promulgated with the force of law and may preempt product liability actions in some circumstances. Where a plaintiff's cause of action is not entirely preempted, FMVSS may bar claims that a product lacks a particular element necessary to make it safe for its intended use.
>
> Where FMVSS either bar a products liability action entirely or preclude claims that the lack of particular feature rendered a product unsafe, they establish a definitive judgment on the safety of the product. It would defy logic to suggest that, in cases where their legal affect is simply less conclusive, FMVSS are wholly irrelevant to the safety of the product.

Blacker, 869 F.Supp. at 314.

Here, the press brake was intended by Heim, the industry, and the federal safety regulations to be used with an OSHA and ANSI required point of operation safety device, and this has been conceded by plaintiff's expert, Ralph Barnett. (Statement of Undisputed Material Facts, ¶ 59: Ralph Barnett deposition, p. 238). It is undisputed that the plaintiff's employer, Corry Manufacturing, was cited by OSHA for this accident under 29 CFR § 1910.212(a)(3)(ii) for not utilizing an appropriate point of operation safety device on the press brake. (Statement of Undisputed Material Facts, ¶ 23: Gary Merkle deposition, pp. 60-63; OSHA Worksheet). Plaintiff's expert, Ralph Barnett, concedes, that it is the responsibility of the employer, and not Heim, to install the appropriate point of operation safety device, as only the employer and user can determine which point of operation safety device is appropriate for the many potential uses of the press brake. (Statement of Undisputed Material Facts, ¶ 60: Ralph Barnett deposition, pp. 163-64).

Ralph Barnett also concedes that the OSHA and ANSI required point of operation safety device would have prevented the accident from occurring. (Statement of Undisputed Material Facts, ¶ 25: Ralph Barnett deposition, p. 149; pp. 163-64). Ralph Barnett further concede that, if an appropriate point of operation safety device such as the light curtain installed by the plaintiff's employer after the accident, had been in use, the foot control used by Tina Lindquist would have been safe. (Statement of Undisputed Material Facts, ¶¶ 58, 65: Ralph Barnett deposition, pp. 190-91). Ralph Barnett also concedes that the use of the press brake without the required point of operation safety device constitutes

a misuse of the press brake.  (Statement of Undisputed Material Facts, ¶ 64:  Ralph Barnett deposition, pp.124-25).

The Supreme Court of Pennsylvania recently made it clear, in <u>Pennsylvania Department of General Services v. United States Mineral Products Co.</u>, 587 Pa. 236, 898 A.2d 590 (2006), that "there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer."  <u>Id</u>. at 253, 898 A.2d at 600.  The court further held:

> The Court has also construed the intended use criterion strictly, holding that foreseeable misuse of a product will not support a strict liability claim.

<u>Id</u>. at 254, 898 A.2d at 601.

As a result of the recent pronouncement of the Supreme Court of Pennsylvania in <u>United States Mineral Products Co.</u>, the jury must be instructed that non-intended uses, even where foreseeable, will not support a strict product liability claim.  Consequently, a jury must hear the evidence which establishes that the manner in which the product was being used was not intended, and a misuse of the product.  The jury must be able to receive evidence concerning the employer's unintended use of the product and that employer's violation of the mandatory OSHA regulations and ANSI standards which require the use of an appropriate point-of-operation safety device.  <u>Lewis v. Coffing Hoist</u>, to the extent it is read to hold that evidence of industry standards and federal safety regulations

which directly address the claimed defect are inadmissible, is no longer valid in light of the recent U.S. Minerals Product's decision retraction of strict product liability principles.

## CONCLUSION

In summary, evidence of industry standards and federal safety regulations is always admissible to establish the reasonableness of a manufacturer's conduct in designing a product where a negligence-based product liability claim is involved.  Unless and until plaintiff withdraws the negligence claim, the industry standards and federal safety regulations are admissible for all purposes.

With regard to the strict product liability claim, the only issue for which industry standards and federal safety regulations have been held to be inadmissible concerns the issue of whether or not a defect exists in the product.  Even on that issue, where the federal safety standards are directly applicable to the plaintiff's claim of defect, the industry standards and federal safety regulations are admissible.   See Blacker, supra.  Furthermore, the industry standards and federal safety regulations are admissible with regard to numerous other issues, including the element of causation and the issue of whether or not the product was being put to its intended use, or misused, at the time of the plaintiff's accident.

Plaintiff's motion in limine to bar defendant Heim from introducing at the time of trial any evidence of (or testimony or argument concerning) industry customs, industry

standards (ANSI), and/or federal safety standards (OSHA) should be denied. A proposed order has been contemporaneously filed with this response.

        Respectfully submitted,

        MEYER, DARRAGH, BUCKLER,
        BEBENEK & ECK, P.L.L.C.


        By:  /s/ Paul R. Robinson
            PAUL R. ROBINSON, ESQUIRE
            PA I.D. No. 65581
            Counsel for defendant, Heim, L.P.

            U.S. Steel Tower, Suite 4850
            600 Grant Street
            Pittsburgh, PA  15219
            (412) 261-6600

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon all parties on the date and in the manner listed below:

|  |  |
|---|---|
| _____ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail - Return Receipt Requested |
| _____ | Hand Delivery |
| _____ | Facsimile Transmission |
| \_\_\_X\_\_\_ | Electronic Transmission |

at the following address:

> Dallas W. Hartman, Esquire
> Dallas W. Hartman P.C.
> 2815 Wilmington Road
> New Castle, PA 16105
> *(Counsel for Plaintiff)*

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

Date: May 11, 2007          /s/ Paul R. Robinson
                            PAUL R. ROBINSON, ESQUIRE

P0811427.1